**Paul**Hastings

Paul, Hastings, Janofsky & Walker LLP
Park Avenue Tower
75 East 55th Street
First Floor
New York, NY 10022
telephone 212-318-6000 • facsimile 212-319-4090 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(212) 318-6344
kennethbreen@paulhastings.com

December 5, 2007

**VIA ECF**

Hon. Stephen C. Robinson
United States District Judge
United States Courthouse
300 Quarropas St., Room 118
White Plains, NY 10601

Re:    United States v. Bernard B. Kerik, 07-CR-1027 (SCR)

Dear Judge Robinson:

We are counsel to Bernard B. Kerik, the defendant in the above-captioned matter. On November 29, the government submitted a letter to the Court in which it set out various conflict of interest allegations against Mr. Kerik's current counsel, Kenneth Breen, and requested a hearing on the matter. Although the government's letter refers to a number of discussions that it says serve as the bases for disqualification of Mr. Kerik's counsel of choice, it has refused to provide any discovery that would permit us to respond adequately to the government's application. Accordingly, we respectfully request that the Court order that the government provide to Mr. Kerik the discovery set out in the attached discovery request.

We also respectfully request that the due date for Mr. Kerik's opposition memorandum to the government's disqualification application be adjourned from December 6 to a date set by the Court following resolution of this discovery motion.

The Government's Letter and Publication of Attorney-Client Confidences

The government's principal allegations are that the defendant, Bernard Kerik, made false exculpatory statements to his prior counsel, Joseph Tacopina, which Mr. Tacopina then repeated to representatives of the Bronx District Attorney's Office and the New York City Department of Investigation ("DOI"). The government states that it intends to call Mr. Tacopina to testify to what it alleges are authorized admissions of Mr. Kerik that it will offer for the purpose of proving that he intended to obstruct the investigations. The government further alleges that Mr. Kerik's current counsel, Kenneth Breen, would necessarily be a witness because he was allegedly a party to some of the relevant discussions.

Notably, the government filed the letter on the docket and disseminated the letter to members of the news media, despite the fact that the letter contained what the government acknowledged to be attorney-client communications that it had apparently obtained solely

Paul*Hastings*

Hon. Stephen C. Robinson
December 5, 2007
Page 2

through unilateral discussions with Mr. Tacopina, for which it had failed to provide notice to Mr. Kerik. The government thereby ignored our prior notice, set out in a March 21, 2007 letter (a copy of which is included as Attachment A, hereto), in which we explicitly stated Mr. Kerik's intention to assert his attorney-client privilege and attorney work product protection with respect to his communications with his counsel, including Mr. Tacopina. The government's publication of specific confidential communications in a publicly-filed letter compounded the wrong by tainting the jury pool and irreparably harming Mr. Kerik's ability to obtain a fair trial.

The Discovery Request and the Government's Response

In a December 1 letter to the government (a copy of which is included as Attachment B, hereto), we raised these concerns regarding the invasion of Mr. Kerik's attorney-client privilege and the publication of confidential communications. We also pointed out that although the government's letter details what Mr. Kerik allegedly communicated to Mr. Tacopina, it provides only conclusory statements about the circumstances in which Mr. Tacopina conveyed them to the Bronx District Attorney's Office and the DOI. We therefore requested discovery that is necessary for us to be able to respond to the government's application, particularly an application that has as its object the disqualification of Mr. Kerik's counsel of choice.

The government responded in a letter dated December 3 (but delivered on December 4) (a copy of which is included as Attachment C, hereto). In the letter, the government summarily rejected "the allegations you have made concerning the Government's conduct during the investigation and prosecution of this matter" as "entirely baseless and unfounded," but it offered no factual support for its position. The government added, "As far as your discovery 'demands' are concerned, they are denied."[1]

The Relevance of the Requested Materials

The government's actions are particularly disturbing, because on the merits, the alleged attorney statements that were made to the government upon which the government relies are not admissible. Although we will reserve our arguments for a responsive brief, we note that the requested discovery is essential to several objections that Mr. Kerik intends to assert

---

[1] The government also noted that we had declined its request for voluntary production of billing records that, it said, would reflect the dates of meetings at issue. Detailed billing records, however, are covered by the attorney-client privilege and the attorney work production protection, Ehrich v. Binghamton City Sch. Dist., 210 F.R.D. 17, 23 (N.D.N.Y. 2002), and we informed the government at the time that that was our reason for declining to produce the records. In any event, those records would not reflect information concerning meetings prior to Mr. Breen's involvement in the case. Finally, the government provides no explanation for why the Bronx District Attorney's Office or the DOI cannot provide records establishing the dates of their meetings with Mr. Tacopina, and then with Mr. Tacopina and Mr. Breen together. Notwithstanding these objections, however, and without waiving privilege, we are willing to provide the government with the dates of any meetings with the representatives of the Bronx District Attorney's Office and DOI government that are reflected in the billing records.

Paul*Hastings*

Hon. Stephen C. Robinson
December 5, 2007
Page 3

to the government's attempt to have his counsel of choice disqualified. The Second Circuit has cautioned that "care must be taken in the criminal context in determining under what circumstances attorney statements may be used against a client," as "the routine use of attorney statements against a criminal defendant risks impairment of the privilege against self-incrimination, the right to counsel of one's choice, and the right to effective assistance of counsel." United States v. Valencia, 826 F.2d 169, 172 (2d Cir. 1987). The requested discovery is essential to the assessing whether admission of the alleged attorney statements may harm "the defendant's interests in retaining the services of his counsel, assuring uninhibited discussions between his counsel and the prosecutor, and avoiding the risk of impairing his privilege against self-incrimination." Id. at 172-73.

First, it is evident that the government obtained what plainly constitute confidential communications from Mr. Kerik's former counsel, Mr. Tacopina, without notice to Mr. Kerik, much less any waiver by Mr. Kerik of his attorney-client privilege or attorney work product protection. See Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir. 1967) (noting that under New York law, as under federal common law, "an attorney is prohibited from divulging confidential communications in the absence of a waiver by his client . . . .") (citations omitted); Schnell v. Schnall, 550 F. Supp. 650, 653 (S.D.N.Y. 1982) (holding that no privilege waiver occurred where attorney testified before SEC without having obtained waiver from client). Moreover, the government's letter provides no explanation of the context in which Mr. Tacopina provided the USAO this information.

Second, although the government asserts that the advocate-witness rule warrants disqualification of Mr. Kerik's counsel, it fails to specify either how the testimony of Mr. Kerik's counsel would be necessary, or that the alleged false exculpatory statements would be of sufficient probative value to warrant disqualification of Mr. Kerik's counsel. See Paretti v. Cavalier Label Co., Inc., 722 F. Supp. 985, 986 (S.D.N.Y. 1989) (noting that advocate-witness rule applies only where the attorney's testimony is necessary, in light of the significance of the matters, the weight of the testimony, and the availability of other evidence). The government's letter states that Tacopina conveyed the allegedly false information in the meetings that he attended when only he was representing Mr. Kerik. By contrast, as to the meetings at which Mr. Breen was allegedly present, the government's letter simply states that "Tacopina and Breen met with Bronx prosecutors on a number of occasions to discuss the case." It also fails to identify the representatives of those offices who were in attendance, and it provides no explanation as to why those representatives could not be adequate witnesses.

Third, the government's conclusory assertion that Mr. Tacopina's statements to the representatives of the Bronx District Attorney's Office and the DOI constituted authorized admissions of Mr. Kerik is facially insufficient. The government does not allege, much less proffer any evidence, that Mr. Kerik was advised by Mr. Tacopina with sufficient specificity to establish that he understood that his communications to Mr. Tacopina would be treated as admissions that could be used against him. See Republic Gear, 381 F.2d at 556.

Paul*Hastings*

Hon. Stephen C. Robinson
December 5, 2007
Page 4

Fourth, and in any event, the alleged statements by Mr. Tacopina would be inadmissible under Rule 410 of the Federal Rules of Evidence as statements made in the course of plea negotiations. United States v. Serna, 799 F.2d 842, 849 (2d Cir. 1986) (holding that preliminary debriefing meeting between the accused and the Assistant United States Attorney, despite the lack of a specific plea offer, "must be considered part of the overall plea bargaining process" because a more restrictive definition would discourage plea bargaining). See also Valencia, 826 F.2d at 173 ("A district court is entitled to consider whether trial use of informal attorney statements will lessen the prospects for plea negotiation or inhibit frank discussion between defense counsel and prosecutor on various topics that must be freely discussed in the interest of expediting trial preparation and the conduct of the trial."). As explained above, the government provides no details about when Mr. Tacopina's statements to the District Attorney's Office and DOI representatives took place, who was in attendance, and precisely what Mr. Tacopina stated.

The Requested Discovery

The discovery that we requested in our December 1 letter, and which the government summarily refused to provide, is necessary in order for us to respond to the government's alleged disqualification theories. It is disingenuous and unfair for the government to seek the disqualification of Mr. Kerik's counsel based on what it alleges are specific attorney-client communications that were conveyed to prosecutors, but then to refuse to provide any of the evidence necessary to assess its claims. This is particularly so in light of the relief that the government seeks, namely, the disqualification of his counsel who has represented him in connection with the prior Bronx District Attorney's Office case and the approximately eighteen-month federal investigation that resulted in a complex indictment on a wide range of honest services fraud, tax and false statements theories.

This Court has authority to order discovery, including discovery mandated by Rule 16 of the Federal Rules of Criminal Procedure, with respect to the disposition of the government's application. Courts have inherent authority to ensure the fundamental fairness of a criminal proceeding. United States v. Ming He, 1996 U.S. App. LEXIS 28744, at *26 (2d Cir. 1996) (citing McNabb v. United States, 318 U.S. 332, 340 (1943)); In re application for Material Witness Warrant, 214 F. Supp. 2d 356, 362-363 (S.D.N.Y. 2002) (noting that this supervisory power is often exercised to keep the judicial process free from future taint, such as the introduction of improperly obtained evidence). They also have the authority under Federal Rule of Criminal Procedure 57(b) to "regulate practice in any manner consistent with federal law, these rules, and the rules of the district." See United States v. Gerena, 116 F.R.D. 596, 598 (D. Conn. 1987) (relying upon Rule 57 and the court's inherent authority to order disclosure of expert reports in connection with pretrial suppression hearing). Indeed, the requested materials, particularly notes of meetings, are the kinds of materials that Judge Kaplan ordered to be produced in connection with the hearing on the attorneys' fees issues raised in United States v. Stein. See Stein, 435 F. Supp. 2d 330, 352 (S.D.N.Y. 2006) (noting that the court had ordered discovery in advance of the hearing).

Paul*Hastings*

Hon. Stephen C. Robinson
December 5, 2007
Page 5

As set forth below, each request calls for information necessary for Mr. Kerik to respond to the government's application for a hearing to disqualify his counsel. As such, all of the requested items are "material to preparing the defense[.]" Fed. R. Crim. P. 16(a)(1)(E)(i). Moreover, the Court should order discovery on the additional grounds set out below.

> Request 1
>
> With respect to any and all meetings between and among Mr. Tacopina, Mr. Breen, the Bronx County District Attorney's Office and the New York City Department of Investigation:
>
> a.  identify the date, place and participants of such meetings;
>
> b.  produce any and all written and recorded statements of any and all participants of those meetings (Fed. R. Crim. P. 16(A)(1)(E));

The requested evidence is relevant for a number of reasons. As explained above, the government's invocation of the advocate-witness rule rests on the premise that Mr. Breen is a necessary witness to discussions that Mr. Tacopina had in meetings with the Bronx District Attorney's Office and the DOI. Therefore, it is essential to know the specific meetings that Mr. Breen allegedly attended. It is also important to have any written records of the meetings, as those could reflect what specifically was stated by Mr. Tacopina. More broadly, any notes would reflect the broader discussions in the meetings and would be relevant to Mr. Kerik's claim that the meetings were plea discussions. Finally, the identity of the government attendees and any prior statements on their behalf is essential to test the government's claim that Mr. Breen's testimony would somehow be necessary, as required for invocation of the advocate-witness rule.

> Request 2
>
> Identify any and all statements of Mr. Kerik's counsel that the government claims constitute admissions of Mr. Kerik under Rule 801(d)(2) of the Federal Rules of Evidence (Fed. R. Evid. 801(d)(2); Fed. R. Crim. P. 16(a)(1)(A), (B));

This request seeks basic information as to the substance of the statements of Mr. Tacopina that the government intends to offer as admissions of Mr. Kerik pursuant to Federal Rule of Evidence 801. In addition, Mr. Kerik should be entitled to such statements to the extent that they would be discoverable under Federal Rule of Criminal Procedure 16(a)(1)(A) and (B).

Paul*Hastings*

Hon. Stephen C. Robinson
December 5, 2007
Page 6

Request 3

Produce any and all written and recorded statements of meetings
between any government representatives and Joseph Tacopina
and/or counsel for Mr. Tacopina (Fed. R. Crim. P. 26.2; 18 U.S.C. §
3500);

This request seeks FBI 302 reports, notes of the AUSAs, agent rough notes, and any
other records of discussions between Mr. Tacopina and/or his counsel and the government.
It would also include any written records of statements that Mr. Tacopina made to
representatives of the Bronx District Attorney's Office and the DOI. Plainly, pursuant to
Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500, the government must
produce such statements. More important, the proffer set out in the government's letter
provides insufficient factual detail to ascertain the specificity of Mr. Tacopina's advice to Mr.
Kerik concerning the statements at issue, such that any alleged waiver by Mr. Kerik would
have been knowing and intelligent. The proffer also fails to provide necessary details to
understand exactly what Mr. Tacopina stated to the Bronx District Attorney's Office and
DOI representatives, and whether it was in the context of plea negotiations. Therefore,
before the Court entertains the government's application, it should require the government
to provide the requested statements to supplement its proffer.

Request 4

With respect to Mr. Tacopina, confirm whether:

    a.  he has ever been a subject or target of any investigation by
your office;

    b.  the government ever extended any formal or informal offer
of immunity or leniency to him;

    c.  he made any statements to your office under any proffer,
immunity, cooperation or other similar agreements;

This requested information is relevant to the issue of the circumstances under which
the government questioned Mr. Tacopina about his confidential communications with Mr.
Kerik. In addition, the information would be covered by both Brady v. Maryland, 373 U.S.
83 (1963) and its progeny, including Giglio v. United States, 405 U.S. 150 (1972).

Request 5

With respect to any and all witnesses whom the government intends
to call at any hearings on the conflict of interest matter, provide:

Paul*Hastings*

Hon. Stephen C. Robinson
December 5, 2007
Page 7

    a.   copies of all written and recorded witness statements (Fed. R. Crim. P. 26.2; 18 U.S.C. § 3500);

    b.   any and all materials discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny, including <u>Giglio v. United States</u>, 405 U.S. 150 (1972), pursuant to United States Attorneys' Manual § 9-5.001.

The government must plainly fulfill its obligations under Federal Rule of Criminal Procedure 26.2 and 18 U.S.C. § 3500 with respect to any witnesses whom it intends to call in any hearing on the conflict of interest matter. If the government were to wait until the hearing, it would only delay the proceedings further, requiring adjournments for preparation time and possibly additional briefing based on the contents of any previously undisclosed statements. In addition, of course, the government's obligations to produce any and all materials pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and its progeny, are on-going. Moreover, its duties under <u>Giglio v. United States</u>, 405 U.S. 150 (1972), would extend to any witnesses whom it intends to call.

For all of these reasons, Mr. Kerik respectfully requests that the Court order the government to provide the discovery set out above, and that the due date for Mr. Kerik's memorandum in response to the government's application for disqualification be adjourned to a date set by the Court.

Respectfully Submitted,

Kenneth M. Breen
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

Attachments

cc: AUSA Elliott Jacobson
     AUSA Perry Carbone

# Attachment A

# FULBRIGHT & JAWORSKI L.L.P.

A Registered Limited Liability Partnership
666 Fifth Avenue, 31st Floor
New York, New York 10103-3198
WWW.FULBRIGHT.COM

KBREEN@FULBRIGHT.COM
DIRECT DIAL: (212) 318-3340

TELEPHONE:    (212) 318-3000
FACSIMILE:    (212) 318-3400

March 21, 2007

**CONFIDENTIAL**

**BY ELECTRONIC AND OVERNIGHT MAIL**

Perry A. Carbone
Assistant United States Attorney
Criminal Division, Southern District of New York
300 Quarropas Street
White Plains, NY 10601

    Re:   Bernard Kerik

Dear Mr. Carbone:

    As you know, we represent Bernard Kerik in connection with your office's criminal investigation of him. We write to (1) advise that Mr. Kerik intends to preserve his attorney work product protections and attorney-client privilege as to his discussions and other communications with his past and present attorneys, including Joseph Tacopina [REDACTED] and (2) inquire as to the protections that you have put in place to remedy any past, and to prevent any future, intrusion upon privilege in the course of your investigation.

    Our concern stems from your receipt of attorney-client communications that had been intercepted and your efforts to gather other potentially privileged information. With regard to the privileged information that you have gathered already, we demand an immediate, detailed accounting of this information and a description of your efforts to gather the information.

    Specifically, we are aware that you obtained from the Bronx District Attorney's Office tape recordings of conversations between Messrs. Kerik and Tacopina, which were made pursuant to a wiretap obtained by the Bronx District Attorney's Office from approximately July 13, 2005 through September 9, 2005. Review of the transcript of the only such call that was provided to us by the Bronx District Attorney's Office reveals that privileged conversations were recorded.

    We understand now that you have tapes of other such attorney calls as well. Thus far, you have refused our oral request that you provide us with copies of the other tapes or transcripts of attorney calls. We again request all tapes and transcripts of such calls so that we can make an

31296339.2

HOUSTON • NEW YORK • WASHINGTON DC • AUSTIN • DALLAS • LOS ANGELES • MINNEAPOLIS • SAN ANTONIO • ST. LOUIS
DUBAI • HONG KONG • LONDON • MUNICH • RIYADH

Perry A. Carbone                                              CONFIDENTIAL
March 21, 2007
Page 2

assessment of the extent to which Mr. Kerik's attorney-client privilege and attorney work product protections have already been compromised, and seek appropriate relief.

In addition, we ask for a description of the protections that have been implemented to date to prevent the disclosure of privileged information to other prosecutors or case agents working on the investigation. As explained at length below, any use of privileged information in the investigation would violate Mr. Kerik's rights and implicate remedies ranging from exclusion of evidence to dismissal of any indictment that you might decide to bring.[1]

REDACTED

A.    The Intercepted Communications Contain Privileged Communications

The attorney-client privilege, recognized as "the oldest of the privileges for confidential communications known to the common law," Upjohn Co. v. United States, 449 U.S. 383, 389 (1981), serves "to promote unfettered communication between attorneys and their clients so that the attorney may give fully informed legal advice." In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (citation omitted). The privilege applies

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

Id. at 39 (citation omitted).

The attorney work product doctrine "serves a similar purpose: 'to avoid chilling attorneys in developing materials to aid them in giving legal advice and in preparing a case for trial.'" Id. (citation omitted). The protection extends to any documents or things prepared in anticipation of litigation "by or for a party, or by or for his representative." SEC v. Beacon Hill Asset. Mgt. LLC, 2004 WL 1746790, at *4 (S.D.N.Y. August 3, 2004) (internal quotation marks and citation omitted). In addition, the attorney work product protection can apply to oral communications. See, e.g., Clute v. The Davenport Co., 118 F.R.D. 312, 315 (D. Conn. 1998) (noting that the work product doctrine applies to the contents of oral interviews).

We understand that you have the transcripts of discussions to which Mr. Tacopina was a party, at a time when Mr. Tacopina was acting as Mr. Kerik's attorney, and that these discussions were for the purpose of seeking legal advice. We understand that throughout the time of the

---

[1] In addition, the privileged communications could be suppressed on the separate ground that their interception was in breach of the minimization requirement. See 18 U.S.C. § 2518(8).

31296339.2

Perry A. Carbone                                          CONFIDENTIAL
March 21, 2007
Page 3

interceptions, Mr. Kerik was known to be the subject of an investigation at least by the Bronx
District Attorney's Office. As a result, any such discussions would therefore have been made "in
anticipation of litigation," and therefore would be subject to the attorney work product
protection. In re Grand Jury Proceedings, 2001 U.S. Dist. LEXIS 15646, at *48 (S.D.N.Y. Oct.
3, 2001) ("A lawsuit need not already have been filed for the 'in anticipation of litigation'
requirement to be met. Thus, a document may be protected even if it was 'created prior to the
event giving rise to litigation' because 'in many instances, the expected litigation is quite
concrete, notwithstanding that the events giving rise to it have not yet occurred'") (citation
omitted). It is immaterial whether the material at issue was created in anticipation of another
litigation, so long as it was created in anticipation of some litigation. See Fine v. Facet
Aerospace Prods. Co., 133 F.R.D. 439, 445 (S.D.N.Y. 1990).

B.    The Crime-Fraud Exception is Narrowly Construed and Cannot Apply Here

       The crime-fraud exception "applies only when there is probable cause to believe that the
communications were intended in some way to facilitate or to conceal the criminal activity." In
re Grand Jury Subpoena Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986) (citation omitted). Thus,
even where there is probable cause to believe that a crime has been committed, the government
must also establish probable cause to believe "that the communications were in furtherance of"
the criminal activity. In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (emphasis supplied).
It is therefore insufficient to show that the attorney-client communications overlapped
temporally with criminal activity. In re Grand Jury Subpoena Duces Tecum, 798 F.2d at 34.
Even the fact that the attorney-client communications provide evidence of the criminal conduct
is insufficient. In re Richard Roe, Inc., 68 F.3d at 40.

       Rather, the exception will apply "only when the court determines that the client
communication or attorney work product in question was itself in furtherance of the crime or
fraud." Id. (citing In re Grand Jury Subpoena Duces Tecum, 798 F.2d at 34) (emphasis in
original). In addition, the exception applies only to individual communications, not to a class of
communications: "the crime-fraud exception applies only where there is probable cause to
believe that the particular communication with counsel or attorney work product was intended in
some way to facilitate or to conceal the criminal activity." Id. (citing In re Grand Jury Subpoena
Duces Tecum, 798 F.2d at 34)) (emphasis supplied). For these reasons, courts routinely reject
assertions that the crime-fraud exception applies. See, e.g., United States v. Stewart, 2003 U.S.
Dist. LEXIS 23180, at **4-6 (S.D.N.Y. Dec. 29, 2003) (denying a government application for
subpoena where the government failed to make an adequate showing of the need for privileged
documents prepared during the government's pre-indictment investigation, and holding that the
crime-fraud exception does not apply "simply because privileged communications would provide
an adversary with evidence of a crime or fraud"); In re Currency Conversion Fee Antitrust
Litigation, 2002 U.S. Dist. LEXIS 21196, at **13-14 (S.D.N.Y. Nov. 1, 2002) (holding that the
crime-fraud exception did not apply to a privileged attorney memorandum advising a client on
the legality of possible courses of conduct); North River Ins. Co. v. Columbia Casualty Co., 1995
U.S. Dist. LEXIS 7956, at **13-15 (S.D.N.Y. May 31, 1995) (holding that the crime-fraud
exception did not apply where the excerpts from privileged communications cited by the party

31296339.2

Perry A. Carbone                                             CONFIDENTIAL
March 21, 2007
Page 4

seeking disclosure did not show an ongoing fraudulent scheme, but instead reflected "the balancing of potential rights and liabilities that typically characterize attorney-client communications").

        Here, there does not appear to be <u>any basis</u> for application of the crime-fraud exception. We are unaware of any evidence that Mr. Kerik sought out Mr. Tacopina's advice for the purpose of furthering or concealing any criminal conduct, and our review of the transcript made available to us has confirmed this view.

C.    <u>The Interception and Review of Privileged Discussions Implicates Mr. Kerik's Rights</u>

        Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended ("Title III") requires those monitoring intercepted communications to 'minimize' the interception of privileged communications. <u>See</u> 18 U.S.C. § 2518(8). Moreover, the statute expressly provides that privileged communications remain privileged, despite their interception:

                No otherwise privileged wire, oral, or electronic communication
                intercepted in accordance with, or in violation of, the provisions of
                this chapter shall lose its privileged character.

18 U.S.C. § 2517(4). <u>See</u> <u>United States v. Arreguin</u>, 277 F. Supp. 2d 1057, 1062 (E.D. Cal. 2003) ("Indeed, Congress took deliberate action to preserve the privilege where privileged communications were intercepted.") (citing Section 2517(4)).

        In light of these statutory commands, it is clear that (1) the interception of privileged communications between Mr. Kerik and Mr. Tacopina, or communications in which the substance of privileged discussions were disclosed, violated the minimization requirements of Title III; and (2) those communications remain privileged, despite the fact that they were intercepted.

        Given the plainly protected nature of the communications that were intercepted, it is especially troubling that you seem to believe that even a 'taint team' procedure for reviewing the discussions is unnecessary. Your blanket assertion that no such procedure is necessary because the communications are subject to the crime-fraud exception overlooks the narrow scope of that exception. More important, it fails to ensure that the investigation is not tainted by the disclosure of privileged communications.

        The government's review of privileged materials to determine if they fall within the scope of the 'crime-fraud' exception to the attorney-client privilege would constitute an intentional violation of the privilege. <u>United States v. Neill</u>, 952 F. Supp. 834, 840 (D.D.C. 1997) (holding that "there can be no doubt that the government intentionally invaded the attorney-client privilege" where a DOJ attorney "testified that she read most (but not all) of the potentially privileged materials to determine whether the crime-fraud exception applied"). In such a case, the government "bears the burden to rebut the presumption that tainted material was

Perry A. Carbone                                                        CONFIDENTIAL
March 21, 2007
Page 5

provided to the prosecution team." Neill, 952 F. Supp. at 840-41 (citing Briggs v. Goodwin, 698 F.2d 486, 496 n. 29 (D.C. Cir. 1983), vacated on other grounds, 712 F.2d 1444 (D.C. Cir. 1984)).

The courts afford broad remedies for the government's improper review of privileged communications. Courts will typically exclude from evidence not only the improperly reviewed privileged communications, but also all evidence derived therefrom. See United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1118 (10th Cir. 1998) (upholding the suppression of all evidence gathered after the date a privileged document was seized by the government).

Where the improper review is sufficiently egregious, dismissal of the indictment is appropriate. See United States v. Ginsberg, 758 F.2d 823, 833 (2d Cir. 1985) (noting that prejudice sufficient to warrant dismissal can be shown by establishing "that a prosecution witness testified concerning privileged communications, that prosecution evidence originated in such communication, or that such communications have been used in any other way to the detriment of the defendant"); United States v. Mackey, 405 F. Supp. 854, 866-67 (E.D.N.Y. 1975) (noting that when assessing whether to dismiss a facially valid indictment, court must assess the egregiousness of the violation, and the extent to which the defendant has been prejudiced).

D.    The Communications Should Be Reviewed Independently

As explained above, we are not aware of any facts that were in place here that would give rise to the narrowly circumscribed circumstances for the crime-fraud exception to apply. Thus, we request that your office submit to a judge or special master transcripts of all intercepted communications to which Mr. Tacopina was a party or in which communications with him were discussed.

We note that although courts have sanctioned the use of 'taint teams,' they have recognized that review by a judge or special master is the more proper mechanism. See, e.g., In re Grand Jury Subpoenas, 454 F.3d 511, 523 (6th Cir. 2006) (noting "an obvious flaw in the taint team procedure: the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion"). Several judges in the Southern District have expressed similar concerns and have ordered that privilege reviews be conducted by judges or special masters. See United States v. Kaplan, 2003 WL 22880914, at *12 (S.D.N.Y. Dec. 5, 2003) (Batts, J.) ("Certainly this Opinion should be counted among those disapproving the Government's use of an ethical wall team to 'protect' the attorney-client and work-product privileges or to determine whether the crime-fraud exception applies, where potentially privileged materials are turned over to the trial team and case agents before any challenge to those determinations can be raised by a Defendant and determined by a court."); United States v. Stewart, 2002 WL 1300059, at *6 (S.D.N.Y. June 11, 2002) (Koeltl, J.) (citing cases); In re Search Warrant for Law Offices Executed on March 19, 1992, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) (Brient, J.) ("[T]his Court notes that reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice"). Indeed, it appears that your office has conceded the lack of precedent in the Southern

31296339.2

Perry A. Carbone                                                    CONFIDENTIAL
March 21, 2007
Page 6

District reaching the opposite conclusion.  See Stewart, 2002 WL 1300059, at *6 ("The government also concedes that it is unaware of any judicial decision in this District that has compared the relative merits of using a Special Master and using a government privilege team in these circumstances and has identified use of a privilege team as a better procedure.").

    Furthermore, the guidance set out in the U.S. Attorneys' Manual ("USAM") for the review of materials seized from an attorney's office contemplates such independent review.  See Stewart, 2002 WL 1300059, at *6 (noting that "the USAM clearly contemplates the possibility of review by a special master or judicial officer . . . .").  The section of the USAM concerning the search of the premises of subject attorneys provides that "[p]rocedures should be designed to ensure that privileged materials are not improperly viewed, seized or retained during the course of the search."  USAM § 9-13.420(D).  Where limited review of arguably privileged material is required, a privilege team should be designated.  See USAM § 9-13.420(E).  While the USAM contemplates the use of privilege teams for gathering documents, in any subsequent review, it directs prosecutors to consider the use of a special master.  The USAM requires prosecutors to assess, among other factors, the following:

> ⊙  Who will conduct the review, i.e., a privilege team, a judicial officer, or a special master.
>
> ⊙  Whether all documents will be submitted to a judicial officer or special master or only those which a privilege team has determined to be arguably privileged or arguably subject to an exception to the privilege.

USAM § 9-13.420(F) (emphasis supplied).

    Here, the circumstances weigh more heavily for review by a judge or special master than in the case of a typical search of an attorney's office.  Here, the intercepted communications took place in the course of Mr. Tacopina's ongoing representation of Mr. Kerik in the very matters under investigation.  Moreover, as explained at length above, the alleged basis for overcoming the privilege – the crime-fraud exception – is exceedingly narrow in scope.  For all of these reasons, review by a judge or special master is essential to protect Mr. Kerik's privileges and to avoid a violation of his Sixth Amendment rights.

E.    There Has Been No Waiver of Any Privilege Claims

    Any suggestion that Mr. Kerik has somehow 'waived' all privilege claims as to any of the intercepted conversations is completely unfounded.  Mr. Kerik received materials relating to the wiretaps from the Bronx District Attorney's Office on June 30, 2006, in conjunction with his guilty plea in Bronx County Supreme Court.  Those materials reflected that several hundred conversations had been captured.  Although a transcript of part of one discussion involving Mr. Tacopina was included, the materials did not enumerate how many discussions involving Mr. Tacopina were captured, and no transcripts of any other such discussions were provided.

Perry A. Carbone                                                  CONFIDENTIAL
March 21, 2007
Page 7

Moreover, nothing in the materials that were disclosed revealed that the recordings had been provided to your office. Although we later learned through media reports and subsequent discussions with your office that you had obtained tapes pertaining to REDACTED it was only in our recent discussions that we learned that your office also had tapes of discussions involving Mr. Tacopina.

In any event, the details of the chronology are irrelevant. Even if Mr. Kerik had been made aware on the date of disclosure of the tapes to your office that discussions involving Mr. Tacopina were among them, he would have been under no obligation to affirmatively assert privilege. As explained above, Title III explicitly provides that privileged communications remain privileged, despite their interception. 18 U.S.C. § 2517(4). Nothing in Title III suggests that a privileged communication "shall lose its privileged character" because of a party's failure to make a pre-indictment assertion of privilege. Indeed, such a rule would eviscerate the statutory protection for privileged communications.

Title III, moreover, expressly provides that any aggrieved party who seeks to suppress evidence obtained in a wiretap may do so through a pretrial suppression motion. Section 2518(10)(a) of Title 18 explicitly provides that suppression motions may be made "in any trial, hearing, or proceeding . . . .[,]" and it further provides that "[s]uch motion shall be made before the trial, hearing, or proceeding, unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion." Id. In light of the express provisions of Sections 2517(4) and 2518(10)(a), there is plainly no basis to infer that a party who learns through a media report and discussions that a prosecutor may be in possession of privileged communications, waives any privilege claims by not immediately notifying the prosecutor of his privilege claims. Title III makes clear that all privilege claims are preserved up until the time of a pretrial suppression motion, or even later if the party "was not aware of the grounds of the motion."

F.    Tacopina Subpoena

We are also aware of a subpoena that you served on Mr. Tacopina's office for records. We have requested from Mr. Tacopina the opportunity to review any records that he intends to produce in response to the subpoena so that Mr. Kerik may assert any applicable privileges, and we will inform your office immediately if we intend to make any such assertions.

REDACTED

31296339.2

Perry A. Carbone
March 21, 2007
Page 8

REDACTED

CONFIDENTIAL

Very truly yours,

Kenneth M. Breen

31296339.2

# Attachment B

## Paul*Hastings*

Paul, Hastings, Janofsky & Walker LLP
Park Avenue Tower
75 East 55th Street
First Floor
New York, NY 10022
telephone 212-318-6000 • facsimile 212-319-4090 • www.paulhastings.com

Atlanta
Beijing
Brussels
Chicago
Hong Kong
London
Los Angeles
Milan
New York
Orange County
Palo Alto
Paris
San Diego
San Francisco
Shanghai
Stamford
Tokyo
Washington, DC

(212) 318-6344
kennethbreen@paulhastings.com

December 1, 2007

**VIA ELECTRONIC MAIL AND UPS**

Perry A. Carbone
Elliott B. Jacobson
U.S. Attorney's Office for the Southern District of New York
United States Courthouse
300 Quarropas Street
White Plains, New York 10601

Re:     United States v. Bernard B. Kerik, 07-CR-1027 (SCR)

Dear Mr. Carbone and Mr. Jacobson:

We have reviewed the government's letter to the Court raising a number of alleged conflicts of interest. That the government has chosen to ignore Mr. Kerik's prior requests that his attorney-client privilege and attorney work product protection be respected is surprising enough. That the government would then set out specific attorney-client communications in a publicly-filed letter that it also disseminated to the news media is improper. The government's actions represent an attempt to gain a tactical advantage and taint the jury pool. This strategy betrays weaknesses in the government's case.

The government has irreparably harmed Mr. Kerik's ability to obtain a fair trial. More immediately, it has failed to provide information that is essential to our ability to respond to the government's motion. We therefore write to make and reiterate discovery demands, so that Mr. Kerik can adequately defend his right to counsel of his choice, attempt to repair the damage done by the invasion of his attorney-client privilege, and attempt to restore his ability to obtain a fair trial untinged by the prejudice that the government's actions have caused.

Violation of the Attorney-Client Privilege

The government's disregard of Mr. Kerik's attorney-client privilege has a long history in this case. We advised the government in writing in a March 21, 2007 letter (a copy of which is attached) of our concerns about the invasion of Mr. Kerik's attorney-client privilege through the interception of privileged conversations by the recording of his cellular phone conversations during a two-month period in 2005. We explicitly stated Mr. Kerik's intention to assert his attorney-client privilege and attorney work product protection with respect to his communications with his counsel.

Paul*Hastings*

Perry A. Carbone
Elliott B. Jacobson
December 1, 2007
Page 2

In order to protect Mr. Kerik's privilege, we requested that the government provide tapes and transcripts of any and all attorney-client communications that were captured in the course of the recordings, and to describe the measures that had been put in place to avoid a taint of the investigative team through their inappropriate review of privileged communications. Just yesterday afternoon, we received four boxes of materials relating to the wiretaps, a substantial volume of materials that we will now have to review under the time constraints of the current briefing schedule.

Improper Publication of Attorney-Client Communications

Notwithstanding our clear statement in the March 21 letter concerning Mr. Kerik's intention to assert his attorney-client privilege and attorney work product protection, we are concerned that the government has ignored that request and has had unilateral discussions with his former counsel, Mr. Tacopina, about specific, privileged discussions between Mr. Kerik and Mr. Tacopina.   The publication of privileged communications continues a practice throughout the investigation of government leaks of matters protected by grand jury secrecy rules and plea negotiation confidentiality provisions.

Your decision to set out specific attorney-client communications in a publicly-filed document, in a highly-publicized case, and on dubious legal grounds that have not been decided by the Court was completely improper. As you well know, even if the Court were to accept the government's assertion (which we will vigorously contest) that the statements are not privileged and qualify as authorized admissions of Mr. Kerik because some information was communicated to the prosecutors, the Court must still assess whether the statements were made in the course of plea negotiations and are subject to the protections of Rule 410 of the Federal Rules of Evidence. More broadly, the Second Circuit has stated that a district court must carefully balance admissibility against "the defendant's interests in retaining the services of his counsel, assuring uninhibited discussions between his counsel and the prosecutor, and avoiding the risk of impairing his privilege against self-incrimination." United States v. Valencia, 826 F.2d 169, 172-73 (2d Cir. 1987). Each of these interests is implicated here.

By setting out such statements in a publicly-filed letter before the Court has made a determination that they are not privileged and are admissible, the government arrogated to itself the authority to decide whether the confidentiality of attorney-client communications can be ignored.   More critically, the government's actions have irreparably harmed Mr. Kerik's ability to obtain a fair trial.

Additional Necessary Discovery

Although the government chose to disseminate the substance of specific discussions between Mr. Kerik and his counsel, its letter is remarkably vague about the communications between Mr. Tacopina and the government that were purportedly made

Paul*Hastings*

Perry A. Carbone
Elliott B. Jacobson
December 1, 2007
Page 3

to obstruct the government's investigation. The letter provides no specificity as to the dates of, the participants to, or the specific contents of such discussions.

In the absence of such information, we cannot adequately respond to the government's allegations. Moreover, we are entitled to the evidence upon which the government relies, as well as that which would undermine the credibility of the government's assertions, such as inconsistencies among the accounts of participants to the meetings at issue.

Therefore, in order for us to be able to respond to the government's motion, we demand immediate production of the following:

1. With respect to any and all meetings between and among Mr. Tacopina, Mr. Breen, the Bronx County District Attorney's Office and the New York City Department of Investigation:

   a. identify the date, place and participants of such meetings;

   b. produce any and all written and recorded statements of any and all participants of those meetings (Fed. R. Crim. P. 16(A)(1)(E));

2. Identify any and all statements of Mr. Kerik's counsel that the government claims constitute admissions of Mr. Kerik under Rule 801(d)(2) of the Federal Rules of Evidence (Fed. R. Evid. 801(d)(2); Fed. R. Crim. P. 16(a)(1)(A), (B));

3. Produce any and all written and recorded statements of meetings between any government representatives and Joseph Tacopina and/or counsel for Mr. Tacopina (Fed. R. Crim. P. 26.2; 18 U.S.C. § 3500);

4. With respect to Mr. Tacopina, confirm whether:

   a. he has ever been a subject or target of any investigation by your office;

   b. the government ever extended any formal or informal offer of immunity or leniency to him;

   c. whether he made any statements to your office under any proffer, immunity, cooperation or other similar agreements;

5. With respect to any and all witnesses whom the government intends to call at any hearings on the conflict of interest matter, provide:

   a. copies of all written and recorded witness statements (Fed. R. Crim. P. 26.2; 18 U.S.C. § 3500);

Paul*Hastings*

Perry A. Carbone
Elliott B. Jacobson
December 1, 2007
Page 4

    b.   any and all materials discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963) and
its progeny, including <u>Giglio v. United States</u>, 405 U.S. 150 (1972), pursuant to
United States Attorneys' Manual § 9-5.001.

In order that we may obtain such information in sufficient time to prepare our response
to the government's motion, we demand the production of materials no later than the
close of business on Tuesday, December 4.

Sincerely,

Kenneth M. Breen
of PAUL, HASTINGS, JANOFSKY & WALKER LLP

Attachment

(Attachment Omitted)

# Attachment C



U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

United States District Courthouse
300 Quarropas Street
White Plains, New York 10601

December 3, 2007

**BY FAX AND MAIL**
Kenneth Breen, Esq.
Paul, Hastings, Janofsky & Walker
75 East 55th Street
New York, New York  10022

Re:  *United States v. Bernard B. Kerik*
     **07 Cr. 1027 (SCR)**

Dear Mr. Breen:

We have your letter of December 1, 2007.  Since we are
under no obligation to explain or defend ourselves to you, we
will not address herein the allegations you have made concerning
the Government's conduct during the investigation and prosecution
of this matter except to say that they are -- as the record will
show -- entirely baseless and unfounded.

As far as your discovery "demands" are concerned, they
are denied.  We note that when we made relevant discovery
requests concerning our *Curcio* motion -- *i.e.,* when we requested
your billing records so that we could determine when it was that
you claim you were retained, what meetings you claim to have
attended with prosecutive/investigative authorities, etc. -- you
either declined or ignored our requests.

In a telephone message you left earlier today, you
suggested that you might need more time to respond were the
Government to comply with your discovery demands.  Since we do
not intend to provide the requested materials we see no reason
for an adjournment at this time.  If you are unable to comply
with the current briefing schedule and need more time for some

-1-

other reason, please feel free to contact us so that we can
discuss your request.

                    Very truly yours,

                    MICHAEL J. GARCIA
                    United States Attorney

          By:  _____
                    Asst. U.S. Attorney Perry A. Carbone
                    Asst. U.S. Attorney Elliott B. Jacobson

                            -2-

PAGE 3/3 * RCVD AT 12/4/2007 3:36:34 PM [Eastern Standard Time] * SVR:NYCRF1/10 * DNIS:7828 * CSID: * DURATION (mm-ss):01-30

TOTAL P.03