PAUL, HASTINGS, JANOFSKY & WALKER LLP
Kenneth M. Breen (KB0367)
75 East 55th Street
New York, NY 10022-3205
Telephone: (212) 318-6000

*Counsel for Defendant Bernard B. Kerik.*

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>- against –<br><br>BERNARD B. KERIK<br><br>Defendant. | Index No. 07-CR-1027 (SCR) |

## MEMORANDUM OF LAW IN OPPOSITION TO THE
## GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

Dated: New York, New York
December 7, 2007

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 2

STATEMENT OF FACTS .................................................................................... 3

    A.    The Prior State Investigations ............................................................ 3

    B.    The Federal Investigation .................................................................. 7

ARGUMENT ...................................................................................................... 9

I.    ANY CONFLICT OF INTEREST WOULD BE WAIVABLE ...................................... 9

II.    THE COURT SHOULD ORDER A HEARING AND DISCOVERY ......................... 13

    A.    There Are Factual Issues as to the Contents of the Alleged Attorney
        Statements .................................................................................... 14

    B.    There Are Factual Issues as to How the Government Obtained the
        Confidential Communications ......................................................... 17

    C.    Other Factual Issues Warrant a Hearing and Discovery .................... 18

III.    THE ADVOCATE-WITNESS RULE IS NOT IMPLICATED HERE ......................... 19

    A.    The Testimony of Mr. Kerik's Counsel Would Not Be Necessary, Even If
        the Court Were to Admit the Alleged Attorney Statements ................. 20

    B.    The Alleged Attorney Statements, and Any Testimony by Mr. Kerik's
        Counsel Concerning Them, Would Be Collateral ............................... 24

IV.    THE ALLEGED ATTORNEY STATEMENTS WERE MADE IN
    CONNECTION WITH PLEA DISCUSSIONS AND ARE NOT ADMISSIBLE ......... 24

    A.    Rules 410 of the Federal Rules of Evidence and 11(f) of the Federal Rules
        of Criminal Procedure Preclude Admission of Plea Discussions ........ 24

    B.    The Alleged Attorney Statements Are Inadmissible Under Rule 410 ........ 26

    C.    The Statements at Issue Were Not Subject to an Exception or a Waiver of
        Mr. Kerik's Rights Under the Rules ................................................. 28

V.    THE ADMISSION OF THE ATTORNEY STATEMENTS WOULD
    UNFAIRLY DENY MR. KERIK HIS CHOICE OF COUNSEL ............................... 29

VI.    NO CONFLICT IS PRESENTED BY THE OTHER ISSUES THAT THE
    GOVERNMENT IDENTIFIES ........................................................................ 32

    A.    The Representation in Connection with the Prior State Court Plea Does
        Not Give Rise to Any Conflict of Interest ......................................... 32

    B.    The Pendency of the Fulbright Lawsuit is of No Consequence ............ 33

CONCLUSION ................................................................................................. 34

# TABLE OF AUTHORITIES

## CASES

United States v. Acosta-Ballardo,
    8 F.3d 1532 (10th Cir. 1993) ...................................................................25

In re Application for Material Witness Warrant,
    214 F. Supp. 2d 356 (S.D.N.Y. 2002).............................................................13

United States v. Arrington,
    867 F.2d 122 (2d Cir. 1989)........................................................................29

United States v. Bridges,
    46 F. Supp. 2d 462 (E.D. Va. 1999) ......................................................27, 28

United States v. Chapman,
    954 F.2d 1352 (7th Cir. 1992) ...................................................................24

Crews v. County of Nassau,
    No. 06-CV-2610, 2007 U.S. Dist. LEXIS 6572 (E.D.N.Y. Jan. 30, 2007) ......................19

United States v. Cunningham,
    672 F.2d 1064 (2d Cir. 1982)......................................................................9

United States v. Curcio,
    680 F.2d 881 (2d Cir. 1982).......................................................................10

Cuyler v. Sullivan,
    446 U.S. 335 (1980).................................................................................9

United States v. Diozzi,
    807 F.2d 10 (1st Cir. 1986)........................................................................11

United States v. Flaharty,
    295 F.3d 182 (2d Cir. 2002)........................................................................22

United States v. Fronk,
    173 F.R.D. 59 (W.D.N.Y. 1997)..............................................................26, 29

United States v. Fulton,
    5 F.3d 605 (2d Cir. 1993)...........................................................................9

United States v. Garcia,
    447 F.3d 1327 (11th Cir. 2006) ...................................................................12

United States v. Gerena,
    116 F.R.D. 596 (D. Conn. 1987)......................................................................13

United States v. Gonzalez-Lopez,
    126 S. Ct. 2557 (2006).................................................................................9

In re Grand Jury Subpoena Duces Tecum,
    798 F.2d 32 (2d Cir. 1986)...........................................................................16

Grunewald v. United States,
    353 U.S. 391 (1957)...................................................................................23

United States v. Jones,
    900 F.2d 512 (2d Cir. 1990).....................................................................11, 20

United States v. Kaplan,
    No. 02 CR 883, 2003 WL 22880914 (S.D.N.Y. Dec. 5, 2003) ............................17

United States v. Kliti,
    156 F.3d 150 (2d Cir. 1998).............................................................9, 10, 12, 20

Kubin v. Miller,
    801 F. Supp. 1101 (S.D.N.Y. 1992)...............................................................20

United States v. Lauersen,
    No. 98CR1134, 2000 WL 1693538 (S.D.N.Y. Nov. 13, 2000)............................32

United States v. Lawson,
    683 F.2d 688 (2d Cir. 1982).......................................................................25

United States v. Leslie,
    103 F.3d 1093 (2d Cir. 1997).......................................................................11

United States v. Lussier,
    71 F.3d 456 (2d Cir. 1995)...........................................................................9

United States v. Mannino,
    551 F. Supp. 13 (S.D.N.Y. 1982) ............................................................26, 27, 29

United States v. Martinez,
    143 F.3d 1266 (9th Cir. 1998) .....................................................................12

United States v. Ming He,
    No. 95-1331, 1996 U.S. App. LEXIS 28744 (2d Cir. Sept. 3, 1996)................................13

Paretti v. Cavalier Label Co., Inc.,
    722 F. Supp. 985 (S.D.N.Y. 1989) .................................................................19, 20, 21

United States v. Perez,
    325 F.3d 115 (2d Cir. 2003).........................................................................9, 10, 11

Republic Gear Co. v. Borg-Warner Corp.,
    381 F.2d 551 (2d Cir. 1967)....................................................................................17

In re Richard Roe, Inc.,
    68 F.3d 38 (2d Cir. 1995).......................................................................................16

United States v. Robertson,
    582 F.2d 1356 (5th Cir. 1978) ........................................................................ 25-28

United States v. Rybicki,
    354 F.3d 124 (2d Cir. 2003)....................................................................................22

Santobello v. New York,
    404 U.S. 257 (1971)...............................................................................................25

In re Search Warrant for Law Offices Executed on March 19, 1992,
    153 F.R.D. 55 (S.D.N.Y. 1994) .............................................................................18

United States v. Serna,
    799 F.2d 842 (2d Cir. 1986).............................................................................25, 26

United States v. Stein,
    410 F. Supp. 2d 316 (S.D.N.Y. 2006).............................................................10, 11, 12

United States v. Stein,
    435 F. Supp. 2d 330 (S.D.N.Y. 2006)....................................................................13

United States v. Stewart,
    No. 02 CR 395, 2002 WL 1300059 (S.D.N.Y. June 11, 2002) ........................................18

United States v. Viertel,
    S2 01 Cr. 571, 2002 U.S. Dist. LEXIS 12833 (S.D.N.Y. July 4, 2002)............................23

United States v. Valencia,
    826 F.2d 169 (2d Cir. 1987)..............................................................................29-32

United States v. Velez,
    354 F.3d 190 (2d Cir. 2004)....................................................................................24

LEGAL_US_E # 77418469.5

United States v. Walsh,
    699 F. Supp. 469 (D.N.J. 1988) ...........................................................13

United States v. Washington,
    614 F. Supp. 144 (E.D. Pa. 1985) .........................................................27

Wheat v. United States,
    486 U.S. 153 (1988)................................................................................9

## STATUTES

Fed. R. Crim. P. 11(f) ...............................................................................24

Fed. R. Crim. P. 57(b).............................................................................13

Fed. R. Evid. 410 ......................................................................................25

Fed. R. Evid. 410(4).............................................................................24, 26

## MISCELLANEOUS

New York Administrative Code § 12-110(b)(15)........................................6

New York City Charter § 2604(b)(5).........................................................5

NYCRR DR 5-102(a) ...............................................................................19

New York Penal Law § 200.11..................................................................4

United States Attorney's Manual §§ 9-13.420(D),(E) ...............................18

LEGAL_US_E # 77418469.5

Defendant Bernard B. Kerik respectfully submits this Memorandum of Law in Opposition to the Government's Motion to Disqualify Counsel.

## PRELIMINARY STATEMENT

As Mr. Kerik faces a sixteen-count Indictment covering wide-ranging honest services fraud, tax and false statements charges, the government seeks to deprive Mr. Kerik of his current counsel, Kenneth Breen. In a case in which Mr. Breen has represented Mr. Kerik in connection with a prior related state court proceeding and a federal investigation that lasted some eighteen months, the consequences of disqualification would be staggering.

The government seeks to disqualify Mr. Breen largely on account of testimony of Mr. Kerik's former counsel, Joseph Tacopina, that it intends to offer. As explained more fully below, the alleged conflicts are at best hypothetical and certainly waivable. For example, while the government invokes the advocate-witness rule, the testimony of Mr. Tacopina would be cumulative of other alleged false exculpatory statements that the government intends to offer.

Moreover, even if Mr. Tacopina's statements to the representatives of the Bronx District Attorney's Office and the Department of Investigation ("DOI") constituted admissions of Mr. Kerik (which, as explained below, the government has failed to establish), they would still be inadmissible under Rule 410 of the Federal Rules of Evidence as statements made in the course of plea negotiations. Yet even if the statements do not qualify for protection under Rule 410, the harms that the admission of these statements would have upon Mr. Kerik's right to counsel of his choice would warrant excluding them. For all of these reasons, the advocate-witness rule does not mandate the disqualification of Mr. Breen. In any event, Mr. Tacopina's testimony could be limited so that Mr. Breen would not need to be a witness.

The other grounds that the government advances for disqualification – that Mr. Breen should be disqualified because he cannot attack Mr. Kerik's state court allocution, or that he would somehow become a silent witness if character witnesses were asked about litigation between Mr. Breen's former law firm and Mr. Kerik – do not even qualify as actual conflicts, much less ones that warrant disqualification of Mr. Kerik's counsel.

For all of these reasons, even if the Court were to find a potential conflict of interest based on any of the grounds alleged by the government, any such conflict would be waivable. As such, the Court should direct that a hearing be held and discovery be provided.

## STATEMENT OF FACTS

A.    The Prior State Investigations

This case initially arose out of an investigation by the Bronx County District Attorney's Office and the New York City Department of Investigation ("DOI"). That investigation was prompted by publicized allegations that arose in the wake of Mr. Kerik's withdrawal of his nomination to become Secretary of the Department of Homeland Security in December 2004.

Those allegations included a claim that while he served as New York City Commissioner of Corrections, Mr. Kerik received from company XYZ renovations to an apartment that he had purchased in the Bronx. The Bronx District Attorney's Office then began an investigation, which included interception of Mr. Kerik's cellular phone conversations over a two-month period in 2005.

1.    Discussions with the Government

Initially, Mr. Kerik was represented by Joseph Tacopina, a well-known defense attorney in New York. The government stated at the December 6 oral argument that Mr. Tacopina's first contact with the District Attorney's Office and the DOI was in mid-December to late-December 2004.

Later, Mr. Kerik also retained Kenneth Breen, who was then a partner at Fulbright & Jaworski, LLP ("Fulbright"). Although the government's letter asserts that Mr. Breen was retained "[i]n or about the summer of 2005," in fact Mr. Breen began to have some informal discussions with Mr. Tacopina and Mr. Kerik only in the fall of 2005. It was only in December 2005 that Mr. Breen even circulated a draft engagement letter to Mr. Kerik.

Based on a review of billing records, it appears that Mr. Breen first accompanied Mr. Tacopina to a meeting at the Bronx District Attorney's Office on March 8, 2006. By this point, the Bronx investigation had been ongoing for approximately fifteen months, and nearly that much time had passed since Mr. Tacopina's first meeting with the Bronx District Attorney's Office and the DOI. During that time period, the District Attorney's Office had been actively gathering evidence from third-parties, and it had intercepted cellular phone conversations of Mr. Kerik for approximately two months.

Within weeks of the March 8, 2006 meeting, Messrs. Breen and Tacopina submitted a letter, on Fulbright letterhead, that addressed in detail the legal deficiencies in the contemplated charge, namely, receiving in the second degree under New York Penal Law § 200.11.

That letter included a heading stating that the letter was "Confidential – For Settlement Purposes Only." The letter expressly stated, "We submit this letter as an offer of settlement pursuant to CPLR § 4547. Your office agrees that neither the fact of this offer of settlement, nor any statements made herein, are admissible in any proceeding." No one from the Bronx District Attorney's Office ever disputed that the letter was made in the course of settlement discussions.

The letter further stated, in relevant part, "We understand the crux of the People's theory to be as follows: (a) Mr. Kerik accepted a thing of value, namely renovations on his Bronx apartment in excess of what he paid for himself[.]" In the letter, Mr. Kerik's counsel argued that

any prosecution based on the contemplated theories would be barred by the applicable statute of limitations, which had lapsed sometime in 2005. Mr. Kerik's counsel also argued that the government could not establish the requisite quid pro quo between the alleged giver of the gift and Mr. Kerik, or that Mr. Kerik accepted the gift with the requisite corrupt state of mind. The letter made no factual representations, but rather simply argued legal deficiencies in the theory outlined by the Bronx District Attorney's Office.

Billing records reflect that the only other meeting with Bronx District Attorney's Office representatives that Mr. Breen attended was on May 25, 2006, when he and Mr. Tacopina met with District Attorney Robert Johnson and other senior personnel in the office. At the meeting, the parties discussed, among other things, the merits of the arguments that Mr. Kerik's counsel had advanced in the May 12 letter.

### 2. The State Court Guilty Plea

Ultimately, after further discussions between Mr. Kerik's counsel and the Bronx District Attorney's Office, an agreement was reached as to a plea of guilty. Although the government's letter fails to provide any details, it was in fact Mr. Tacopina who negotiated the plea agreement, including the allocution, it was Mr. Tacopina who signed the plea agreement, and it was Mr. Tacopina who stood with Mr. Kerik during the plea allocution and who spoke on the record. Indeed, Mr. Breen was on trial on a case in this District in early June.

The District Attorney's Office decided not to bring the previously contemplated bribery charge, and instead agreed to a plea to two unclassified misdemeanors. The two offenses involved violations of ethics provisions of the New York City Charter and New York Administrative Code applicable to public officials and administered by the New York City Conflicts of Interest Board. The first was a violation of New York City Charter Section 2604(b)(5), which provides that "[n]o public servant shall accept any valuable gift, as defined by

rule of the board, from any person or firm which such public servant knows is or intends to become engaged in business dealings with the city . . . ." As stated by the prosecutor during Mr. Kerik's plea allocution (a copy of which is attached to USAO Letter):

> the facts are that on or about and between August 1998 and December 2000, the defendant, Bernard Kerik, as a New York City Commissioner, did accept a valuable gift in the form of renovations to his Bronx apartment, that is 679 West 239th Street, apartments 1H and 1J, [i]n an amount valued for purposes of this plea [sic] $165,000 from XYZ, owned by John Doe #1 and John Doe #2, knowing that XYZ intended to engage in business dealings with the City of New York.
> . . . .
> Although some may draw inference [sic] from these facts, there is no direct evidence of an agreement between Mr. Kerik and the owners of XYZ, John Doe #1 and John Doe #2, that the renovations to Mr. Kerik's apartment were given in return for Mr. Kerik's assistance with the New York City regulators.

Allocution 7:16-8:20 (June 30, 2006). Mr. Tacopina then clarified that, as was reflected in the written plea agreement, Mr. Kerik received a gift from XYZ <u>or a subsidiary</u>, and the Assistant District Attorney made no objection. Mr. Kerik then stated in his allocution:

> I admit that I took a gift from XYZ or a subsidiary, and thinking that they were clean, I spoke to City officials about XYZ on two occasions and on another occasion permitted my office to be used for a meeting between Trade Waste authorities and XYZ officials.

Allocution 10:2-8 (June 30, 2006).

The second unclassified misdemeanor to which Mr. Kerik pleaded guilty was a violation of New York Administrative Code Section 12-110(b)(15) (now Section 12-110(d)(15)), which requires public officials to identify certain of their creditors in their annual disclosure reports filed with the New York City Conflict of Interests Board.[1]

---

[1] Section 12-110(d)(15) states in relevant part as follows:

At no time in the course of the plea negotiations did the District Attorney's Office insist that Mr. Kerik plead guilty to any obstruction of justice charges.

B.    The Federal Investigation

Following Mr. Kerik's guilty plea, the United States Attorney's Office in this District ("USAO") opened an investigation, which touched in large part on the same issues that were the subject of the Bronx District Attorney's Office investigation.

In March 2007, the investigation took a surprising turn, when the USAO issued a grand jury subpoena to Mr. Tacopina. Shortly thereafter, on March 21, Mr. Kerik's counsel submitted a letter to the USAO, in which it expressed its concerns about the interception of privileged communications in the course of the monitoring of Mr. Kerik's cellular phone in 2005. In the letter, Mr. Kerik's counsel unambiguously stated that Mr. Kerik intended to assert his attorney-client privilege and attorney work product protection. It also requested copies of any recordings that contained privileged communications, as well as an explanation of the procedures that the government had instituted to avoid any taint of the investigative team through its access to privileged communications.

In contravention of the express language in the March 2007 letter, however, the government subsequently spoke with Mr. Tacopina and inquired about the contents of privileged

---

List each creditor to whom the person reporting or his or her spouse or domestic partner was indebted, for a period of ninety consecutive days or more during the preceding calendar year, and each such creditor to whom any debt was owed on the date of filing, in an amount of five thousand dollars or more. Debts to be listed include real estate mortgages and other secured and unsecured loans. . . . Any loan issued in the ordinary course of business by a financial institution to finance educational costs, the cost of home purchase or improvements for a primary or secondary residence, or purchase of a personally owned motor vehicle, household furniture or appliances shall be excluded.

communications between Mr. Kerik and Mr. Tacopina. The government provided no notice to Mr. Kerik that it would be doing so.

Moreover, left out of the government's letter is any explanation of the context of its discussions with Mr. Tacopina. We have asked the USAO to confirm whether, at any point in its discussions with Mr. Tacopina, it identified Mr. Tacopina as a subject or target of an investigation, or whether he was ever provided with any form of immunity or leniency. In or around March 2007, Mr. Tacopina withdrew from representing Mr. Kerik in the USAO investigation.

**ARGUMENT**

I.    ANY CONFLICT OF INTEREST WOULD BE WAIVABLE

The Sixth Amendment right to counsel encompasses within it the defendant's right to counsel of his choice. <u>Wheat v. United States</u>, 486 U.S. 153, 159 (1988). Courts have "consistently recognized that the right of an accused who retains an attorney to be represented by that attorney is 'a right of constitutional dimension.'" <u>United States v. Perez</u>, 325 F.3d 115, 124 (2d Cir. 2003) (quoting <u>United States v. Wisniewski</u>, 478 F.2d 274, 285 (2d Cir. 1973)).

If defense counsel is erroneously disqualified, the defendant's Sixth Amendment rights have been per se violated. <u>United States v. Gonzalez-Lopez</u>, 126 S. Ct. 2557, 2563 (2006) ("Where the right to be assisted by counsel of one's choice is wrongly denied, therefore, it is unnecessary to conduct an ineffectiveness or prejudice inquiry to establish a Sixth Amendment violation."). As such, a defendant's "choice of counsel should not be unnecessarily obstructed by the court." <u>United States v. Cunningham</u>, 672 F.2d 1064, 1070 (2d Cir. 1982) (citation omitted).

On a disqualification motion, a district court must first determine whether there is a conflict at all, and if so, whether it is an actual or potential conflict. <u>United States v. Fulton</u>, 5 F.3d 605, 609 (2d Cir. 1993). An actual conflict arises only when the interests of counsel and the client "diverge with respect to a material factual or legal issue or to a course of action." <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 356 n.3 (1980). A potential conflict may arise "if the interests of the defendant may place the attorney under inconsistent duties at some time in the future." <u>United States v. Kliti</u>, 156 F.3d 150, 153 n.3 (2d Cir. 1998).

Disqualification is mandated only if "the conflict is so severe that no rational defendant would waive it." <u>Id at 153</u>. (citation omitted). <u>See</u> also <u>United States v. Lussier</u>, 71 F.3d 456, 461 (2d Cir. 1995) (disqualification manadated where the conflict "is so egregious that no

rational defendant would knowingly and voluntarily desire the attorney's representation . . . ."). For any lesser conflict, disqualification is not mandated, and instead the Court should conduct a hearing pursuant to the procedure set out in United States v. Curcio, 680 F.2d 881 (2d Cir. 1982), to determine if the defendant may make a knowing and intelligent waiver of the conflict. Kliti, 156 F.3d at 153 ("If it is a lesser conflict, the court must conduct a Curcio hearing to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation.") (citation omitted).

As the Second Circuit has cautioned, mandatory disqualification is an "extreme" remedy, and district courts should refuse to entertain waivers of conflicts only where the conflict will per se interfere with the defendant's right to the effective assistance of counsel:

> [I]f the court discovers no genuine conflict, it has no further obligation.  At the other end of the spectrum, if the court determines that counsel has an actual conflict that is so severe as to indicate per se that the rendering of effective assistance will be impeded, or is analogous to such a conflict in breadth and depth, the court must . . . disqualify counsel.  And if, between these two extremes, the court determines that the attorney suffers from a lesser [actual] or only potential conflict, then it may accept a defendant's knowing and intelligent waiver of his right to conflict-free counsel and permit the defendant to be represented by the attorney of his choice.

Perez, 325 F.3d at 125 (internal quotation marks and citations omitted).

In assessing whether to accept a waiver, a court should take into account "whether disqualifying the defendant's chosen counsel would create 'real prejudice' to the defendant based on the length of the representation and/or counsel's familiarity with the case." United States v. Stein, 410 F. Supp. 2d 316, 328 (S.D.N.Y. 2006) (quoting Cunningham, 672 F.2d at 1071).   In Stein, for example, Judge Kaplan accepted a defendant's waiver of a conflict on account of his counsel's prior joint representation of two co-conspirators, one of whom had since pleaded

guilty. Judge Kaplan found that disqualification "would deprive [the defendant] of the benefit of two years of preparation" by his attorneys. Id. at 328-29.

A court should also take into account a defendant's agreement to remedial measures, such as the limitation of testimony to avoid references to the attorney's participation in the events at issue, limitations on cross-examination or the use of independent counsel to conduct particular cross-examinations. In United States v. Jones, 900 F.2d 512 (2d Cir. 1990), for example, the Second Circuit held that no disqualification was required of an attorney who submitted a pre-indictment proffer letter to the government, and the court noted that the attorney was not a silent witness because the attorney's role in preparing the letter was never mentioned to the jury. The court in Jones cited United States v. Diozzi, 807 F.2d 10, 13 (1st Cir. 1986), which held that the defendants' attorneys had been improperly disqualified on account of their submission of a pre-indictment memorandum protesting their client's innocence, particularly where the defense had offered to stipulate to facts to avoid need for attorney testimony. Courts within the Second Circuit have affirmed the use of such measures, see, e.g., Perez, 325 F.3d at 125-128 (affirming district court's denial of two motions to disqualify defense counsel where the government had stated that it planned to call defense counsel as a rebuttal witness to testify at trial against the defendant, and later as a witness to an allegedly false proffer session statement, and stating that "[w]here the right to counsel of choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not be dictated by the government") (citing Cunningham, 672 F.2d at 1073); United States v. Leslie, 103 F.3d 1093, 1098 (2d Cir. 1997) (affirming district court finding that former client's waiver of any attorney-client privilege that might otherwise have hindered defense counsel's cross-examination of former client, if former client should take the stand, obviated the

need for a Curcio hearing, and noting that even if there were a potential conflict, no prejudice was shown); Stein, 410 F. Supp. 2d at 329 (holding that defendant could waive conflict arising from his counsel's prior representation of prospective government witnesses where the defendant was willing to forego counsel's right to cross-examine the witnesses and from discussing those witnesses with counsel for co-defendants and with any independent counsel retained to conduct cross-examination), as have courts outside the Second Circuit, see, e.g., United States v. Garcia, 447 F.3d 1327, 1337 (11th Cir. 2006) (holding that district court did not abuse discretion by not holding a second hearing on whether to disqualify defense counsel where defendant had knowingly and intelligently waived conflict following a thorough pretrial hearing); United States v. Martinez, 143 F.3d 1266, 1268-1269 (9th Cir. 1998) (holding waiver of conflict-free counsel valid where the court engaged in an "extensive colloquy" with the defendant, and distinguishing Wheat on the grounds that there was no showing in that case that defense counsel's conflict "had any impact on his representation at all, much less that it threatened to violate his Sixth Amendment rights").

Indeed, in Kliti, the Second Circuit reversed the defendant's conviction because the district court had failed to conduct a Curcio hearing, and the Second Circuit instructed the district court whether the defendant's consent to limitations on cross-examination could render any conflicts waivable. 156 F.3d at 156 n.7.

Here, the conflicts that the government has alleged are potential at most, in that the government has alleged that if Mr. Tacopina were to testify according to the government's proffer, Mr. Breen would find himself "under inconsistent duties at some time in the future." Kliti, 156 F.3d at 153 n.3. As explained below, even if the alleged attorney statements were admissible (and we explain below why they are not), their limited relevance, combined with

certain restrictions on references to Mr. Breen and meetings in which he participated, could render any conflict negligible and waivable. The record as it stands now does not support a finding that "no rational defendant" in Mr. Kerik's position would waive such a conflict, particularly if minor limitations could be placed upon Mr. Tacopina's testimony or separate counsel could be identified to conduct any cross-examination of Mr. Tacopina.

II.    THE COURT SHOULD ORDER A HEARING AND DISCOVERY

It would therefore be erroneous to deny Mr. Kerik the counsel who has represented him for over two years, including throughout the eighteen-month federal investigation, without conducting a hearing with adequate discovery. In connection with such a hearing, and prior to rendering any decision on the government's motion, the Court should order the government to produce the discovery that Mr. Kerik sought in his December 5 discovery motion.

The Court should order a hearing and the production of the discovery that Mr. Kerik sought in his December 5 discovery motion. As we explained in our motion, the Court has authority to order such discovery, both under its inherent supervisory authority, see United States v. Ming He, No. 95-1331, 1996 U.S. App. LEXIS 28744, at *26 (2d Cir. Sept. 3, 1996) (citing McNabb v. United States, 318 U.S. 332, 340 (1943)); In re Application for Material Witness Warrant, 214 F. Supp. 2d 356, 362-363 (S.D.N.Y. 2002) (noting that this supervisory power is often exercised to keep the judicial process free from future taint, such as the introduction of improperly obtained evidence), and Fed. R. Crim. P. 57(b). See United States v. Gerena, 116 F.R.D. 596, 598 (D. Conn. 1987) (relying upon Rule 57 and the court's inherent authority to order disclosure of expert reports in connection with pretrial suppression hearing). Discovery on a disqualification motion such as this is appropriate. See, e.g., United States v. Walsh, 699 F. Supp. 469, 475 (D.N.J. 1988) (noting that district court will set discovery schedule in advance of hearing on government's disqualification motion); see also United States v. Stein, 435

F. Supp. 2d 330, 352 (S.D.N.Y. 2006) (noting that the court had ordered discovery in advance of hearing on issue of deprivation of defendant's Sixth Amendment right to counsel).

A.    There Are Factual Issues as to the Contents of the Alleged Attorney Statements

The crux of the government's disqualification motion is that Mr. Tacopina repeated to prosecutors certain attorney-client communications, and that those communications between Mr. Tacopina and Mr. Kerik were not subject to the attorney-client privilege.    Yet on this fundamental aspect of the government's motion, there are factual issues that preclude the Court from resolving the issue solely on the basis of the government's proffer.

The government asserts in its papers, as supplemented by the information provided by the government at the December 6 oral argument, that it will offer evidence that (1) prior to the engagement of Mr. Breen, Mr. Kerik provided information to Mr. Tacopina, which Mr. Tacopina then conveyed to representatives of the Bronx District Attorney's Office and the DOI; and (2) after Mr. Breen's engagement as co-counsel, Mr. Kerik repeated the same information to both Mr. Tacopina and Mr. Breen, and that in subsequent meetings with the Bronx District Attorney's Office and the DOI at which Mr. Breen was present, Mr. Tacopina repeated the statements.

The alleged information that Mr. Kerik conveyed to Mr. Tacopina, and that Mr. Tacopina conveyed to the prosecutors, consisted of two alleged statements.    The first alleged statement by Mr. Kerik is that he paid for the renovations to his Bronx apartment in the amount of approximately $50,000.    The second is that Mr. Kerik obtained a loan from a realtor for $32,000 that was used to fund the downpayment on the Bronx apartment.

We note that the government's summary of the statements has not been entirely consistent.    In some instances, the government alleges that Mr. Kerik said that he had paid for all of the renovations to the apartment, presumably meaning that he was affirmatively stating that he

knew that no one else had paid for any portion of the renovations. In other instances, however, the government alleges that Mr. Kerik said that he had paid for the renovations, without specifying that he said that he had paid for all of the renovations. For example, at the December 6 oral argument, the government represented that someone from the Bronx District Attorney's Office has a "distinct recollection" that Mr. Tacopina said that the renovations cost around $50,000 and that Mr. Kerik paid for them. This latter version could be interpreted to mean that Mr. Kerik paid $50,000 in renovation costs, not necessarily that he knew that no one else had paid for other costs, or that he had received a discount.

This is not a hypothetical distinction, but one that is important to the government's honest services fraud theory. As the recipient of discounted renovations, Mr. Kerik would not necessarily know whether (as the government alleges) a third-party was paying the contractor for the amount of the discount, and he certainly would not know the precise amount of the value of the renovations.

In any event, while the government makes the conclusory statement that Mr. Kerik authorized Mr. Tacopina to make the statements discussed above to the prosecutors, it offers no details to establish that as a layperson, Mr. Kerik understood that in making the statements at issue, his communications with Mr. Tacopina would not remain confidential.

This is particularly so with respect to the alleged statement concerning the loan that is the subject of the false loan application charge (Count Eight). As the government recognizes, the alleged statement by Mr. Kerik that he borrowed funds from a realtor to fund the down payment on the Bronx apartment goes to the heart of the charge. The government has proffered no evidence that even if Mr. Tacopina advised Mr. Kerik of the implications of making such a

statement to prosecutors, that Mr. Kerik knowingly waived his attorney-client privilege and authorized Mr. Tacopina to make an inculpatory statement to the prosecutors.

For these same reasons, the record does not support the government's reliance upon the crime-fraud exception to the attorney-client privilege. The exception "applies only when there is probable cause to believe that the communications with counsel were intended in some way to facilitate or to conceal the criminal activity." In re Grand Jury Subpoena Duces Tecum, 798 F.2d 32, 34 (2d Cir. 1986) (citation omitted). Thus, even where there is probable cause to believe that a crime has been committed, the government must also establish probable cause to believe "that the communications were in furtherance of" the criminal activity. In re Richard Roe, Inc., 68 F.3d 38, 40 (2d Cir. 1995) (emphasis supplied). It is therefore insufficient to show that the attorney-client communications overlapped temporally with criminal activity. In re Grand Jury Subpoena Duces Tecum, 798 F.2d at 34. Even the fact that the attorney-client communications provide evidence of the criminal conduct is insufficient. In re Richard Roe, Inc., 68 F.3d at 40. Rather, the exception applies "only when the court determines that the client communication or attorney work product in question was itself in furtherance of the crime or fraud." Id. (citation omitted) (emphasis in original).

Here, even if the Court were to accept the government's theory that Mr. Kerik misled his attorneys, there is no evidence that Mr. Kerik made any misrepresentations for the purpose of obtaining advice for the commission of a fraud or crime. The government's expansive conception of the crime-fraud exception, insofar as it would subject an attorney to being called as a witness as to any alleged false statements made by the client during a privileged conversation, finds no support in the law.

At a minimum, there are factual issues as to precisely what Mr. Kerik allegedly stated to Mr. Tacopina, and what Mr. Tacopina repeated to the prosecutors.

B.     There Are Factual Issues as to How the Government
       Obtained the Confidential Communications

There are also factual issues as to the circumstances in which the government obtained the confidential communications between Mr. Kerik and Mr. Tacopina.  It is evident from the government's statements at the December 6 oral argument that it has interviewed Mr. Tacopina, although it has refused to explain the circumstances in which it did so.  What is also clear is that the government did not provide notice to Mr. Kerik, much less seek a waiver of the attorney-client privilege.  See Republic Gear Co. v. Borg-Warner Corp., 381 F.2d 551, 556 (2d Cir. 1967) (noting that under New York law, as under federal common law, "an attorney is prohibited from divulging confidential communications in the absence of a waiver by his client . . . .") (citations omitted).  Instead, the government decided on its own, without a judicial determination, that the communications were not privileged.

Compounding the harm caused by the government's actions is the fact that the government failed to employ even a taint team.  Instead, it appears that the prosecutors and agents working on the matter gained direct access to the attorney-client communications.

Taint teams, of course, are rightly regarded with skepticism by courts in the Second Circuit, and the government should have sought the Court's approval prior to making its own privilege assessments unilaterally.  In circumstances in which prosecutors have failed to obtain judicial approval, even where they have used taint teams, they have been criticized.  See, e.g., United States v. Kaplan, No. 02 CR 883, 2003 WL 22880914, at *12 (S.D.N.Y. Dec. 5, 2003) (Batts, J.) ("Certainly this Opinion should be counted among those disapproving the government's use of an ethical wall team to 'protect' the attorney-client and work-product

privileges or to determine whether the crime-fraud exception applies, where potentially privileged materials are turned over to the trial team and case agents before any challenge to those determinations can be raised by a Defendant and determined by a court."); In re Search Warrant for Law Offices Executed on March 19, 1992, 153 F.R.D. 55, 59 (S.D.N.Y. 1994 (Brient, J.) (noting that use of a taint team "is highly questionable and should be discouraged"); United States v. Stewart, No. 02 CR 395, 2002 WL 1300059, at *6 (S.D.N.Y. June 11, 2002) (Koeltl, J.) (citing cases). Department of Justice policy also contemplates independent review by a special master or a taint team in the analogous circumstance of searches of attorneys' offices. See United States Attorney's Manual §§ 9-13.420(D), (E) and (F).

Here, the government bypassed judicial approval and even the minimal protections of a taint team, which was improper. These facts provide additional bases for the Court to order a hearing and discovery so that the Court can assess (i) whether the government's questioning of Mr. Tacopina breached the attorney-client privilege and attorney work product protection; and (ii) if so, whether a further hearing or remedial measures are appropriate with respect to this motion and as to any taint of the government's team.

C.     Other Factual Issues Warrant a Hearing and Discovery

Other factual issues also preclude the Court from deciding the government's application in the absence of a hearing and discovery. As explained below, for example, Rule 410 would bar the admission of the alleged attorney statements if they were made in the context of plea discussions. Although the record makes clear that any such statements were made in plea discussions, if the Court were to find the record incomplete to support that conclusion it should order a hearing. This is particularly so with respect to Mr. Tacopina's discussions with the Bronx District Attorney's Office and the DOI at which Mr. Breen was not present.     Mr. Tacopina's testimony, as well as the testimony (and any notes) of the prosecutors as to the

contents of the discussions would be necessary to assess whether the discussions constituted plea discussions.

For all of these reasons, the Court should order a hearing, and in connection with the hearing, it should order the government to comply with the discovery that Mr. Kerik sought in his December 5 discovery motion.

III.    THE ADVOCATE-WITNESS RULE IS NOT IMPLICATED HERE

The advocate-witness does not mandate disqualification of Mr. Breen.  The rule generally bars a party's counsel in a proceeding from acting as a witness in the same proceeding, but the rule is not implicated merely because a lawyer hypothetically may be a witness at trial.  The rule, set out in New York Code of Professional Responsibility Disciplinary Rule 5-102(a), provides that

> A. A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, . . .
> . . .
> C. If, after undertaking employment in contemplated or pending litigation, a lawyer is or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer should not serve as an advocate of fact before the tribunal . . .

The rule is implicated, as the text makes clear, only if the lawyer "ought" to be called as a witness, which means that the lawyer's testimony would be necessary to the client's case.  Paretti v. Cavalier Label Co., Inc., 722 F. Supp. 985, 986 (S.D.N.Y. 1989); see also Crews v. County of Nassau, No. 06-CV-2610, 2007 U.S. Dist. LEXIS 6572, at *10 (E.D.N.Y. Jan. 30, 2007) ("An attorney ought to testify on behalf of his client if his testimony is 'likely to be necessary' to his client's case.") (citing cases).

In determining the necessity of testimony, a court takes into account the significance of the matters, the weight of the testimony, and the availability of other evidence. Paretti, 722 F. Supp. at 986; Kubin v. Miller, 801 F. Supp. 1101, 1113 (S.D.N.Y. 1992). Moreover, even where counsel could be a witness, an appropriate remedy may be to limit the scope of inquiry. Kliti, 156 F.3d at 156 n.7. While the government posits scenarios in which Mr. Breen could hypothetically be a witness, it fails to establish that he is a necessary witness. Moreover, the subject-matter of the alleged attorney statements is collateral to the relevant charges.

A.    The Testimony of Mr. Kerik's Counsel Would Not Be Necessary, Even If the Court Were to Admit the Alleged Attorney Statements

The government asserts that if Mr. Tacopina were permitted to testify concerning the alleged attorney statements, Mr. Breen would necessarily become an actual or silent witness. Yet it would hardly be necessary for the jury to know that Mr. Breen was present at the relevant meetings. The parties could simply be instructed not to elicit or make reference to the fact that Mr. Breen was present for the particular discussion at issue. In that case, Mr. Breen would not be a silent witness. See United States v. Jones, 900 F.2d 512 (2d Cir. 1990) (no disqualification based on proffer letter that claimed defendant was innocent; references to attorney's role in preparing the letter never mentioned to the jury).

More important, Mr. Kerik made the allegedly false exculpatory statements initially to Mr. Tacopina alone, and Mr. Tacopina allegedly repeated those statements to the Bronx District Attorney's Office and the DOI alone, not in the presence of Mr. Breen. Indeed, as explained above, Mr. Tacopina represented Mr. Kerik from the outset of the Bronx District Attorney's Office and DOI investigations, and Mr. Breen did not participate in any meetings with those agencies throughout the first fifteen months of the eighteen-month investigation. Thus, although the government asserts that Mr. Breen was present for similar, but unspecified, subsequent

discussions, it does not even attempt to explain why such cumulative evidence would be "necessary." See Paretti, 722 F. Supp. at 987 (denying a motion to disqualify counsel where the attorney's testimony would have been cumulative or surplusage, and thus unnecessary).

Indeed, given the limited probative value of such evidence in the first place (as discussed more fully below), any evidence of the repeating of the allegedly false statements to the government would properly be excluded under Federal Rule of Evidence 403. Given the fact that by the government's admission it could prove the allegedly false exculpatory statements based on discussions to which Mr. Breen was not a witness, it cannot possibly claim any prejudice from the exclusion or limitation of cumulative consciousness of guilt evidence.

The government also asserts that if Mr. Kerik were to testify at trial, Mr. Breen "would be forced to make judgment calls about what answers he may properly elicit on direct examination (or redirect) about the defendant's role in obstructing the state investigation." (USAO Letter at 10.) Again, the government does not explain how such "judgment calls" would implicate Mr. Breen's role as a witness.

B.    The Alleged Attorney Statements, and Any Testimony by Mr. Kerik's Counsel Concerning Them, Would Be Collateral

The attorney statements relating to the renovations do not prove an element of the government's honest services theory, and they are collateral to the real issues that will be disputed at trial.[2]

To prove its honest services theory, the government must prove that the donor gave the gift with the intention of influencing the public official, and that the public official accepted the gift intending to be so influenced, i.e., with the intent to deprive the public of some honest

---

[2] The statements relating to the loan application are arguably of more direct probative value. On the other hand, as explained more fully below, their admission raises more serious issues under Rules 410 and 801 of the Federal Rules of Evidence.

service that the defendant owed to the public. See United States v. Rybicki, 354 F.3d 124, 145 (2d Cir. 2003). While Mr. Kerik does not intend to dispute his receipt of discounted renovations, he does intend to vigorously challenge the theory that he accepted the renovations with the intent to be influenced, let alone to be influenced in his official capacity as Commissioner of Correction.

As such, the probative value of the alleged attorney statements is limited. At best, the alleged statement constitutes evidence of consciousness of guilt, or impeachment evidence were Mr. Kerik to testify at trial. Such evidence would be cumulative, however. The government alleges in the Indictment that Mr. Kerik made similar false exculpatory statements concerning the renovations to government officials in the course of his vetting for the Secretary of Homeland Security position. (See Indictment, Counts 10, 12, 13 and 16). In fact, the government asserted at oral argument on December 6 that it would offer evidence that Mr. Kerik was conveying to people other than his attorneys the substance of what he allegedly conveyed to Mr. Tacopina concerning the renovations and the loan.

Based on the government's own proffer, therefore, it will offer evidence that after Mr. Kerik continued to assert that he paid for all of the renovations after he withdrew his nomination in December 2004. Evidence that Mr. Kerik also continued to make the assertion through Mr. Tacopina to the Bronx District Attorney's Office and the DOI would be cumulative and of little additional probative value, and it would be properly excluded under Rule 403. See United States v. Flaharty, 295 F.3d 182, 191 (2d Cir. 2002) (noting that "under Rule 403, the district court may exclude even relevant evidence if it finds that the 'probative value [of the testimony] is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading

the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence'").

Yet even if the Court were to admit Mr. Tacopina's testimony as to his discussions with the Bronx District Attorney's Office and the DOI to which Mr. Breen was not a party, the evidence that Mr. Tacopina continued to provide the same information to those agencies once Mr. Breen became involved would certainly be subject to exclusion under Rule 403. More important, the use of such cumulative evidence as the basis for disqualifying Mr. Breen and depriving Mr. Kerik of counsel of his choice would be a deprivation of Mr. Kerik's Sixth Amendment right to counsel of his choice.

In an effort to prop up the admissibility of the alleged attorney statements, the government asserted at the December 6 oral argument, for the first time, that the evidence would be admissible to prove the obstruction allegations set out in substantive allegations in paragraphs 20(f) and (g) of the Indictment. Yet the acts cited in paragraph 20 are, even if true, acts of concealment. They cannot be said to be "in furtherance of the conspiracy" and cannot extend the statute of limitations period on a conspiracy charge. Grunewald v. United States, 353 U.S. 391, 402 (1957) (noting that once "the central purposes of a conspiracy have been attained, a subsidiary conspiracy to conceal may not be implied from circumstantial evidence showing merely that the conspiracy was kept a secret and that the conspirators took care to cover up their crime in order to escape detection and punishment").[3]  The government's efforts to avoid the

---

[3] The five-year limitations period on the conspiracy count runs from the date of the last mailing or wiring or the last overt act in furtherance of the conspiracy. United States v. Viertel, S2 01 Cr. 571, 2002 U.S. Dist. LEXIS 12833 (S.D.N.Y. July 4, 2002) (addressing conspiracy to commit mail or wire fraud). Here, the limitations period began to run, at the latest, when the last payment was made for the renovations. The last date of any payment listed in the Indictment is December 5, 2000 (Indictment ¶ 13). Even if this payment could be said to be "in furtherance"

statute of limitations problem by citing alleged acts of obstruction, therefore, cannot save the charges. At the appropriate time, therefore, Mr. Kerik will move to dismiss Counts One through Three. Given the dubious validity of these allegations, the government should not be permitted to rely upon them to disqualify defense counsel.

## IV. THE ALLEGED ATTORNEY STATEMENTS WERE MADE IN CONNECTION WITH PLEA DISCUSSIONS AND ARE NOT ADMISSIBLE

The alleged attorney statements are not admissible because they were made in the context of plea discussions. While Mr. Tacopina's meetings prior to Mr. Breen's involvement constituted plea discussions, the ones in which Mr. Breen participated – which occurred three months before a plea was finalized – were plea negotiations.

### A. Rules 410 of the Federal Rules of Evidence and 11(f) of the Federal Rules of Criminal Procedure Preclude Admission of Plea Discussions

The statements of an accused or his attorney made "in the course of plea discussions" are not admissible in any subsequent civil or criminal proceedings under Rule 410 of the Federal Rules of Evidence and Rule 11(f) of the Federal Rules of Criminal Procedure. Fed. R. Evid. 410(4); Fed. R. Crim. P. 11(f); see also United States v. Velez, 354 F.3d 190 (2d Cir. 2004) ("Ordinarily, statements made by a defendant during plea negotiations, including proffer sessions, are inadmissible at trial.").[4] Rule 410 applies in federal proceedings to statements made in connection with prior state pleas. See, e.g., United States v. Chapman, 954 F.2d 1352,

---

of the conspiracy, it is the last possible date for extension of the statute of limitations. As such, the limitations period ended no later than December 5, 2005.

[4] Rule 410 provides in relevant part:

> evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
> . . .
> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.

1360 (7th Cir. 1992) (upholding district court's severance of case where it concluded that Rule 410 precluded impeachment with an admission made during negotiations over a withdrawn state plea).

By barring the admission of statements made in plea discussions, the Rule promotes the disposition of criminal cases by compromise. Fed. R. Evid. 410 (1972 advisory committee notes). As such, the inadmissibility of plea discussions is crucial to the encouragement of plea bargaining, which the Supreme Court has recognized as "an essential component of the administration of justice." Santobello v. New York, 404 U.S. 257, 260 (1971); see also United States v. Robertson, 582 F.2d 1356, 1366 (5th Cir. 1978).

The protections of Rule 410 extend not only to statements offered in the government's case-in-chief, but also to statements used solely for impeachment. United States v. Lawson, 683 F.2d 688, 692 (2d Cir. 1982) (noting that "Congress debated and rejected proposals that statements made in connection with an offer to plead guilty be available for impeachment purposes" and vacating conviction where statements were used to attack defendant's credibility); see also United States v. Acosta-Ballardo, 8 F.3d 1532 (10th Cir. 1993) (holding that the impeachment use of defendant's plea negotiations is contrary to the text and legislative history of Rule 410).

Specific discussion of an offer to plead is not necessary for a discussion to be considered a plea negotiation. United States v. Serna, 799 F.2d 842 (2d Cir. 1986). In Serna, the Second Circuit held that a preliminary debriefing meeting between the accused and the Assistant United States Attorney, despite the lack of a specific plea offer, "must be considered as part of the overall plea bargaining process" because a more restrictive definition would discourage plea bargaining. Id. at 849 (holding statements inadmissible under Rule 11(e)(6)); see also United

States v. Mannino, 551 F. Supp. 13, 18 n.14 (S.D.N.Y. 1982) (finding that "by relating the statements to 'plea discussions' rather than an 'offer to plead,' the amendment ensures 'that even an attempt to open plea bargaining [is] covered under the same rule of inadmissibility'") (citing Fed. R. Crim. P. 11(e)(6) Advisory Committee's Notes to 1979 amendment). The discussions undertaken by government and defense counsel before either side makes an offer of a plea or other disposition, including the government's seeking of a proffer of information, are a necessary part of plea discussions and are therefore covered by Rule 410. United States v. Fronk, 173 F.R.D. 59, 69 (W.D.N.Y. 1997).

B.    The Alleged Attorney Statements Are Inadmissible Under Rule 410

The alleged attorney statements fall squarely within the scope of Rule 410. Indeed, Rule 410 explicitly protects statements in plea discussion even where they do not result in a plea of guilty. Fed. R. Evid. 410(4).

To determine whether a particular set of facts and circumstances constitutes a plea discussion, courts in the Second Circuit have adopted the two-tiered analysis first outlined by the Fifth Circuit in Robertson, 582 F.2d at 1356. See Serna, 799 F.2d at 849; Mannino, 551 F. Supp. at 18; Fronk, 173 F.R.D. at 67 (granting motion to suppress statements defendant made with his attorney to law enforcement in pre-trial discussions concerning possible cooperation). Specifically, the Court must determine (1) whether the defendant exhibited a subjective expectation to negotiate a plea at the time of the discussion, and then (2) whether that subjective expectation was reasonable given the totality of the objective circumstances. Mannino, 551 F. Supp. at 14 (citing Robertson, 582 F.2d at 1366). Under Robertson and its progeny, statements made in an attempt to initiate plea discussions, even when those statements are ignored by the government, are inadmissible as well. See Robertson, 582 F.2d at 1367.

As the <u>Robertson</u> court noted, "the accused's assertions concerning his state of mind are critical in determining whether a discussion should be characterized as a plea negotiation." <u>Robertson,</u> 582 F.2d at 1366.  This subjective intent, moreover, need not be expressed contemporaneously with the plea discussions.  The first tier of the test is satisfied even where the defendant's subjective intent is not expressed until the admissibility of the statements is raised in court.  <u>Id.</u> at 1369.

Where an attorney makes authorized statements on behalf of a client, the attorney's state of mind is operative, as "the Rules invite and encourage attorneys to make statements in the course of plea discussions that would otherwise not be made."  <u>United States v. Bridges</u>, 46 F. Supp. 2d 462, 466 (E.D. Va. 1999).  Even if the Court were to conclude that the alleged attorney statements were admissions of Mr. Kerik, they would still be inadmissible because Rule 410 applies to statements made by counsel authorized to make statements on the defendant's behalf.  <u>Id</u>.  Where an attorney has made such statements on behalf of a client, courts are deferential to the defense attorney's experience and judgment as to whether he made them with the subjective belief that plea discussions were underway.  <u>See</u> <u>id.</u>

The discussions in which Mr. Tacopina alone met with representatives of the Bronx District Attorney's Office and the DOI, in which Mr. Tacopina apparently discussed the theories that the prosecutors were pursuing, were plea negotiations, even if Mr. Tacopina put forth arguments that the government should not bring charges against Mr. Kerik at all.  <u>United States v. Washington</u>, 614 F. Supp. 144, 149-151 (E.D. Pa. 1985) (holding that a meeting between defendant, his counsel and AUSA in which defendant attempted to convince the government not to prosecute him or to prosecute him for a lesser offense were discussions within the ambit of Rule 11(e)(6)).

If the Court were to find it questionable whether Mr. Tacopina's meetings were plea discussions, it should order discovery. We note that the government has proffered no evidence that it asked Mr. Tacopina whether he believed that his discussions with prosecutors constituted plea discussions, and it has not proffered whether the prosecutors thought so, either. Given the two-step <u>Robertson</u> assessment that the Court must undertake, the government has provided insufficient evidence from which it may resolve the issue. Certainly, however, by the time Mr. Breen first participated in meetings with the prosecutors and Mr. Tacopina, the government had outlined contemplated charges against Mr. Kerik and the two sides were engaged in plea negotiations. Within weeks, Mr. Kerik's attorneys submitted a detailed letter stating why Mr. Kerik should not be charged. That letter explicitly stated that it was being provided confidentially and in connection with an offer of settlement. Indeed, the prosecutors and Mr. Kerik reached a plea agreement within approximately three months of the March 8 meeting.

C.    The Statements at Issue Were Not Subject to an Exception or a Waiver of Mr. Kerik's Rights Under the Rules

The alleged attorney statements do not fall within the exception to Rule 410 in that they are not offered "in a criminal proceeding for perjury or false statement" and they were not "made by the defendant under oath, on the record and in the presence of counsel."

Likewise, there is no evidence that Mr. Kerik knowingly and voluntarily waived the protections afforded by Rule 410 of the Federal Rules of Evidence and Rule 11(e)(6) of the Federal Rules of Criminal Procedure. Because the Bronx District Attorney's Office prosecutors neither sought a waiver of Mr. Kerik's rights nor affirmatively stated that the meetings at issue were not plea discussions, there is no basis to find a knowing and intelligent waiver by Mr. Kerik. See <u>Bridges</u>, 46 F. Supp. 2d at 467 (finding statements were an attempt to open plea discussions where the government agent did not "clearly and explicitly disclaim" authority to

initiate negotiations and his conduct created the appearance of that authority); Mannino, 551 F. Supp. at 20-22 (government failed to meet its burden that a defendant knowingly and intelligently waived his right to inadmissibility of plea bargaining statements where he did not believe the statements could be used against him and he was not asked whether he waived his rights under Rule 11); Fronk, 173 F.R.D. at 70-71 (suppressing statements under Rule 11(e)(6) where the AUSA and defense counsel offered irreconcilable testimony as to the substance of discussions and other objective facts supported the defendant's claim that he did not intend to waive his rights).

## V.    THE ADMISSION OF THE ATTORNEY STATEMENTS WOULD UNFAIRLY DENY MR. KERIK HIS CHOICE OF COUNSEL

Even if the Court were to determine that no single objection to the alleged attorney statements outlined above bars their admission pursuant to Rule 801(d)(2)(C) or (D), it still should not admit the statements because the combined weight of all of those circumstances establishes that their admission would unfairly deprive Mr. Kerik of his choice of counsel.

The Second Circuit has recognized that "the routine use of attorney statements against a criminal defendant risks impairment of the privilege against self-incrimination, the right to counsel of one's choice, and the right to effective assistance of counsel." United States v. Valencia, 826 F.2d 169, 172 (2d Cir. 1987). As such, "once it has been determined that evidence implicating counsel is admissible, a court must then "balance the defendant's constitutional right [to retain counsel of choice] against the need to preserve the highest ethical standards of professional responsibility." United States v. Arrington, 867 F.2d 122, 127 (2d Cir. 1989) (quoting United States v. Cunningham, 672 F.2d 1064 (2d Cir. 1982)).

The facts of Valencia, where statements were excluded, are remarkably close to those here, and arguably the Valencia statements weighed more heavily in favor of admission of the

statements than do the facts here. Valencia was arrested in a sting operation along with another person named Bolivar, and both were subsequently charged with conspiring to distribute narcotics. In a discussion with the prosecutor, Valencia's defense counsel argued that his client should be released on bail because Valencia was innocent, and he explained in detail that Valencia had not known Bolivar prior to the sting operation. After the government discovered that Valencia in fact had had a relationship with Bolivar for several years, it sought the admission at trial of the attorney's statements during the bail negotiations as admissions of the defendant under Rules 801(d)(2)(C) and (D). The district court held that the statements were not admissible.

On appeal, the Second Circuit affirmed, holding that even if the statements constituted admissions under Rule 801, the important countervailing interests weighed against their admission at trial. First, the court noted that the statements were not made in court, but rather arose "during the course of informal discussions…concerning the defendant's release on bail." Id. at 173. As such, unlike statements in a jury address or a pleading, (i) the precise statements would have to be proven through witness testimony, "thereby generating dispute as to precisely what was said[]"; and (ii) "a pleading or an opening statement to a jury is more likely to be worded with precision than informal remarks made during discussions with a prosecutor." Id. Indeed, as discussed above, the government's proffer of regarding the attorney statements has not been consistent and does not necessarily reflect assertions that Mr. Kerik knew that no one else had paid for the renovations, or that he had received a discount.

Second, the court noted that the admission of the attorney statements "would pose some threat to chilling the prospects for plea negotiations." Id. Although the court recognized that the

statements did not arise in plea negotiations, "a statement by defense counsel protesting a client's

innocence may often be a prelude to plea negotiations," and it stated that

> [a] district court is entitled to consider whether trial use of informal
> attorney statements will lessen the prospects for plea negotiation or
> inhibit frank discussion between defense counsel and prosecutor on
> various topics that must be freely discussed in the interest of
> expediting trial preparation and the conduct of the trial.

Id.

Third, the court noted that the government sought to use the attorney statements as proof

of "consciousness of guilt arising from an out-of-court denial of facts that the prosecutor is

prepared to prove at trial are true[,]" as well as impeachment evidence if the defendant were to

testify at trial. Id. As such, the court noted that "the Government's claim to the statements is not

strong[,]" in that they "are not offered to show admissions of an element of the offense . . . ." Id.

Weighing against this minimal evidentiary interest of the government were "the defendant's

interests in retaining the services of his counsel assuring uninhibited discussions between his

counsel and the prosecutor, and avoiding the risk of impairing his privilege against self-

incrimination." Id. at 173-74.

Here, the facts weigh even more strongly against admission of the statements. Like the

attorney statements in Valencia, the alleged attorney statements here were made in the course of

informal discussions with the prosecutor. Unlike in Valencia, however, they were made early in

an investigation, before the filing of any charges. Second, unlike the statements in Valencia,

they were made in plea negotiations (as explained above), and they are therefore subject to the

protections of Rule 410 of the Federal Rules of Evidence. Yet even if the statements were not

deemed to fall under Rule 410, as was the case in Valencia, they would certainly reflect a

"prelude to plea negotiations" and their admission would have precisely the chilling effect

against which the Second Circuit cautioned in Valencia. Third, as explained above, the

probative value of the statements would be at least as limited as those at issue in <u>Valencia.</u>  For all of these reasons, the balance of the relevant interests weighs heavily against admission of the statements.

## VI.    NO CONFLICT IS PRESENTED BY THE OTHER ISSUES THAT THE GOVERNMENT IDENTIFIES

The government also asserts that a conflict arises as a result of Mr. Breen's representation of Mr. Kerik in connection with the state court guilty plea, as well as a result of a fee collection lawsuit filed by Fulbright.  These assertions are meritless.

### A.    The Representation in Connection with the Prior State Court Plea Does Not Give Rise to Any Conflict of Interest

The government also asserts that Mr. Breen's representation of Mr. Kerik in connection with the prior state court plea provides an additional basis for disqualification.  The government speculates that Mr. Kerik may "raise a defense at odds with his guilty plea[,]' and asserts that while "no attorney representing the defendant in this case should be permitted to present evidence or arguments at trial which are at odds with the defendant's allocution in the Bronx," the government adds that it would be "particularly unseemly" for Mr. Breen to do so.

The simple answer is that Mr. Kerik does not intend to repudiate his guilty plea in the Bronx.  For this reason, the case upon which the government relies is inapposite.  The district court in <u>United States v. Lauersen</u>, No. 98CR1134, 2000 WL 1693538 (S.D.N.Y. Nov. 13, 2000), merely held that where a defendant's proffer statements were excluded from the trial, defense counsel could not make arguments to the jury that were at odds with the statements.  In that case, the court would not permit the defendant both to keep the proffer statements out of evidence and assert a defense contradictory to them.  Here, that would not be the case.  Mr. Kerik does not intend to assert a defense that is contradictory to his guilty plea.   However, Mr. Kerik

of course reserves the right to challenge the government's interpretation of his allocution, its relevance to the charges and the weight to which it should be afforded.

B.    <u>The Pendency of the Fulbright Lawsuit is of No Consequence</u>

The government also suggests that the pendency of a lawsuit by Fulbright for unpaid legal fees would be an additional basis for disqualification.  It is our understanding that an agreement in principle has been reached between Fulbright and Mr. Kerik.  In any event, even if the Court were to permit the government to confront character witnesses for Mr. Kerik with the fact of the lawsuit, it is not apparent why Mr. Breen would thereby be rendered an unsworn witness.  Moreover, any potential conflict that could arise as a result could be waived.

**CONCLUSION**

For the reasons set forth above, the Government's Motion to Disqualify Counsel lacks

merit and should be denied.

Dated:  December 7, 2007              By:    *Kenneth Breen/TKF*
                                            ─────────────────────────
                                            Kenneth M. Breen
                                            Paul, Hastings, Janofsky & Walker LLP
                                            75 East 55th Street
                                            New York, NY  10022-3205
                                            (212)  318-6000

                                            Counsel for Defendant
                                            Bernard B. Kerik