UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

- v -

BERNARD B. KERIK,

Defendant.

**DECLARATION**

ECF Case 07 Cr. 1027 (SCR)

STATE OF NEW YORK)
                                    ss:
COUNTY OF NEW YORK)

KENNETH M. BREEN, being duly sworn, deposes and says:

1.        I am a partner at the law firm of Paul, Hastings, Janofsky & Walker LLP ("Paul Hastings"). I joined Paul Hastings in April 2007. Prior to then, I was a partner at the law firm of Fulbright & Jaworski LLP ("Fulbright"). I submit this affidavit in opposition to the government's motion for disqualification.

2.        Sometime in the fall of 2005, while I was a partner at Fulbright, I began to have some informal discussions with Joseph Tacopina and Bernard Kerik concerning a pending investigation by the Bronx County District Attorney's Office. It was only in December 2005, however, that I even circulated a draft engagement letter to Mr. Kerik.

3.        Based on a review of billing records, it appears that I first accompanied Mr. Tacopina to a meeting in the Bronx District Attorney's Office on March 8, 2006. A few weeks following the meeting, Mr. Tacopina and I submitted a letter, on Fulbright letterhead, that addressed in detail the legal deficiencies in the contemplated bribery charge. A copy of the letter is attached as Exhibit A, hereto.

4.      Billing records reflect that the only other meeting with Bronx District Attorney's Office representatives that I attended was on May 25, 2006, when Mr. Tacopina and I met with District Attorney Robert Johnson and other senior personnel in the office.

5.      Mr. Tacopina subsequently negotiated a plea agreement, including the allocution, with the Bronx District Attorney's Office, and an agreement was memorialized in a plea agreement dated June 20, 2006. A copy of the plea agreement is attached as Exhibit B, hereto. I was not involved in the negotiation of the plea agreement with the Bronx District Attorney's Office, as I was on trial on a case in this District in early June.

6.      In or around July 2006, the United States Attorney's Office for the Southern District of New York ("USAO") opened an investigation into many of the same issues that were the subject of the Bronx District Attorney's Office investigation. I continued to represent Mr. Kerik in connection with the investigation, and Mr. Tacopina continued as co-counsel.

7.      In March 2007, I learned that the USAO had issued a grand jury subpoena to Mr. Tacopina. Shortly thereafter, on March 21, we submitted a letter to the USAO concerning privilege issues relating to (a) the interception of cellular phone conversations to which Mr. Tacopina was a party; and (b) the USAO's subpoena to Mr. Tacopina. A copy of the March 21 letter is attached as Exhibit C, hereto. At around this time, Mr. Tacopina ceased representing Mr. Kerik in connection with the USAO investigation.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 7th day of December, 2007, at New York, New York.



KENNETH M. BREEN

# EXHIBIT A

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
666 FIFTH AVENUE, 31ST FLOOR
NEW YORK, NEW YORK 10103-3198
WWW.FULBRIGHT.COM

KBREEN@FULBRIGHT.COM
DIRECT DIAL: (212) 318-3340

TELEPHONE:    (212) 318-3000
FACSIMILE:    (212) 318-3400

May 12, 2006

## CONFIDENTIAL – FOR SETTLEMENT PURPOSES ONLY

## BY FACSIMILE AND FEDERAL EXPRESS

Hon. Robert Johnson
District Attorney, Bronx County
The Office of the Bronx County District Attorney
198 East 161st Street
Bronx, NY 10451

Re:    Bernard Kerik

Dear Mr. Johnson:

We submit this letter at the invitation of Thomas Leahy to set forth our position as to why your office should not pursue a criminal prosecution against our client, Bernard Kerik. We submit this letter as an offer of settlement pursuant to CPLR § 4547. Your office agrees that neither the fact of this offer of settlement, nor any statements made herein, are admissible in any proceeding. We also understand that your office will treat this letter as strictly confidential.

As explained below, we believe that the contemplated prosecution of Mr. Kerik is fraught with legal and factual infirmities. First, we believe that any prosecution of Mr. Kerik would likely be time-barred. Moreover, even viewing the evidence in the light most favorable to the People, there is a serious question as to whether the People could satisfy its burden of proof, particularly with respect to the state of mind element. In light of these issues, and as a matter of equity, we propose that your office agree to a non-prosecution of Mr. Kerik, a condition of which would be his simultaneous settlement of civil charges as described below.

A.    The Contemplated Charge

We understand that your office is considering a charge of bribe receiving in the second degree. That offense is defined under Penal Law § 200.11 (2006):

> A public servant is guilty of bribe receiving in the second degree when he solicits, accepts or agrees to accept any benefit valued in excess of ten thousand dollars from another person upon an agreement or understanding that his vote, opinion, judgment, action, decision or exercise of discretion as a public servant will

31124722.1

Hon. Robert Johnson
May 12, 2006
Page 2

thereby be influenced.  Bribe receiving in the second degree is a
class C felony.

We understand the crux of the People's theory to be as follows:  (a) Mr. Kerik accepted a thing
of value, namely renovations on his Bronx apartment in excess of what he paid for himself; (b)
the person who conferred this benefit was [REDACTED], which
paid the balance of the renovation costs; and (c) Mr. Kerik accepted the renovations with the
agreement or understanding that, in exchange for the payments, Mr. Kerik would attempt to
influence the New York City Trade Waste Commission ("TWC") on behalf of [REDACTED]
connection with a pending license application.

B.    Any Charges Would Be Barred by the Statute of Limitations

Under New York criminal law, the applicable statute of limitations provision is Criminal
Procedure Law ("CPL") § 30.10.  It provides that the limitations period for all felonies (other
than Class A felonies, which are not relevant here) is five years and for all misdemeanors is two
years.  Accordingly, in the absence of any tolling provisions, any prosecution of Mr. Kerik
would be time barred.

1.    Any Tolling Ended in August 2000

Subdivision three of CPL § 30.10 contains a tolling provision relating to public officials:

A prosecution for any offense involving misconduct in public
office by a public servant may be commenced at any time during
the defendant's service in such office or within five years after the
termination of such service; provided however, that in no event
shall the period of limitation be extended by more than five years
beyond the period otherwise applicable under subdivision two.

Under a plain reading of the statute, tolling applies only while an individual remains in
the public office where the alleged offense took place.  The statute cannot be read to extend
tolling into any period during which an individual serves in any public office, without respect to
when the alleged offense took place.

The statute specifically refers to any offense committed in "public office."  In particular,
the statute expressly limits the tolling to "any time during the defendant's service in such office
or within five years after the termination of such service."  CPL § 30.10(3)(b) (emphasis
supplied).  The statute does not extend tolling during the defendant's service in "any" office.
The general terms "such office" and "such service" must be read as referring back to the specific
language in the preceding clause, i.e., the specific office in which the offense took place.  See
People v. Aarons, 759 N.Y.S.2d 20, 26 (1st Dep't 2003) (noting that under "the rule of ejusdem
generis . . . a general statutory term should be understood in light of the specific terms which
surround it").  In Aarons, for example, the court considered a provision of the CPL that required

Hon. Robert Johnson
May 12, 2006
Page 3

at least twelve grand jurors to concur in the "finding of an indictment, a direction to file a prosecutor's information, [or] a decision to submit a grand jury's report and every other affirmative official action or decision." Id. at 25. The court held that the general clause "every other affirmative official action" was modified by the more specific preceding terms, so that every affirmative official action of the grand jury was subject to the twelve-vote requirement. Id. This principle of construction applies here with equal force.

While we believe that the plain language of the tolling provision is unambiguous, it is well-settled law that courts will construe any ambiguity in a limitations provision in favor of the defendant. See Toussie v. United States, 397 U.S. 112, 860 (1970). As such, any tolling of the limitations period ceased when Mr. Kerik left the position of Commissioner of Corrections in August 2000. The limitations period on the contemplated bribery charge, therefore, would have run in August 2005.

2.    Post-August 2000 Conduct Cannot Extend the Limitations Period

It has been suggested that your office has evidence that post-dates Mr. Kerik's tenure as Commissioner of Corrections, and presumably extends into the period during which he served as Police Commissioner. Any such evidence, however, could not operate to toll the limitations period during Mr. Kerik's tenure as Police Commissioner.

It is clear that any bribery offense, even if proven, would have been complete by August 2000, when Mr. Kerik left the position of Commissioner of Corrections and became Police Commissioner. [REDACTED] . as indicted on unrelated federal securities charges on March 1, 2000, and shortly thereafter the TWC suspended [REDACTED] contracts with New York City and launched an investigation of [REDACTED] . Plainly, at least as of this point, Mr. Kerik could no longer be said to be attempting to influence the TWC in connection with the license application. In any event, we understand that the alleged corrupt payments -- the renovations to Mr. Kerik's Bronx apartment -- were completed during his tenure as Commissioner of Corrections.

As such, the offense, even if proven, would have been complete prior to the end of Mr. Kerik's tenure as Commissioner of Corrections. See 12 AmJur 2d Bribery § 9 (August 2005) ("[T]he crime of bribery is complete upon the formation of an agreement or understanding or upon the offering or promising the tender of something of value."). Because, as explained above, the tolling provision applies only to offenses committed while the defendant is in a particular office and extends only as long as the defendant serves in "such office," any evidence of any conduct during Mr. Kerik's tenure as Police Commissioner could not extend the tolling of the limitations period on the contemplated bribery charge.

Even evidence of obstructive conduct or conduct intended to conceal the underlying conduct would not serve to extend the limitations period. Indeed, the Supreme Court has held that even subsequent steps to conceal a conspiracy cannot be relied upon to extend the limitations period with respect to a conspiracy. Grunewald v. United States, 353 U.S. 391, 402 (1957). As the Court explained in Grunewald:

Hon. Robert Johnson
May 12, 2006
Page 4

> Acts of covering up, even though done in the context of a mutually
> understood need for secrecy, cannot themselves constitute proof
> that concealment of the crime after its commission was part of the
> initial agreement among the conspirators. For every conspiracy is
> by its very nature secret; a case can hardly be supposed where men
> concert together for crime and advertise their purpose to the world.
> And again, every conspiracy will inevitably be followed by actions
> taken to cover the conspirators' traces. Sanctioning the
> Government's theory would for all practical purposes wipe out the
> statute of limitations in conspiracy cases.

Id. at 402. Here, we understand that your office is considering only a substantive charge, a
theory even narrower than a conspiracy charge. The rationale of Grunewald applies with greater
weight to the proposed bribery charge, and it would preclude any reliance on any attempts at
obstruction or concealment to extend the limitations period.

C.    The Requisite Agreement or Understanding Cannot Be Proven

We also submit that, on the merits, the People cannot satisfy the central element of a
bribery charge – namely, a corrupt agreement. Without conceding any of the allegations
described herein, we believe that the facts, even if proven, would be legally insufficient to
sustain a conviction on the contemplated charge.

The core element of the crime of bribery is the "agreement or understanding" between the
bribe giver and receiver, and the Court of Appeals has held that the "agreement or
understanding" must be more than a mere "hope" to influence. People v. Bac Tran, 80 N.Y.2d
170, 177 (1992). In Bac Tran, the court overturned the conviction of the fire safety director for
two hotels who offered cash to a city fire inspector and an investigator posing as an inspector.
The trial court had instructed the jury that "the defendant's hope that the benefit bestowed would
induce a forbidden favor" was sufficient to establish agreement or an understanding. Id. The
Court of Appeals held that this instruction failed to convey the substance of the necessary
"agreement or understanding," and it noted that "[a] mere 'hope' and a statutory 'understanding',
in common parlance and in criminal jurisprudence, are miles apart." Id.

For this reason, the bargained-for official act "must be something real, substantial and of
value to the alleged recipients, as distinguished from something imaginary, illusive or amounting
to nothing more than the gratification of a wish or hope." People v. Dolan, 576 N.Y.S.2d 901,
904 (3d Dep't 1991) (citation omitted). Unless the official act confers a concrete benefit, it
cannot form the basis for a bribery charge. In Dolan, for example, the court overturned the
conviction of a city police chief who had allegedly reached a quid pro quo agreement in which
the county sheriff would agree to suspend drug investigations within the confines of the city.
The People argued that the sheriff's agreement to suspend such investigations constituted a
benefit to the defendant because the defendant feared that an investigation would uncover his
own and his friends' drug use. On appeal, however, the court held that because a police

Hon. Robert Johnson
May 12, 2006
Page 5

official's allocation of police resources is a matter of discretion, the sheriff's agreement to
suspend narcotics investigations was not a sufficiently concrete benefit to the defendant. The
defendant's hope to divert an investigation that could reveal his own misconduct was only an
"illusive corrupt desire" that could not "render an otherwise valid, discretionary agreement
corrupt." Id. (citation omitted). See also People v. Canepa, 745 N.Y.S.2d 153, 154 (1st Dep't
2002) (People failed to prove "agreement" or "understanding" between attorney who hired court
clerk as a paralegal even where clerk subsequently expedited some of attorney's matrimonial
cases; clerk frequently expedited cases for attorneys as a matter of course, and benefit was not
one particularly conferred upon the defendant).

       Under these standards, the evidence in this case would be insufficient to establish the
requisite corrupt agreement or understanding. First, the alleged benefit that [REDACTED] as to
receive was illusory. The decision to grant any licenses or to take any other action with respect
to [REDACTED] sted within the discretion of the TWC. That agency had its own investigative staff
and legal staff that alone had competence to decide, in its discretion, what action, if any, to take
with respect to [REDACTED] ven if the People could establish an "agreement or understanding"
that Mr. Kerik would attempt to influence the TWC, such an agreement would be insufficient to
establish the requisite element under the bribery statute. See Bac Tran, 80 N.Y.2d at 177; Dolan,
576 N.Y.S.2d at 904; Canepa, 745 N.Y.S.2d at 154.

       Second, even if these legal deficiencies could be overcome, the timing of the alleged
official actions by Mr. Kerik and his receipt of the alleged benefit undermines any theory of an
agreement or understanding that these two elements were linked. Perhaps the strongest evidence
on this issue is the complete absence of any proof that the TWC was influenced with regard to
[REDACTED] ly March 2000, the TWC had suspended [REDACTED] ity contracts, and state officials
in New Jersey were already investigating the matter. Indeed, by September 2000, the matter was
widely reported in the news media.

D.     The Requisite Corrupt State of Mind Element Cannot Be Proven

       The Court of Appeals has held that "[b]efore a public servant may be convicted of bribe
receiving, second degree, there must be proof of a corrupt agreement." People v. Alvino, 71
N.Y.2d 233, 244 (1987) (emphasis supplied). As such, "[t]he People must establish that
defendant solicited, accepted or agreed to accept a benefit 'upon an agreement or understanding'
that his conduct would be influenced by the benefit." Id. (quoting N.Y. Penal Law former §
200.10). Thus, mere proof of payment of a benefit and an official act is insufficient. Rather, the
People must establish "the doing of one in exchange for the other." Id.

       The Court of Appeals made clear in Bac Tran that the essence of bribe payment or
receiving is an agreement or understanding for the public official to be influenced to act
corruptly. As explained above, the court in Bac Tran overturned the conviction of the fire safety
director for two hotels who offered cash to a city fire inspector and an investigator posing as an
inspector. The court noted that, at a minimum, the requisite "understanding" under the various
bribery statutes required proof that the bribe maker understood "that the bribe receiver would

Hon. Robert Johnson
May 12, 2006
Page 6

effectuate the proscribed corruption of public process and was affected to do so by the actus reus of the particular crime." Id. at 177 (emphasis supplied). The court held that the People had failed to meet this burden. Id.

Although Bac Tran involved a charge of bribe giving, the Court of Appeals noted that the same reasoning applies to the crime of bribe receiving. Id. Indeed, the court cited another one of its cases, People v. Harper, 75 N.Y.2d 313 (1990), in which the court held that the People had failed to prove the requisite "understanding" under the identical language of the bribe receiving by a witness statute, Penal Law § 215.05. There, even though the defendant had agreed to "drop charges" against his assailant in exchange for money, the court held that the People had failed to prove that the defendant had received the money with the "understanding" that he would testify falsely if the prosecutor brought charges and called the defendant as a witness. Id. at 318. The court noted that "[t]he gist of the crime is not the payment of money, but rather the 'agreement or understanding' under which a witness accepts or agrees to accept a benefit." Id. at 317.

The corrupt purpose requirement is of central importance in light of the Supreme Court's ground-breaking decision in Arthur Andersen v. United States, 125 S.Ct. 2129 (2005), in which the Court set a high bar for any charge founded upon a defendant's purported intent to impede or influence an investigation Although the case involved the interpretation of a federal criminal statute, the Court's construction of the requirement of a "corrupt" intent was grounded upon due process concerns about avoiding the criminalization of innocent conduct.

The case arose when, following news reports about accounting improprieties at Enron, for whom Arthur Andersen had acted as auditor, senior personnel at the firm instructed employees to comply with the firm's document retention policy and thereby destroy Enron-related documents, even after the Securities and Exchange Commission had opened an investigation. Id. at 2133. The firm was subsequently charged with obstruction of justice and was convicted. Id. at 2134.

On appeal, however, the Supreme Court reversed the conviction. The trial court had instructed the jury that Arthur Andersen could be convicted if the firm had intended to "subvert, undermine, or impede" the government's investigation. The Supreme Court held that the mere intent to "impede" an investigation is not inherently illegal. The Court noted, for example, that under the dictionary definition of the word "impede" ("to interfere with or get in the way of progress of" or "hold up" or "detract from"), "anyone who innocently persuades another to withhold information from the Government" impedes an investigation without committing unlawful conduct. Id. at 2136. The Court cited other examples of those who innocently impede an investigation, such as "a mother who suggests to her son that he invoke his right against compelled self-incrimination . . . or a wife who persuades her husband not to disclose marital confidences." Id. at 2134-35 (citations omitted).

To ensure that a charge founded upon an intent to impede an investigation did not capture innocent conduct, the trial court should have instructed the jury that the firm had to have acted corruptly, meaning with a "wrongful, immoral, depraved, or evil" purpose. Id. at 2136. Because

Hon. Robert Johnson
May 12, 2006
Page 7

the trial court's instructions failed to convey this basic sense of immoral purpose, the Supreme Court overturned the conviction. Id. at 2137.

Arthur Andersen has particular significance in this case because, as we understand it, the service that Mr. Kerik allegedly agreed to perform was to attempt to "influence" the TWC with regard to licensing issues on behalf of REDACTED If anything, an attempt to influence ("to affect or alter by indirect or intangible means" or "to have an effect on the condition or development of") (see Merriam Webster Online Dictionary) a licensing decision is more innocuous than an intent to impede a regulatory enforcement investigation. This means that to satisfy the corrupt agreement element in this case, the People would be required to prove beyond a reasonable doubt that Mr. Kerik agreed to attempt to influence the TWC on REDACTED behalf with a "wrongful, immoral, depraved or evil" purpose. This, in turn, would require proof that, at a minimum, Mr. Kerik intended to cause the TWC to bestow a license or to afford REDACTED some benefit, that it otherwise should not have bestown upon REDACTED We do not believe that the evidence would come close to satisfying this high burden.

E.    Proposed Civil Resolution

In light of the legal and factual infirmities in any contemplated prosecution of Mr. Kerik, we propose the following resolution, pursuant to which Mr. Kerik would:

- enter into a non-prosecution agreement with your office;

- agree to a simultaneous settlement with the Conflicts of Interest Board of the City of New York of a violation of the conflict of interest provisions of the New York City Charter, pursuant to which he would agree to pay a substantial fine;

- disgorge through an acceptable means (e.g., forfeiture) the unpaid value of the renovations on his former Bronx apartment; and

- appear in court to (1) waive the statute of limitations relating to the violation, (2) acknowledge having committed the violation, and (3) read an agreed-upon allocution admitting the specific offending conduct.

The particular conflict of interest provision to which Mr. Kerik would agree to settle is the following:

No public servant shall accept any valuable gift, as defined by rule of the board, from any person or firm which such public servant knows is or intends to become engaged in business dealings with the city . . . NYC Charter § 2604(b)(2).

31124722.1

Hon. Robert Johnson
May 12, 2006
Page 8

     We believe that this settlement would most serve the ends of justice.

             Very truly yours,

             Kenneth M. Breen
             Fulbright & Jaworski L.L.P.

             Joseph Tacopina
             Law Offices of Joseph Tacopina, P.C.

cc: Thomas Leahy, Esq.

31124722.1

# EXHIBIT B

21/06 '06 11:10 FAX 00962 6 5505125    FOUR SEASON HOTE    ☑002

LAW OFFICES OF
JOSEPH TACOPINA, P.C.
A PROFESSIONAL CORPORATION
275 MADISON AVENUE
35TH FLOOR
NEW YORK, NEW YORK 10016

TELEPHONE (212) 227-8877
FACSIMILE (212) 619-1028
www.tacopinalaw.com

JOSEPH TACOPINA
CHAD D. SEIGEL
GEORGE VOMVOLAKIS

ANDREW C. LAUFER
FRANCESCO PENTA***
VICTOR SHERMAN*
+   ALSO ADMITTED IN CALIFORNIA
***ONLY ADMITTED IN ITALY

MILAN OFFICE:
I- 20123 MILANO
VIA OLMETTO, 21
MILAN, ITALY
TEL (02) 72020070
FAX (02) 875-883

June 20, 2006

Hon. Robert T. Johnson
District Attorney
Office of the District Attorney, Bronx County
198 East 161st Street
Bronx, New York 10451

Re:    Bernard B. Kerik

Dear Hon. Johnson:

Pursuant to our discussions, please see below statement of my client, Bernard B. Kerik:

I, Bernard B. Kerik, hereby agree to plead guilty, no later than July 10, 2006, on the following terms:

(1)    I will plead guilty to one count of a violation of NYC Administrative Code § 12-110 b (15) (failure to report) (an unclassified misdemeanor.) I admit that I did not report a loan from Redacted    2001. The agreed upon sentence will be a fine of $1,000 and a civil penalty of $5000.

(2)    I will plead guilty to one count of a violation of NYC Charter § 2604 (b) (5) (taking a valuable gift from a person intending to do business with the City) (an unclassified misdemeanor.) I admit that I took a gift from the Redacted    r a subsidiary. Thinking that they were clean, I spoke to city officials about Redacted    h two occasions and on another occasion permitted my office to be used for a meeting between Trade Waste Commission officials and Redacted    fficials. The agreed upon sentence,    per Penal Law § 80.10 (5), will be a fine in the amount of $215,000, $165,000 representing the amount of the gift plus $40,000, and a civil penalty of $10,000.

(3)    I will waive any claim based upon the statute of limitations or the geographical jurisdiction of Bronx County.

21/06 '06 11:11 FAX 00962 6 5505125      FOUR SEASON HOTE                      ☑003

JOSEPH TACOPINA, P.C.

Hon. Robert T. Johnson
June 20, 2006
Page Two


     (4)    I understand that this plea is in satisfaction of all pending criminal or administrative charges presently known to the Bronx District Attorney, The Department of Investigation of he City of New York, or the Conflicts of Interest Board of the City of New York, and that the Bronx District Attorney and the DOI agree not to issue any public report concerning such potential charges or its investigation.

     (5)    I understand that in the course of the plea, the prosecutor will state that although some may draw inferences, there is no direct evidence of an agreement.

     (6)    I understand that this agreement is intended to bind both myself and the Bronx District Attorney's Office, and that unless the prosecution breaches the terms of this agreement, or the court refuses to accept the plea, if for any reason I do not plead guilty on the above terms, the admissions above can be used against me in further proceedings in court.


AGREED & ACCEPTED:

_____
Joseph Tacopina, Esq., Attorney for
    Bernard B. Kerik


AGREED & ACCEPTED:

_____
Bernard B. Kerik

# EXHIBIT C

# FULBRIGHT & JAWORSKI L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
666 FIFTH AVENUE, 31ST FLOOR
NEW YORK, NEW YORK 10103-3198
WWW.FULBRIGHT.COM

KBREEN@FULBRIGHT.COM                                    TELEPHONE:   (212) 318-3000
DIRECT DIAL: (212) 318-3340                             FACSIMILE:   (212) 318-3400

March 21, 2007

**CONFIDENTIAL**

**BY ELECTRONIC AND OVERNIGHT MAIL**

Perry A. Carbone
Assistant United States Attorney
Criminal Division, Southern District of New York
300 Quarropas Street
White Plains, NY 10601

     Re:   Bernard Kerik

Dear Mr. Carbone:

     As you know, we represent Bernard Kerik in connection with your office's criminal investigation of him. We write to (1) advise that Mr. Kerik intends to preserve his attorney work product protections and attorney-client privilege as to his discussions and other communications with his past and present attorneys, including Joseph Tacopina [REDACTED] and (2) inquire as to the protections that you have put in place to remedy any past, and to prevent any future, intrusion upon privilege in the course of your investigation.

     Our concern stems from your receipt of attorney-client communications that had been intercepted and your efforts to gather other potentially privileged information. With regard to the privileged information that you have gathered already, we demand an immediate, detailed accounting of this information and a description of your efforts to gather the information.

     Specifically, we are aware that you obtained from the Bronx District Attorney's Office tape recordings of conversations between Messrs. Kerik and Tacopina, which were made pursuant to a wiretap obtained by the Bronx District Attorney's Office from approximately July 13, 2005 through September 9, 2005. Review of the transcript of the only such call that was provided to us by the Bronx District Attorney's Office reveals that privileged conversations were recorded.

     We understand now that you have tapes of other such attorney calls as well. Thus far, you have refused our oral request that you provide us with copies of the other tapes or transcripts of attorney calls. We again request all tapes and transcripts of such calls so that we can make an

Perry A. Carbone                                            <u>CONFIDENTIAL</u>
March 21, 2007
Page 2

assessment of the extent to which Mr. Kerik's attorney-client privilege and attorney work product protections have already been compromised, and seek appropriate relief.

In addition, we ask for a description of the protections that have been implemented to date to prevent the disclosure of privileged information to other prosecutors or case agents working on the investigation. As explained at length below, any use of privileged information in the investigation would violate Mr. Kerik's rights and implicate remedies ranging from exclusion of evidence to dismissal of any indictment that you might decide to bring.[1]

> REDACTED

A.    <u>The Intercepted Communications Contain Privileged Communications</u>

The attorney-client privilege, recognized as "the oldest of the privileges for confidential communications known to the common law," <u>Upjohn Co. v. United States</u>, 449 U.S. 383, 389 (1981), serves "to promote unfettered communication between attorneys and their clients so that the attorney may give fully informed legal advice." <u>In re Richard Roe, Inc.</u>, 68 F.3d 38, 40 (2d Cir. 1995) (citation omitted). The privilege applies

> (1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived.

<u>Id.</u> at 39 (citation omitted).

The attorney work product doctrine "serves a similar purpose: 'to avoid chilling attorneys in developing materials to aid them in giving legal advice and in preparing a case for trial.'" <u>Id.</u> (citation omitted). The protection extends to any documents or things prepared in anticipation of litigation "by or for a party, or by or for his representative." <u>SEC v. Beacon Hill Asset. Mgt. LLC</u>, 2004 WL 1746790, at *4 (S.D.N.Y. August 3, 2004) (internal quotation marks and citation omitted). In addition, the attorney work product protection can apply to oral communications. <u>See, e.g.</u>, <u>Clute v. The Davenport Co.</u>, 118 F.R.D. 312, 315 (D. Conn. 1998) (noting that the work product doctrine applies to the contents of oral interviews).

We understand that you have the transcripts of discussions to which Mr. Tacopina was a party, at a time when Mr. Tacopina was acting as Mr. Kerik's attorney, and that these discussions were for the purpose of seeking legal advice. We understand that throughout the time of the

---

[1] In addition, the privileged communications could be suppressed on the separate ground that their interception was in breach of the minimization requirement. <u>See</u> 18 U.S.C. § 2518(8).

31296339.2

Perry A. Carbone                                                          <u>CONFIDENTIAL</u>
March 21, 2007
Page 3

interceptions, Mr. Kerik was known to be the subject of an investigation at least by the Bronx
District Attorney's Office. As a result, any such discussions would therefore have been made "in
anticipation of litigation," and therefore would be subject to the attorney work product
protection. <u>In re Grand Jury Proceedings</u>, 2001 U.S. Dist. LEXIS 15646, at *48 (S.D.N.Y. Oct.
3, 2001) ("A lawsuit need not already have been filed for the 'in anticipation of litigation'
requirement to be met. Thus, a document may be protected even if it was 'created prior to the
event giving rise to litigation' because 'in many instances, the expected litigation is quite
concrete, notwithstanding that the events giving rise to it have not yet occurred'") (citation
omitted). It is immaterial whether the material at issue was created in anticipation of another
litigation, so long as it was created in anticipation of some litigation. <u>See</u> <u>Fine v. Facet
Aerospace Prods. Co.</u>, 133 F.R.D. 439, 445 (S.D.N.Y. 1990).

B.    <u>The Crime-Fraud Exception is Narrowly Construed and Cannot Apply Here</u>

        The crime-fraud exception "applies only when there is probable cause to believe that the
communications were intended in some way to facilitate or to conceal the criminal activity." <u>In
re Grand Jury Subpoena Duces Tecum</u>, 798 F.2d 32, 34 (2d Cir. 1986) (citation omitted). Thus,
even where there is probable cause to believe that a crime has been committed, the government
must also establish probable cause to believe "that the communications were <u>in furtherance of</u>"
the criminal activity. <u>In re Richard Roe, Inc.</u>, 68 F.3d 38, 40 (2d Cir. 1995) (emphasis supplied).
It is therefore insufficient to show that the attorney-client communications overlapped
temporally with criminal activity. <u>In re Grand Jury Subpoena Duces Tecum</u>, 798 F.2d at 34.
Even the fact that the attorney-client communications provide evidence of the criminal conduct
is insufficient. <u>In re Richard Roe, Inc.</u>, 68 F.3d at 40.

        Rather, the exception will apply "only when the court determines that the client
communication or attorney work product in question was <u>itself</u> in furtherance of the crime or
fraud." <u>Id.</u> (citing <u>In re Grand Jury Subpoena Duces Tecum</u>, 798 F.2d at 34) (emphasis in
original). In addition, the exception applies only to individual communications, not to a class of
communications: "the crime-fraud exception applies only where there is probable cause to
believe that <u>the particular communication with counsel or attorney work product</u> was intended in
some way to facilitate or to conceal the criminal activity." <u>Id.</u> (citing <u>In re Grand Jury Subpoena
Duces Tecum</u>, 798 F.2d at 34) (emphasis supplied). For these reasons, courts routinely reject
assertions that the crime-fraud exception applies. <u>See, e.g.,</u> <u>United States v. Stewart</u>, 2003 U.S.
Dist. LEXIS 23180, at **4-6 (S.D.N.Y. Dec. 29, 2003) (denying a government application for
subpoena where the government failed to make an adequate showing of the need for privileged
documents prepared during the government's pre-indictment investigation, and holding that the
crime-fraud exception does not apply "simply because privileged communications would provide
an adversary with evidence of a crime or fraud"); <u>In re Currency Conversion Fee Antitrust
Litigation</u>, 2002 U.S. Dist. LEXIS 21196, at **13-14 (S.D.N.Y. Nov. 1, 2002) (holding that the
crime-fraud exception did not apply to a privileged attorney memorandum advising a client on
the legality of possible courses of conduct); <u>North River Ins. Co. v. Columbia Casualty Co.</u>, 1995
U.S. Dist. LEXIS 7956, at **13-15 (S.D.N.Y. May 31, 1995) (holding that the crime-fraud
exception did not apply where the excerpts from privileged communications cited by the party

Perry A. Carbone                                              CONFIDENTIAL
March 21, 2007
Page 4

seeking disclosure did not show an ongoing fraudulent scheme, but instead reflected "the balancing of potential rights and liabilities that typically characterize attorney-client communications").

Here, there does not appear to be any basis for application of the crime-fraud exception. We are unaware of any evidence that Mr. Kerik sought out Mr. Tacopina's advice for the purpose of furthering or concealing any criminal conduct, and our review of the transcript made available to us has confirmed this view.

C.    The Interception and Review of Privileged Discussions Implicates Mr. Kerik's Rights

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended ("Title III") requires those monitoring intercepted communications to 'minimize' the interception of privileged communications. See 18 U.S.C. § 2518(8). Moreover, the statute expressly provides that privileged communications remain privileged, despite their interception:

> No otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged character.

18 U.S.C. § 2517(4). See United States v. Arreguin, 277 F. Supp. 2d 1057, 1062 (E.D. Cal. 2003) ("Indeed, Congress took deliberate action to preserve the privilege where privileged communications were intercepted.") (citing Section 2517(4)).

In light of these statutory commands, it is clear that (1) the interception of privileged communications between Mr. Kerik and Mr. Tacopina, or communications in which the substance of privileged discussions were disclosed, violated the minimization requirements of Title III; and (2) those communications remain privileged, despite the fact that they were intercepted.

Given the plainly protected nature of the communications that were intercepted, it is especially troubling that you seem to believe that even a 'taint team' procedure for reviewing the discussions is unnecessary. Your blanket assertion that no such procedure is necessary because the communications are subject to the crime-fraud exception overlooks the narrow scope of that exception. More important, it fails to ensure that the investigation is not tainted by the disclosure of privileged communications.

The government's review of privileged materials to determine if they fall within the scope of the 'crime-fraud' exception to the attorney-client privilege would constitute an intentional violation of the privilege. United States v. Neill, 952 F. Supp. 834, 840 (D.D.C. 1997) (holding that "there can be no doubt that the government intentionally invaded the attorney-client privilege" where a DOJ attorney "testified that she read most (but not all) of the potentially privileged materials to determine whether the crime-fraud exception applied"). In such a case, the government "bears the burden to rebut the presumption that tainted material was

31296339.2

Perry A. Carbone                                                                    CONFIDENTIAL
March 21, 2007
Page 5

provided to the prosecution team." Neill, 952 F. Supp. at 840-41 (citing Briggs v. Goodwin, 698 F.2d 486, 496 n. 29 (D.C. Cir. 1983), vacated on other grounds, 712 F.2d 1444 (D.C. Cir. 1984)).

The courts afford broad remedies for the government's improper review of privileged communications. Courts will typically exclude from evidence not only the improperly reviewed privileged communications, but also all evidence derived therefrom. See United States v. Lin Lyn Trading, Ltd., 149 F.3d 1112, 1118 (10th Cir. 1998) (upholding the suppression of all evidence gathered after the date a privileged document was seized by the government).

Where the improper review is sufficiently egregious, dismissal of the indictment is appropriate. See United States v. Ginsberg, 758 F.2d 823, 833 (2d Cir. 1985) (noting that prejudice sufficient to warrant dismissal can be shown by establishing "that a prosecution witness testified concerning privileged communications, that prosecution evidence originated in such communication, or that such communications have been used in any other way to the detriment of the defendant"); United States v. Mackey, 405 F. Supp. 854, 866-67 (E.D.N.Y. 1975) (noting that when assessing whether to dismiss a facially valid indictment, court must assess the egregiousness of the violation, and the extent to which the defendant has been prejudiced).

D.      The Communications Should Be Reviewed Independently

As explained above, we are not aware of any facts that were in place here that would give rise to the narrowly circumscribed circumstances for the crime-fraud exception to apply. Thus, we request that your office submit to a judge or special master transcripts of all intercepted communications to which Mr. Tacopina was a party or in which communications with him were discussed.

We note that although courts have sanctioned the use of 'taint teams,' they have recognized that review by a judge or special master is the more proper mechanism. See, e.g., In re Grand Jury Subpoenas, 454 F.3d 511, 523 (6th Cir. 2006) (noting "an obvious flaw in the taint team procedure: the government's fox is left in charge of the appellants' henhouse, and may err by neglect or malice, as well as by honest differences of opinion"). Several judges in the Southern District have expressed similar concerns and have ordered that privilege reviews be conducted by judges or special masters. See United States v. Kaplan, 2003 WL 22880914, at *12 (S.D.N.Y. Dec. 5, 2003) (Batts, J.) ("Certainly this Opinion should be counted among those disapproving the Government's use of an ethical wall team to 'protect' the attorney-client and work-product privileges or to determine whether the crime-fraud exception applies, where potentially privileged materials are turned over to the trial team and case agents before any challenge to those determinations can be raised by a Defendant and determined by a court."); United States v. Stewart, 2002 WL 1300059, at *6 (S.D.N.Y. June 11, 2002) (Koeltl, J.) (citing cases); In re Search Warrant for Law Offices Executed on March 19, 1992, 153 F.R.D. 55, 59 (S.D.N.Y. 1994) (Brient, J.) ("[T]his Court notes that reliance on the implementation of a Chinese Wall, especially in the context of a criminal prosecution, is highly questionable and should be discouraged. The appearance of Justice must be served, as well as the interests of Justice"). Indeed, it appears that your office has conceded the lack of precedent in the Southern

Perry A. Carbone                                                    CONFIDENTIAL
March 21, 2007
Page 6

District reaching the opposite conclusion. See Stewart, 2002 WL 1300059, at *6 ("The government also concedes that it is unaware of any judicial decision in this District that has compared the relative merits of using a Special Master and using a government privilege team in these circumstances and has identified use of a privilege team as a better procedure.").

Furthermore, the guidance set out in the U.S. Attorneys' Manual ("USAM") for the review of materials seized from an attorney's office contemplates such independent review. See Stewart, 2002 WL 1300059, at *6 (noting that "the USAM clearly contemplates the possibility of review by a special master or judicial officer . . . ."). The section of the USAM concerning the search of the premises of subject attorneys provides that "[p]rocedures should be designed to ensure that privileged materials are not improperly viewed, seized or retained during the course of the search." USAM § 9-13.420(D). Where limited review of arguably privileged material is required, a privilege team should be designated. See USAM § 9-13.420(E). While the USAM contemplates the use of privilege teams for gathering documents, in any subsequent review, it directs prosecutors to consider the use of a special master. The USAM requires prosecutors to assess, among other factors, the following:

- Who will conduct the review, i.e., a privilege team, a judicial officer, or a special master.

- Whether all documents will be submitted to a judicial officer or special master or only those which a privilege team has determined to be arguably privileged or arguably subject to an exception to the privilege.

USAM § 9-13.420(F) (emphasis supplied).

Here, the circumstances weigh more heavily for review by a judge or special master than in the case of a typical search of an attorney's office. Here, the intercepted communications took place in the course of Mr. Tacopina's ongoing representation of Mr. Kerik in the very matters under investigation. Moreover, as explained at length above, the alleged basis for overcoming the privilege – the crime-fraud exception – is exceedingly narrow in scope. For all of these reasons, review by a judge or special master is essential to protect Mr. Kerik's privileges and to avoid a violation of his Sixth Amendment rights.

E.    There Has Been No Waiver of Any Privilege Claims

Any suggestion that Mr. Kerik has somehow 'waived' all privilege claims as to any of the intercepted conversations is completely unfounded. Mr. Kerik received materials relating to the wiretaps from the Bronx District Attorney's Office on June 30, 2006, in conjunction with his guilty plea in Bronx County Supreme Court. Those materials reflected that several hundred conversations had been captured. Although a transcript of part of one discussion involving Mr. Tacopina was included, the materials did not enumerate how many discussions involving Mr. Tacopina were captured, and no transcripts of any other such discussions were provided.

31296339.2

Perry A. Carbone                                                    CONFIDENTIAL
March 21, 2007
Page 7

Moreover, nothing in the materials that were disclosed revealed that the recordings had been provided to your office.  Although we later learned through media reports and subsequent discussions with your office that you had obtained tapes pertaining to REDACTED it was only in our recent discussions that we learned that your office also had tapes of discussions involving Mr. Tacopina.

In any event, the details of the chronology are irrelevant.  Even if Mr. Kerik had been made aware on the date of disclosure of the tapes to your office that discussions involving Mr. Tacopina were among them, he would have been under no obligation to affirmatively assert privilege.  As explained above, Title III explicitly provides that privileged communications remain privileged, despite their interception.  18 U.S.C. § 2517(4).  Nothing in Title III suggests that a privileged communication "shall lose its privileged character" because of a party's failure to make a pre-indictment assertion of privilege.  Indeed, such a rule would eviscerate the statutory protection for privileged communications.

Title III, moreover, expressly provides that any aggrieved party who seeks to suppress evidence obtained in a wiretap may do so through a pretrial suppression motion.  Section 2518(10)(a) of Title 18 explicitly provides that suppression motions may be made "in any trial, hearing, or proceeding . . . .[,]" and it further provides that "[s]uch motion shall be made before the trial, hearing, or proceeding, unless there was no opportunity to make such motion or the person was not aware of the grounds of the motion."  Id.  In light of the express provisions of Sections 2517(4) and 2518(10)(a), there is plainly no basis to infer that a party who learns through a media report and discussions that a prosecutor may be in possession of privileged communications, waives any privilege claims by not immediately notifying the prosecutor of his privilege claims.  Title III makes clear that all privilege claims are preserved up until the time of a pretrial suppression motion, or even later if the party "was not aware of the grounds of the motion."

F.    Tacopina Subpoena

We are also aware of a subpoena that you served on Mr. Tacopina's office for records.  We have requested from Mr. Tacopina the opportunity to review any records that he intends to produce in response to the subpoena so that Mr. Kerik may assert any applicable privileges, and we will inform your office immediately if we intend to make any such assertions.

REDACTED

31296339.2

Perry A. Carbone                                    <u>CONFIDENTIAL</u>
March 21, 2007
Page 8

REDACTED

Very truly yours,

Kenneth M. Breen

31296339.2