

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*United States District Courthouse*
*300 Quarropas Street*
*White Plains, New York  10601*

December 12, 2007

**BY HAND**
Honorable Stephen C. Robinson
United States District Judge
United States Courthouse
300 Quarropas Street
White Plains, New York  10601

     Re:  ***United States v. Bernard B. Kerik,***
          **07 Cr. 1027 (SCR)**

Dear Judge Robinson:

       We write to reply to the defendant's Memorandum of Law
in Opposition to the Government's Motion to Disqualify ("The
Breen Memorandum" or "Breen Mem."). Despite its length, the
Breen Memorandum is short on facts and law demonstrating why Mr.
Breen should not be disqualified. If anything, as set forth
below, the Breen Memorandum -- based, in part, on gross
mischaracterizations of the law -- further demonstrates why
Breen's disqualification is unquestionably necessary.

**I.  No Discovery Is Warranted Because The Undisputed Facts Show
That Mr. Breen Is Both A Witness And An Advocate In This
Matter.**

       While Mr. Breen repeatedly asks for discovery, hearings
and the like in connection with the Government's *Curcio* motion,
the undisputed facts demonstrate beyond any doubt whatsoever that
he is both a witness and an advocate in this matter.

       As set forth in the Affirmation of Assistant United
States Attorney Elliott B. Jacobson, submitted herewith as
Exhibit 1 ("the Jacobson Affirmation" of "Jacobson Aff."):  1)
In December 2004, Mr. Tacopina conveyed to the Bronx County
District Attorney's Office ("BCDAO") a false exculpatory
statement regarding the renovations to the Riverdale Apartment as
well as damning admissions concerning a loan taken by the
defendant and the use to which the loan proceeds were put; 2) The
defendant specifically authorized Tacopina to make those

statements to the BCDAO; 3) On February 7, 2005, Tacopina, again with authorization from the defendant, repeated the false exculpatory statement regarding the apartment renovations to New York City Department of Investigations ("NYCDOI") Deputy Commissioner Walter Arsenault; 4) After Mr. Breen became part of the defendant's legal team, the defendant repeated the false account concerning the apartment renovations as well as the admissions regarding the loan to Breen in Tacopina's presence and authorized them to convey that information to the BCDAO/NYCDOI prosecutors/investigators conducting the investigation; and 5) On March 8, 2006, at a meeting at the BCDAO attended by members of the District Attorney's staff, Arsenault, Tacopina, and Breen, Tacopina repeated the false account concerning the apartment renovations.  Those facts implicate Breen as a witness in this matter and mandate his disqualification.

        In an effort to secure a fact-finding hearing that would amount to little more than a fishing expedition providing discovery prematurely to the defense, Mr. Breen desperately grasps at straws.  He argues that a hearing is necessary claiming the Government's summary of facts is inconsistent because "at the December 6 oral argument, the government stated that someone from the Bronx District Attorney's Office has a 'distinct recollection' that Mr. Tacopina said the renovations cost around $50,000 and that Mr. Kerik paid for them," Breen Mem. at 15, without stating in haec verba "and no one else paid for them," id.[1]  This, according to Breen, leaves open the fanciful hypothesis that someone else paid the balance of the renovations costs -- $255,000 -- without the defendant's knowledge.  See id.

        First, the clear implication from any plain reading of what the Government stated at oral argument is that the defendant and the defendant alone paid for the renovations.  Moreover, as the Jacobson Affirmation makes clear, Arsenault, the individual adverted to at the oral argument who distinctly recalls what was

_____

[1]Mr. Breen misstates the record.  The Government did not state that "someone from the Bronx District Attorney's Office has a 'distinct recollection'......"  The record reflects that "amongst the people we spoke to," -- including members of the Bronx District Attorney's Office and a representative of the NYCDOI [Arsenault] -- "one person [Arsenault] has a distinct recollection that the substance of the statement with respect to the renovations [, made at a discussion at the BCDAO where Breen was a participant, was] that they were about $50,000 and that Kerik paid for them."  Transcript of proceedings of December 6, 2007 at 15.

said at the Bronx District Attorney's Office during the March 8, 2006 meeting attended by, among others, Breen, informed us that:

> [O]n or about February 7, 2005, he met with Mr. Tacopina at the offices of the NYCDOI. Deputy Commissioner Arsenault further informed us that during that meeting Tacopina advised him that the total cost to the defendant in renovating the Riverdale Apartment was between $30,000 and $50,000, that the defendant paid for the renovations, **and that no one else paid for any part of the renovation costs**. Mr. Tacopina has confirmed that he made the above statements to Arsenault and that the information he had conveyed to Arsenault had been provided to him by the defendant for the express purpose of conveying it to personnel at the NYCDOI conducting its investigation.... Deputy Commissioner Arsenault [further] informed us that on or about March 8, 2006 he attended a meeting at the BCDAO. Arsenault further informed us that the meeting was also attended by members of the BCDAO, Mr. Tacopina, and Mr. Breen. Arsenault also further informed us that during the meeting Tacopina repeated the substance of his February 7 proffer.

Jacobson Aff. ¶¶ 9,11 (emphasis supplied). Accordingly, there are no inconsistencies at all, let alone one that would warrant a factual hearing.

> ***Notably, while Mr. Breen filed an affidavit in this matter in which he admits participating in the March 8, 2006 meeting adverted to above, his affidavit is silent as to what was said at that meeting.*** Breen knows that were he to admit that at that meeting Tacopina repeated the false account regarding the apartment renovations -- or were he to deny that that occurred -- he would concede his status as an important witness in this matter. Accordingly, Breen's silence about what was said at the meeting speaks volumes about his conflict.[2]

---

[2]As part of an effort to play down the conflict under which he labors, Mr. Breen also paints a somewhat misleading picture of his role in representing the defendant in the Bronx. Thus, Breen

(continued...)

Beyond that, the defense has submitted no affidavit, affirmation or statement that contradicts anything in the Jacobson Affirmation. Hearings, as this Court well knows, are held to resolve disputed issues of fact necessary to the resolution of a legal issue. Here, no facts have been put in issue because neither Mr. Breen nor the defendant have refuted any of the pertinent facts as set forth above. Accordingly, no fact-finding hearing or discovery is warranted prior to the Court's ruling on the instant motion.

The uncontradicted facts as set forth above and the relevant law as set forth below show that it is time for Mr. Breen to step aside as the defendant's counsel. If he will not do so voluntarily, then, most respectfully, the Court should order him to do so.

## II. The Statements Are Admissible And Should Be Admitted.

Because Mr. Breen knows that he is a witness to the critical statements in question, he has attempted to obviate his disqualification by arguing that the statements are inadmissible on a number of grounds. All of those arguments -- as shown below -- are makeweight, without any legal force, and represent nothing less than a thinly-veiled attempt to exclude highly relevant, probative, and damaging evidence in a flawed attempt to keep Breen on as the defendant's counsel. The evidence in question should be admitted, and the Government should not be hamstrung at trial in order to cater to the defendant's choice of counsel.

---

[2](...continued)
states: "[I]t was in fact Mr. Tacopina who negotiated the plea agreement, including the allocution, it was Mr. Tacopina who signed the plea agreement, and it was Mr. Tacopina who stood with Mr. Kerik during the plea allocution and who spoke on the record. Indeed, Mr. Breen was on trial on a case in this District in early June." Breen Mem. at 5. Not only is that statement at odds with what Breen informed the Government -- namely, that he, not Tacopina, provided most of the legal representation in the Bronx -- it also glaringly omits that when Tacopina gave his oral notice of appearance at the Bronx guilty plea, he stated: "For Mr. Kerik Joseph Tacopina, with Paul DeMila and Ken [B]reen." Government's Curcio Motion; Exhibit 1 at 2. To listen to Breen's argument one would think he was not even there.

4

## A.  The statements are not privileged.

Initially, Mr. Breen advances a number of arguments as to why -- in his view -- the statements in question are privileged.  All of his arguments are entirely without merit.

### 1.  The Government obtained the statements properly.

Mr. Breen first claims that the Government obtained the statements improperly.  Breen argues that the Government should have asked a court or special master to review the statements for privilege before they were disclosed or, that at the very least a taint team within the U.S. Attorney's Office should have done so. Breen also complains that the Government spoke to Mr. Tacopina despite the fact that in a March 7, 2007 letter to this Office he "unambiguously stated that Mr. Kerik intended to assert his attorney-client privilege and attorney work product protection," Breen Mem. at 7, and that the Government subsequently spoke to Mr. Tacopina without noticing the defendant.  Breen's claim is entirely fatuous.

As set forth in the Jacobson Affirmation, the Government learned of the statements in question in the first instance not from Mr. Tacopina, but from the investigators and prosecutors to whom those statements had been made.  In other words, the statements had already been published to third parties before we spoke with Tacopina.  In such circumstances -- and as demonstrated below -- the statements were clearly not privileged. All the Government did vis-à-vis Tacopina was to have him confirm that he made the statements in question to the prosecutors and investigators from whom we obtained them and that the defendant authorized him to make those statements to those third parties. No case, statute, regulation or any other law requires the Government to seek the Court's intervention or to utilize a taint team before receiving patently non-privileged information in these circumstances, and there is absolutely nothing improper about the way in which the Government proceeded here.  Mr. Breen's March 7 letter -- although it did not and could not have placed any legal restrictions on the Government in any event -- was not disregarded because the Government never made inquiry into privileged conversations.  Finally, the Government had no legal obligation to give notice to the defendant that it was interviewing Tacopina any more than it was obligated to provide notice with respect to its interview of any other witness during a grand jury investigation.  In short, there was absolutely nothing wrong with the manner in which the Government obtained the statements in question, and the suggestion that there was is entirely devoid of substance.

## 2. The attorney-client privilege in inapplicable.

Mr. Breen's claim that the statements are protected by the attorney-client privilege is empty. The principles governing that privilege are clear:

The burden of establishing the existence of an attorney-client privilege rests upon the individual asserting the privilege. *United States v. Schwimmer*, 892 F.2d 237, 244 (2d Cir. 1989); *von Bulow v. von Bulow*, 811 F.2d 136, 146 (2d Cir. 1987). Because "testimonial exclusionary rules and privileges contravene the fundamental principle that 'the public . . . has a right to every man's evidence,'" the Supreme Court has emphasized that any such privilege must be "strictly construed." *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189 (1990) (citations omitted); *United States v. Nixon*, 418 U.S. 683 (1974) (Evidentiary privileges are disfavored because "they are in derogation of the search for truth"). Accordingly, because it is the defendant who seeks to shield the information here, he bears the burden to demonstrate that the information is privileged.

The Second Circuit has described the privilege thus: "(1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived." *United States v. Kovel*, 296 F.2d 918, 921 (2d Cir. 1961) (internal quotation marks and citations omitted). Because the privilege is fact-based, defendants must make this showing as to each communication with respect to which they assert the privilege. *United States v. Brennan*, 938 F. Supp. 1111, 1130 (E.D.N.Y. 1996), *rev'd on other grounds*, 183 F.3d 139 (2d Cir. 1999).

A client's communication to his lawyer, however, cannot be protected by the privilege if the client intended that the communications would be communicated to a third party by the lawyer. As the Tenth Circuit explained in *United States v. Bump*, 605 F.2d 548, 551 (1979):

> When a matter is communicated to the lawyer with the intention or understanding it is to be repeated to another, the content of the statement is not within the privilege.

In *Bump*, the defendant, through his attorney, had notified the Government of an alibi defense and documents supporting that

6

defense.  The Government investigation was able to disprove the
defense.  The Circuit Court upheld cross examination of defendant
about his conversation with his lawyer regarding the alibi
defense:

> In this case Bump's attorney gave information
> acquired from his client to the Government.
> Bump makes no showing that the lawyer's
> disclosures were without his consent, or that
> he communicated the information to the
> attorney with the intention it be kept
> secret.  The burden of proving a
> communication is privileged is on the person
> asserting the privilege.

*Id.* at 551 (citation omitted).  Courts have made similar rulings
around the country.  *E.g., United States v. Oloyede*, 982 F.2d
133, 144 (4th Cir. 1993) (information that clients gave attorney
intending that he use it to make INS filings is not privileged);
*United States v. Lawless*, 709 F.2d 485, 486-87 (7th Cir. 1983)
(attorney could not resist testifying about books, papers and
records client gave him in order to prepare tax returns); *United
States v. Rivera*, 837 F. Supp. 565, 569-70 (S.D.N.Y. 1993) (no
privilege for information clients gave attorney intending he
convey it to the INS).

     The lack of confidentiality surrounding the
communications in this case and the fact that Tacopina and Breen
were authorized to disclose the statements in question could not
be more clear.  First, Tacopina has stated that he was
specifically authorized by the defendant to make the statements
in question to the relevant prosecutorial/investigative
authorities, and the defendant has never disputed or refuted that
fact.  Second, the circumstances under which the statements were
made -- an attorney relating his client's version of events to
prosecutors/investigators -- clearly suggest that the defendant
authorized his attorney to make the statements on his behalf.
And third, the defendant -- as the evidence at trial will show --
made almost identical statements to White House officials vetting
him for the position of Secretary of the Department of Homeland
Security as well as to the contractor who performed the
renovations on the Riverdale Apartment (in yet another attempt to
obstruct justice and conceal his illegal activity by coaching a
witness with a false account of what had occurred).

     In short, the statements at issue were communicated to
Tacopina with the expectation that they would be published to
third parties.  The statements were therefore not privileged, or,

7

in the alternative, the authorized disclosure of the communications at issue clearly amounts to a waiver of the privilege, even if one existed in the first instance. In any event, the defendant has come nowhere close to meeting **his** burden of showing that the statements were privileged.

### 3.    **Any claimed privilege is vitiated by the crime-fraud exception.**

Finally, assuming -- contrary to fact and law -- that the statements concerning the apartment renovations were privileged in the first instance and that the privilege was not waived, the statements would still be admissible under the crime-fraud exception to the privilege. The law pertaining to the crime-fraud exception, as set forth below, is clear.

First, communications made to an attorney are excluded from the privilege where there is probable cause to believe that the particular communication with counsel or attorney work product was intended in some way to facilitate or to conceal criminal activity. *In Re Richard Roe*, 68 F.3d 384 38, 40 (2d Cir. (1995); *see also United States v. Davis* 1 F.3d 606 (7th Cir. 1993) (where defendant represented to the prosecutor through his attorney that he had fully complied with a grand jury subpoena when he had not (and in fact had withheld a critical document), the attorney-client privilege had been breached and attorney could be called as a government witness at trial).[3]

_____

[3]The law is well-settled that it is not necessary that the attorney in question have been a knowing participant in the crime or fraud in question. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984) ("Such communications are properly excluded from the scope of the privilege even if the attorney is unaware that his advice is sought in furtherance of such an improper purpose"); *United States v. Chen*, 99 F.3d 1495, 1504 (9th Cir. 1996) (same). Even where the attorneys are "unwitting pawns," the exception applies because "[t]he case law dealing with the crime/fraud exception in the attorney-client context make it transparently clear that the client's intentions control." *In re Grand Jury Proceedings (Violette)*, 183 F.3d 71, 79 (1st Cir. 1999) (citing Clark v. United States, 289 U.S. 1, 15 (1933) ("A client who consults an attorney for advice that will serve him in commission of a fraud will have no help from the law.... Nor does the loss of the privilege depend upon the showing of a conspiracy, upon proof that client and attorney are involved in equal guilt. The

(continued...)

Second, it is clear beyond peradventure that the Government has demonstrated probable cause to believe that the defendant's communications to his counsel regarding the apartment renovations were intended to facilitate and conceal criminal activity. The defendant told Mr. Tacopina -- who later repeated what the defendant had told him to the BCDAO/NYCDOI prosecutors and investigators -- that the value of the renovations to the Riverdale Apartment were approximately $50,000 and that he alone paid for them. The Indictment alleges that $255,000 worth of renovations to the Riverdale Apartment were paid for by John Doe #1, John Doe #2, and XYZ. As the Second Circuit has stated: "While by no means conclusive, the issuance of an indictment is certainly probative of the likely validity of its charges...." *United States v. Cannone*, 528 F.2d 296, 302 and n.6 (2d Cir. 1975) (holding that indictment necessarily involved a finding by grand jury of probable cause that the charged crime had been committed.) Since the grand jury by its Indictment has already found probable cause to believe that the defendant's statements were patently false -- and false about a pivotal issue in the case -- the Government has demonstrated by the Indictment alone that the defendant's statements were obstructive and thus subject to the crime-fraud exception. Beyond that, the defendant pleaded guilty in the Bronx to accepting $165,000 in the form of apartment renovations from XYZ. *See* Government's *Curcio* motion; Exhibit 1 at 7-10. Accordingly, the defendant's own words in open court put the lie to his prior statements regarding the apartment renovations and demonstrate probable cause -- indeed, one might argue, proof beyond a reasonable doubt -- that his earlier statements to Bronx and City investigators were false and obstructive.

Lastly, in addition to being false and obstructive, the defendant's statements concerning the apartment renovations that were conveyed to the Bronx/City prosecutors/investigators are subject to the crime-fraud exception because they served to facilitate and conceal the honest services fraud charged in Counts One through Three. In fact, as the Government pointed out

---

[3](...continued)
attorney may be innocent, and still the guilty client must let the truth come out"); *United States v. Ballard*, 779 F.2d 287, 292 (5th Cir. 1986) (exception attaches "when the lawyer becomes either the accomplice or the unwitting tool in a continuing or planned wrongful act"); *United States v. Calvert*, 523 F.2d 895, 909 (8th Cir. 1975) (explaining that "[i]t is the client's purpose which is controlling, and it matters not that the attorney was ignorant of the client's purpose").

at the oral argument on December 6, the Indictment specifically alleges that the defendant sought to conceal the corrupt agreement concerning the apartment renovations by making false statements to the state grand jury and to local officials investigating that matter. Accordingly, the statements at issue are not only relevant, they are proof of concealment -- a critical element of the honest services crimes charged in the Indictment. Because there is more than probable cause to believe that that is the case, the statements are, without question, subject to the crime-fraud exception.

**B.   The statements are highly relevant and necessary.**

Aware that his privilege argument is meritless, Mr. Breen further argues that this Court should preclude any testimony about the statements in question because -- according to him -- such evidence is unnecessary and cumulative. According to the defense, the evidence is of marginal relevance because it does not prove-up the charges in the Indictment and is unnecessary because it is cumulative of other similar evidence. These claims are meritless.

In advancing this argument Mr. Breen raises a host of legal issues which would require the parties to litigate fully the defendant's claims that:  (1) the Indictment is barred by the statute of limitations and (2) that the defendant's efforts to obstruct the state investigation are not legally a part of the charged conspiracy. This Court should decline to decide those issues at this early stage of the proceedings. If non-conflicted counsel wishes to advance those claims, the Government will respond and explain why such claims are meritless, and this Court may then rule on the issues at the appropriate time. The Court is not obligated to rule on the defendant's pretrial motions to dismiss the Indictment prior to deciding whether defense counsel labors under a conflict.

Further, the short answer to the defendant's claims is that the relevant charges are within the Statute of Limitations, and the statements relating to the apartment renovations are plainly relevant to those charges. The defendant's efforts to conceal the unlawful benefits (apartment renovations) that he received from XYZ continued during the pendency of XYZ's permit applications before agencies of New York City and up until the conclusion of the state investigation. Accordingly, the Indictment was plainly timely brought. Moreover, as alleged in paragraph 20 of the Indictment, it was part of the conspiracy charged in Count One that the defendant and others engaged in a

10

variety of acts designed to conceal the corrupt payments he accepted.  Those acts included the following:

    (f)   KERIK, John Doe #1, and John Doe #2 made false statements about, and otherwise failed to disclose, the corrupt payments to federal, state and local government agencies and officials, a state grand jury, the media and the public;

    (g)   KERIK attempted to cause and caused witnesses to make false statements to the NYCDOI and other local law enforcement officials investigating his receipt of corrupt payments, and otherwise attempted to obstruct a state grand jury investigation into his receipt of said payments.

Thus the proffered evidence is highly relevant proof squarely within paragraphs 20(f) and (g) of the Indictment, and there is no basis for its exclusion.

Because the evidence in question in undoubtedly highly probative of the charges in the Indictment, Mr. Breen next argues -- at least with respect to the false statements concerning the apartment renovations -- that the evidence should be excluded because it is cumulative of other similar concealment/false exculpatory evidence.  Even assuming *arguendo* that that is so, it by no means follows that the Government should be deprived of this important evidence simply because its introduction would necessitate defense counsel's disqualification.  That is particularly so here where the defendant will no doubt hotly dispute that he obstructed the state investigation and/or that his lawyers made the obstructive statements in question.

The Government is entitled to show not only that the defendant concealed the benefits he received from John Doe #1, John Doe #2, and XYZ, but it should be permitted to show the lengths to which he went to conceal those benefits.  It should be able to demonstrate to the jury that he did so repeatedly, over a protracted period of time, and with not one, but at least two separate attorneys before separate state investigative agencies. Moreover, as the Court suggested at the December 6 oral argument, the most powerful evidence of this sort would be that coming from the mouths of the defendant's former counsel.[4]

---

[4]Beyond that, the trial in this case may be a year or more away.  The Government has no way of knowing which of its

                                        (continued...)

In short, Mr. Breen cannot have it both ways; he cannot dispute the evidence of obstruction/concealment on one hand and then claim that evidence of obstruction/concealment coming from Tacopina's mouth or his is merely cumulative. Given that it is the Government's burden to prove the defendant guilty beyond a reasonable doubt, the Government should not, as the Second Circuit held in *Locascio*, "be unfairly impaired so that an accused can continue with conflicted counsel." *Locascio*, 6 F.3d 924, 934.

Finally, the defendant's statements concerning the loan from John Doe #6 and the use of the proceeds of that loan to purchase the Riverdale Apartment, which statements were conveyed to the prosecutors/investigators by Tacopina, are highly relevant to the false loan application in Count Eight. Indeed, as we stated in our *Curcio* motion, they are tantamount to a confession on Count Eight.[5]

## C. The statements are not inadmissable plea discussions.

Finally, aware that the statements made by Mr. Tacopina to Bronx and City investigators -- those made by Tacopina alone and those repeated by Tacopina in Mr. Breen's presence -- are not privileged and are highly relevant, Breen next claims that they are inadmissible because they are plea discussions barred by Rule 410 and case law. That claim is based on blatant misstatements of the law.

---

[4](...continued)
witnesses will be available come trial and should not be precluded from calling relevant witnesses at trial merely because they are the only ones available at that time. Again, since none of us can predict the future, nascent conflicts should be nipped in the bud. *See Wheat*, 486 U.S. at 162-63.

[5]The admission of these statements would also require Mr. Breen's disqualification because they were repeated to him in Tacopina's presence for the purpose of their conveying that information to the Bronx/City prosecutors/investigators. Whether or not those particular statements were thereafter reiterated to third parties, they are still not privileged, *see United States v. Bump*, 605 F.2d at 551 (a matter communicated to lawyer with intention or understanding it is to be repeated to another not within the privilege), and Breen is a witness to them.

Initially, we note that the statements at issue were not plea discussions. Rather, they were statements made denying the defendant's guilt,[6] and are thus entirely outside the ambit of Rule 410. *United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005) and *United States v. Levy*, 578 F.2d 896 (2d Cir. 1978) are instructive in this regard. The *Levy* court held that:

> Here we deal with admissions made, not during the course of formal plea bargaining, but as part of an apparent effort by the defendant to help himself without pausing to request any consideration whatever from the prosecutor.... (T)he language of Rule 11(e)(6), to which (Fed. R. Evid.) Rule 410 has been conformed, is capable of being read expansively to include admissions at the earliest stage of an investigation. Such an interpretation would have a radical effect in immunizing admissions and it is apparent that none of the draftsmen had any such intention. 2 Weinstein's Evidence P 410(07), at 410-40 to 410-41. We think that this view of the Rule is correct.... Plea bargaining implies an offer to plead guilty upon condition. The offer by the defendant must, in some way, express the hope that a concession to reduce the punishment will come to pass. A silent hope, if uncommunicated, gives the officer or prosecutor no chance to reject a confession he did not seek. A contrary rule would permit the accused to grant retrospectively to himself what is akin to a use immunity. Even statements voluntarily made after Miranda Warnings would be later objected to on the purported ground that they were made in anticipation of a guilty plea since reconsidered. A balanced system of criminal

---

[6]Even the statements regarding the loan from John Doe #6 -- although highly inculpatory on the Count Eight, the false loan application count -- were part of an effort to deny the defendant's guilt. By showing that he had taken a loan to pay for the apartment, the defendant was trying to convince prosecutors/investigators that the money used for the purchase and renovations to the apartment was his, thereby concealing the role of John Doe #1, John Doe #2 and XYZ in renovating his apartment.

>                   justice should not be made to function in such a swampy
>                   terrain.

*Levy* at 901 (citations omitted). The *Barrow* court subsequently
confirmed the narrow reach of Rule 410:

>                   ... the underlying purpose of Rule 410 is to
>                   promote plea negotiations by permitting
>                   defendants to talk to prosecutors without
>                   sacrificing their ability to defend
>                   themselves if no disposition agreement is
>                   reached.   See Fed. R. Evid. 410 Advisory
>                   Committee's Note (1972).... Because Rule 410
>                   is an exception to the general principle that
>                   all relevant evidence is admissible at trial,
>                   see Fed. R. Evid. 402, its limitations are
>                   not to be read broadly....

*Barrow* at 116 (quotation marks and citation omitted).

       To be sure, plea discussions should be encouraged and
defense attorneys' participation in them should not necessarily
be chilled by the prospect of having their words come back to
haunt them.  But neither that concept nor Rule 410 gives
defendants or their attorneys the right to come into a
prosecutor's office and without any fear of untoward consequences
make patently untrue statements that at once conceal ongoing
criminal conduct and also obstruct justice.  **Honest** proffers
should be encouraged and false proffers deterred.  The Federal
Rules of Criminal Procedure and the case law thereunder should
not be construed so as to give defendants in criminal cases
license to commit vicarious obstruction and other crimes.

       But, more to the point, even if the statement at issue
here could properly be characterized as plea discussions, they
would still not be excludable under Rule 410.  In his desperation
to keep these highly probative and damning statements from the
jury (and at once maintain his position as the defendant's
counsel), Mr. Breen states:  "The alleged attorney statements
fall squarely withing the scope of Rule 410.  Indeed, Rule 410
explicitly protects statements in plea discussion [sic] **even**
where they do not result in a plea of guilty."  Breen Mem. at 26
(emphasis supplied).  The defense has obviously misread the Rule
and consequently misstated its applicability.  In fact, in
pertinent part Rule 410 **only** excludes from evidence "any
statement made in the course of plea discussions with an attorney
for the prosecuting authority which do **not** result in a plea of
guilty or which result in a plea of guilty later withdrawn."

Fed. R. Evid. 410(4) (emphasis supplied). What Breen neglects to mention is that the Rule does not exclude such statements when they do result in guilty pleas not later withdrawn, as was the case here.

Under Federal Rule of Evidence 402, "All relevant evidence is admissible, except as otherwise provided by ... these rules...." Fed. R. Evid. 402. *Since Rule 410 does not exclude plea discussions which result in guilty pleas, such discussions, if relevant -- as indeed the statements in question indubitably are -- are plainly admissible where, as here, the discussions resulted in guilty pleas. Far from excluding the statements in question, the pertinent federal rules show that they are, without question, admissible.*

The defendant's argument that *United States v. Valencia*, 826 F.2d 169, 172 (2d Cir. 1987) supports a conclusion that the admission of the statements in question would unfairly deny the defendant the counsel of his choice is equally unavailing. *Valencia* is entirely distinguishable from the case at bar. In fact, if anything *Valencia* argues for the admission of the statements.

In *Valencia*, the defendant's attorney made arguments to the prosecutor as to why the defendant should be released on bail. One reason for setting bail, he argued, was the defendant's innocence. The attorney then argued specific facts underlying that claim of innocence. The Government later obtained evidence that contradicted the attorney's account of what had occurred, and sought to use the attorney's statements as evidence to show the defendant's consciousness of guilt and/or as impeaching evidence if the defendant testified. The district court denied the Government's application, and on appeal the Second Circuit affirmed, merely finding that it could not say that the trial court abused its discretion in suppressing this evidence. The case at bar is completely different from *Valencia* for several reasons.

First, the Second Circuit stated in *Valencia* that "the Government's appeal stands or falls on whether [the District Court] erred in declining to consider the statements admissible under Rule 801(d)(2)(D) (regarding statements made by an agent within the scope of his agency), and it specifically declined to rule on whether the statements would have been admissible under Rule 801(d)(2)(C) (regarding authorized admissions) because the Government had not made a showing that the defendant had authorized his client to make the statements in question. Here,

by contrast, the Government has demonstrated that the defendant authorized his attorney to make the statements. *See* Jacobson Aff. ¶¶ 8-10.  And the defendant has offered no evidence to the contrary.  The *Valencia* court stated:

> In the context of some evidentiary issues, we have recognized that the trial judge is in the best position to weigh competing interests in deciding whether or not to admit certain evidence.... Though some provisions of the Federal Rules of Evidence are precise, permitting little, if any, room for the exercise of trial court discretion in their application, we think the trial judge must be accorded considerable discretion in determining the application of Rule 801(d)(2) to statements of an attorney offered by the prosecutor against a criminal defendant.

*Valencia* at 173 (internal quotation marks and citations omitted). It stands to reason *a fortiori* that the trial judge must be given considerable discretion to admit statements pursuant to Rule 801(d)(2)(C) (relating to authorized admissions, a subset of Rule 801(d)(2)), statements the admissibility of which was explicitly not addressed in *Valencia*).

Second, the *Valencia* court was deciding whether statements it essentially characterized as plea discussions within the ambit of Rule 410 should be admitted in the same case where the defendant was still contesting his guilt.  By contrast, in the case at bar, the Government will be introducing statements made by Mr. Tacopina in a case where the defendant ultimately pleaded guilty and Rule 410's exclusions do not apply. Accordingly, the *Valencia* court's concern about Rule 410 and the policy implications for plea discussions underlying the Rule are not at issue here.

Third, the *Valencia* court stated that the district court had not abused its discretion in keeping out the statements because "the Government's claim to the statements [was] not strong.  The statements [were] not offered to show an element of the offense, a use that would directly prove the Government's case and expedite the trial." *Valencia* at 173.  Here, by contrast and as demonstrated above, the defendant's statements conveyed by Mr. Tacopina go directly to proving elements of the Government's case.  A substantial part of the honest services fraud charged in Counts One through Three of the Indictment involves the defendant's efforts to conceal from the City the

fact that he had received benefits (approximately $255,000 in apartment renovations) from John Doe #1, John Doe #2, and XYZ at a time when they were seeking approval to do municipal-regulated business. In fact, the defendant's concealment of this conduct by providing false statements to the Bronx grand jury and state and local investigators inquiring into this matter is specifically alleged as part of the criminal conduct herein. *See* Indictment ¶¶ 20(f),(g). What better proof of concealment and these particular allegations in the Indictment than the defendant's own attorneys' vicarious lies to the investigators here, including investigators from the NYCDOI, an agency of the very entity -- New York City -- that the defendant is charged with scheming to defraud, regarding the value of the renovations and who paid for them.[7] The statements regarding the loan from John Doe #6 -- i.e., that the defendant took a loan from John Doe #6 in order to make the downpayment on the Riverdale Apartment -- are, as we have previously stated, tantamount to a confession to Count Eight, the false loan application count. Accordingly, the Government's claim to this evidence is extremely strong.

Finally, there is no concern here, as the *Valencia* court suggested in that case, that an attorney's statements, since they are not transcribed, might lead to a dispute as to what precisely was said. Mr. Tacopina, the BCDAO and the NYCDOI are all unanimous as to what Tacopina said concerning the renovations to the Riverdale Apartment, namely, that the renovations were valued at approximately $50,000 and that Kerik paid for them himself. Nor has the defense presented any evidence whatsoever contradicting that Tacopina in fact said what the Government represents he said at the meetings in question. And, to the extent Mr. Breen would attempt to prove that Tacopina had not said such things -- something he has declined to do despite the fact that he submitted an affidavit as an adjunct to his memorandum of law and despite the fact that he was present at the March 8, 2006 meeting where Tacopina repeated these statements -- it would only make him an exculpatory witness further warranting his disqualification.

Accordingly, nothing in *Valencia*, precludes the admission of the statements in evidence or warrants their

---

[7]It is noteworthy that -- as the evidence will show at trial -- XYZ applications for permits from the New York City Department of Sanitation ("NYCDOS") to operate a fill material transfer station were still under consideration by the Business Integrity Commission and the NYCDOS whilst these false statements were being made to the NYCDOI by the defendant's attorneys.

exclusion (and the concomitant weakening of the Government's case) just so Mr. Breen can retain his position as the defendant's counsel. Given the importance of the statements to the Governments' case, *Valencia* argues for their admission and Breen's concomitant disqualification.

### III. The Court Should Decline To Accept Any Waiver By The Defendant And The Defense Suggestion That The Conflict Can Be Cured.

Given that the statements in question are not privileged, highly relevant, and plainly admissible, Mr. Breen next asserts that any conflict that may arise from the introduction of the statements in question may be remedied by simply not mentioning to the jury that Breen was the attorney who was present. Breen's proposed simplistic remedy does not come close to eliminating the conflicts under which he labors. The conflicts arise because Breen was an actual witness to the defendant's efforts to obstruct the state court investigation and was part of the defendant's concerted efforts to conceal ongoing criminal activity -- concealment activity that is charged as part of the Instant Indictment. ***Breen either agrees with the Government witnesses that the authorized false and concealing statements were made, or he disputes that they were made. Either way Breen is an actual witness to the crime.***

In his submission, Mr. Breen stubbornly refuses to say whether he agrees with, disputes or even has any recollection of the false statements. Such gamesmanship does little to clarify the pretrial waters through which the Court must navigate in an effort to determine how Breen's conflict will play out at trial. This lack of clarity gives heightened significance to the Supreme Court's observations in *Wheat*: "the likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict" especially in the murky pre-trial context where relationships between the parties are not clearly defined. *Wheat,* 486 U.S. at 162. Breen's failure to enlighten the Court or the Government on 1) his recollection of the meetings he attended; 2) whether and how he will cross examine witnesses to those meetings; and 3) what arguments he will make to the jury about events he witnessed precludes any possibility that this Court could obtain a knowing waiver and permit Breen's representation of the defendant to continue subject to prophylactic measures.

***Where, as here, counsel is entangled in the facts of the case such that he would, upon remaining as trial counsel, "become an unsworn witness for the accused," he should be***

***disqualified regardless of the defendant's willingness to waive.***
*See United States v. Jones*, 381 F.3d at 121 ("If [the defense
attorney] turns out to be an actual or unsworn witness in
defendant's trial, this would be actual grounds for
disqualification").   Further, it is not only the defendant who
may be harmed.  "[W]hen an attorney is an unsworn witness... the
detriment is to the government, since the defendant gains an
unfair advantage and to the court, since the fact finding process
is impaired.   Waiver by the defendant is ineffective in curing
the impropriety in such situations, since he is not the party
prejudiced."  *Locascio*, 6 F.3d 924, 934.

        A directive to the parties not to mention Mr. Breen's
participation in the false proffers would simply not address the
conflict.   It would not address, for instance:  (1) the question
of whether the defendant will be deprived of an important
exculpatory witness if in fact Breen disputes the testimony of
the Government's witnesses; (2) later claims by the defendant
that Breen's failure to testify on his behalf was motivated by
Breen's desire (a) to remain involved in a lucrative and high
profile case or (b) assuming Breen purports to lack a
recollection of the events surrounding the proffers, that such
lack of recollection was motivated by his desire to avoid
personal embarrassment or embarrassment to his firm given that he
had an ethical duty to learn the facts (including the
representations made to the prosecutors by Mr. Tacopina prior to
Breen's involvement in the case) before he rendered legal advice;
(3) a later claim by the defendant that Breen did not elicit
certain testimony from him -- should he have testified -- because
Breen did not agree with the defendant's version of the facts;
(4) the harm to the process if the jury were to learn by some
means, perhaps unpredictable at this point in the proceedings,
that Breen was present for and participated in some of the false
proffers; and, (5) the potential harm to the Government of
permitting Breen to subtly suggest through cross examination or
argument that he had personal knowledge of the disputed events.

        As the Second Circuit held in *Locascio*, an attorney may
be constrained from making certain arguments on behalf of his
client because of his own involvement, or may be tempted to
minimize his own conduct at the expense of his client.   Moreover,
his role as advocate may give his client an unfair advantage,
because the attorney can subtly impart to the jury his first-hand
knowledge of the events without having to swear an oath or be
subject to cross examination.   *Id.* at 933.   In short, it would
be impossible to police Mr. Breen's cross examination of Mr.
Tacopina and the state prosecutors whose investigation was

obstructed, and the arguments he may make to the jury concerning the same.

Not only does Mr. Breen's proposal to keep the jury in the dark about his involvement in the events charged in the Indictment lack substance, but it is impractical in the context of this case. This case has and will continue to receive significant media attention. Breen's involvement in the Bronx investigation has already been the subject of widespread press attention. The Court can of course determine generally during jury selection whether any prospective jurors have read media accounts about this case that would impair their impartiality. Probing prospective jurors about their knowledge of the lawyers' involvement in the case raises a host of additional issues calculated not to cure the problem but to compound it.

Not surprisingly, the defense cites little authority for the position that Mr. Breen's conflict can be waived and remedied by a simple direction from the Court that the parties make no mention of Breen's involvement in the false proffers at trial. *See* Breen Mem. at 20. The lone case relied on by the defense, *United States v. Jones*, 900 F.2d 512 (2d Cir. 1990), provides precious little to support this claim. In relying on *Jones*, the defense does not discuss the facts of that case but simply notes in a parenthetical that "no disqualification [was warranted] based on [a] proffer letter that claimed defendant was innocent; references to attorney's role in preparing the letter never mentioned to the jury." The defendant's parenthetical reflects a serious misreading of both the facts and the holding of *Jones*.

*Jones* did not involve a prospective *Wheat*-type inquiry made by the court shortly after the indictment was returned. In *Jones*, the conflict arose in the middle of a trial when the prosecution sought to cross-examine the defendant with a pre-indictment letter written by defense counsel to the government proffering what the defendant would say. During the defendant's cross-examination, the prosecutor apparently threatened the defense attorney with an ethical complaint for suborning perjury. On cross examination, the defendant admitted the accuracy of the contents of the letter and the Court concluded that her trial testimony did not conflict with her proffer letter. On redirect, the defendant introduced the proffer letter with the defense attorney's name redacted to bolster her claim that the proffer letter was consistent with her testimony. On appeal, the Second Circuit rejected her claim that her attorney labored under an actual conflict of interest given that her trial testimony was consistent with the attorney's proffer.

This case is a far cry from *Jones*. Here, the Court is addressing the question of whether Mr. Breen should be disqualified as a result of having been a witness to patently false exculpatory statements made to the BCDAO and the NYCDOI which are charged in Counts One through Three of the Indictment as part of the honest services fraud. The question is whether Breen is or ought to be called as a witness or will become an unsworn witness, as a result of his representation of the defendant in the Bronx case. Here, Breen was an *actual* witness to the false statements that the defendant caused his lawyers to convey to the BCDAO and the NYCDOI and which he will no doubt contest at trial. Breen's conflict cannot be cured by simply failing to mention his name to the jury. Indeed, his conflict cannot be waived at all.

The circumstances presented in this case -- where Mr. Breen participated in meetings during which the defendant conveyed false information to him with the direction to communicate such information to prosecutors/investigators in order to conceal an ongoing crime -- give rise to the possibility at least that Breen may be viewed as having participated in the preparation of, or been aware of, the false proffer or other efforts to obstruct the investigation. In a worst-case scenario, this would be a *per se* ground for disqualification. *See Fulton*, 5 F.3d at 613 ("[W]e must assume that counsel's fear of, and desire to avoid, criminal charges, or even reputational damages from an unfounded but ostensibly plausible accusation, will affect virtually every aspect of his or her representation of the defendant"). The Government reiterates that we have no information at this juncture to suggest that Breen knew that the information was false. We note, however, that any lawyer in his position would and should be concerned that the facts as presented by the Government are potentially damaging to his reputation. This concern in a very real sense could guide Breen's judgement in the vigor with which he pursues cross examination and arguments to the jury. In these circumstances, the risk of reversal is simply too great to permit the defendant to be saddled with a conflicted counsel. *Wheat*, 486 U.S. at 163 (disqualification is appropriate, notwithstanding waivers of conflict, "where a potential for conflict exists which may or may not burgeon into an actual conflict . . .").

Finally, the defendant cannot fairly claim that he would be substantially prejudiced by the disqualification of Mr. Breen. The defense was advised of the conflict nearly eight months prior to the Indictment, and the Government brought the conflict to the Court's attention immediately after the Indictment was returned. Mr. Breen had minimal involvement in

the negotiation of the state court plea -- or so he now claims. A newly retained attorney will have ample time to familiarize himself with this case and prepare for trial. Thus, this is not a case where the disqualification will work an undue hardship on the defendant.

## IV.    Other Factors Warrant Breen's Disqualification.

### A.    *Lauersen* requires Breen's disqualification.

Mr. Breen argues that the District Court's holding in *United States v. Lauersen*, 2000 WL 1693538 (S.D.N.Y.) that a defense attorney may not take a position at trial or offer evidence contrary to his client's proffer statement does not require his disqualification here because "Mr. Kerik does not intend to repudiate his guilty plea in the Bronx," Breen Mem. at 32, notwithstanding the defendant's public statements that he pleaded guilty in the Bronx because "[he] just f-ing wanted [the case] to be over. I didn't take the pleas because I really thought I had done anything wrong. It was just, pay the f-kin' fine, give 'em their pound of flesh, whatever the f-k they want."

Mr. Breen, however, has already indicated that the defendant intends to pursue a defense strategy that is wholly at odds with his Bronx plea allocution. Thus, foreshadowing what is to come at trial -- were he the defendant's attorney -- Breen says:

> As the recipient of discounted renovations, Mr. Kerik would not necessarily know whether (as the government alleges) a third-party was paying the contractor for the amount of the discount, and he certainly would no know the precise amount of the value of the renovations.

Breen Mem. at 15. Putting aside for a moment the "Tooth Fairy" quality to this purported defense -- i.e., that the defendant, a former New York City Police Commissioner, paid approximately $50,000 towards the renovations of his Riverdale Apartment, was clueless to the fact the actual amount of the renovations was approximately $300,000, and that some unknown benefactor had paid the balance without his knowledge -- *it directly contradicts his allocution in the Bronx* where he acknowledged in open court during his guilty plea that "between August 1998 and December 2000 [the defendant] did accept a valuable gift in the form of renovations to his Bronx apartment... [i]n an amount valued for the purposes of this plea $165,000 from [XYZ] owned by [John Doe #1 ane John Doe #2]." *See* Government's *Curcio* motion; Exhibit 1

at 7-10.  If Breen is already suggesting at this stage a defense
that is totally at odds with the defendant's Bronx plea, one can
only imagine how far removed from that plea the defendant's
actual defense will be come trial.  As we have previously stated:

> ... while it is clear that no attorney
> representing the defendant in this case
> should be permitted to present evidence or
> arguments at trial which are at odds with the
> defendant's allocution in the Bronx, [citing
> *Lauersen*], it would be particularly unseemly
> for one of the attorneys who represented the
> defendant in the Bronx -- *e.g.*, Breen -- to
> even attempt to do so.  "The institutional
> interest in the rendition of just verdicts in
> criminal cases," *see Wheat*, 486 U.S. at 160,
> and that criminal "proceedings appear fair to
> all who observed them" *id.,* would be
> jeopardized should Breen remain as the
> defendant's counsel while at once taking
> positions inconsistent with the defendant's
> Bronx guilty pleas.

Government's *Curcio* motion at 11.  Nothing in the Breen
Memorandum changes that.  If anything, Breen's suggestion that he
will raise a defense completely at odds with the defendant's
Bronx guilty plea provides further support for his
disqualification.

**B.    The Fulbright & Jaworski/Kerik fee dispute warrants Breen's
disqualification.**

Mr. Breen attempts to brush aside the $200,000 fee
dispute between his former firm, Fulbright & Jaworski, and the
defendant as a basis for his disqualification.  As shown below,
nothing in Breen's argument obviates the need for his
disqualification.

Initially, Mr. Breen says, "It is our understanding
that an agreement in principle has been reached between Fulbright
and Kerik."  Breen Mem. at 33.  That agreement, however, may or
may never come to pass, and this Court must make decisions now
"when relationships with parties are seen through a glass
darkly," *Wheat* at 162.  Moreover, assuming without conceding that
that law suit were to settle prior to trial, the settlement would
only dispense with one aspect of Breen's conflict arising from
the suit, namely, his having financial interests that are
potentially adverse to those of his client.  But a settlement

would not address the second concern posed by the lawsuit, namely, Breen's role as an unsworn witness regarding the facts underlying it. That concern would be implicated should putative character witnesses or the defendant be questioned about the those facts.

Mr. Breen, apparently blind to the multiple conflicts under which he labors, states that, "even if the Court were to permit the government to confront character witnesses for Mr. Kerik with the fact of the lawsuit, it is not apparent [to him, at least] why Mr. Breen would thereby be rendered an unsworn witness. Moreover, any potential conflict that could arise as a result could be waived." Breen Mem. at 33. Breen conveniently overlooks the fact that the Government could cross-examine both putative character witnesses and the defendant himself not only about the fact of the lawsuit, but about facts underlying the lawsuit. We would be able to question the defendant about the rather absurd statement that he made through the attorney representing him in the civil suit that the dispute was "the result of an obvious miscommunication" and that Fulbright & Jaworksi (and presumably Breen) billed the defendant for work that the defendant had not, and never would have, authorized. Those facts directly implicate Breen. They make him an unsworn witness. And to the extent Breen's position on factual issues in the suit -- for instance, whether the defendant authorized Breen to do the legal work in question -- differ from what the defendant says is the case -- he would be an unsworn witness against his client, presenting an unwaivable conflict.

That such a situation would arise is not fanciful. The defendant has already suggested that he will attempt to show at trial that he was the recipient of $255,000 in apartment renovations from anonymous benefactors without his knowledge. In the fee lawsuit, he is claiming to be the beneficiary of approximately $200,000 in legal fees which he never authorized. To hear the defendant tell it, individuals and entities are constantly expending large sums of money on his behalf without his knowledge. The Government has a right to prove that just the opposite is so, and that, once again, directly implicates Breen as a witness and embroils him in a conflict that cannot be waived.

### Conclusion

Wherefore, for all of the reasons stated in the Government's *Curcio* motion, in this reply, and in the Jacobson Affirmation, the Government respectfully requests that the Court make findings of fact as set forth in greater detail in the proposed Order attached hereto as Exhibit 2 and that it disqualify Mr. Breen from representing the defendant in this matter as further set forth in the proposed Order.

Respectfully yours,

MICHAEL J. GARCIA
United States Attorney

By: _____

Asst. U.S. Attorney Perry A. Carbone
Asst. U.S. Attorney Elliott B. Jacobson

cc: Kenneth Breen, Esq.  (by fax and mail)

25

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------x
UNITED STATES OF AMERICA          :
                                  :
                                  :
            -v-                   :
                                  :        AFFIRMATION
                                  :
BERNARD B. KERIK,                 :        07 Cr. 1027 (SCR)
                                  :
            Defendant.            :
                                  :
----------------------------------x

ELLIOTT B. JACOBSON affirms under penalty of perjury as follows:

1.   I am an Assistant United States Attorney ("AUSA") in the office of Michael Garcia, the United States Attorney for the Southern District of New York ("this Office").

2.   AUSA Perry A. Carbone and I are in immediate charge of this investigation/prosecution and have been since its inception.

3.   I make this Affirmation in connection with the Government's *Curcio* motion seeking disqualification of Kenneth Breen, Esq. as counsel for the defendant in this matter.

4.   I make this Affirmation on information and belief, the sources of which are:  information and documents contained in the case file, conversations with AUSA Carbone, conversations with Joseph Tacopina, Esq., conversations with Michael Ross, Esq. (Mr. Tacopina's attorney), conversations with past and present Assistant District Attorneys in the Bronx County District

Attorney's Office ("BCDAO") and Deputy Commissioner of the New York City Department of Investigations ("NYCDOI") Walter Arsenault.

5.    Because I am submitting this Affirmation for a limited purpose, I have not included herein everything I know about this investigation.  Any conversations adverted to herein are related in substance and in part.

6.    Shortly after the defendant's nomination was withdrawn in early December of 2004, Joseph Tacopina, Esq., then the defendant's attorney, met with representatives of the BCDAO to discuss some of the allegations it was investigating.  In substance, and in pertinent part, Mr. Tacopina told the BCDAO that the defendant had paid for all of the renovations to the Riverdale Apartment himself and that the total amount of the renovations he had paid for was approximately $50,000.  Tacopina also told the BCDAO that the defendant had taken a loan from John Doe #6, a Manhattan realtor, in the amount of $32,000 in order to make a downpayment on the purchase of the Riverdale Apartment and that the loan was repaid in the year 2003.

7.    The Government learned of the statements that Mr. Tacopina had made to the BCDAO and which are adverted to above based on discussions with the Assistant District Attorneys to whom they were made, as well as a review of grand jury testimony and other documentary evidence from the BCDAO.

8.   After the defendant pleaded guilty in the Bronx case and during the pendency of this Office's investigation, we questioned Mr. Tacopina concerning the statements made above. The questioning took place in the presence of Tacopina's attorney -- Michael Ross, Esq. -- who is one of New York State's leading legal ethicists and experts on the law of privileges including the attorney-client and work-product privileges.  Tacopina confirmed that he had made the above statements to the BCDAO. Tacopina also stated that the information he had conveyed to the BCDAO had been provided to him by the defendant for the express purpose of conveying it the Bronx prosecutors conducting the investigation.

9.   NYCDOI Deputy Commissioner Walter Arsenault informed us that on or about February 7, 2005, he met with Mr. Tacopina at the offices of the NYCDOI.  Deputy Commissioner Arsenault further informed us that during that meeting Tacopina advised him that the total cost to the defendant in renovating the Riverdale Apartment was between $30,000 and $50,000, that the defendant paid for the renovations, and that no one else paid for any part of the renovation costs.  Mr. Tacopina confirmed that he made the above statements to Arsenault and that the information he conveyed to Arsenault had been provided to him by the defendant for the express purpose of conveying it to personnel at the NYCDOI conducting its investigation.

10.   Mr. Tacopina informed us that in or about the summer of 2005, Mr. Breen joined him in representing the defendant in connection with what had by then become a joint BCDAO/NYCDOI investigation.   Tacopina further informed us that over the course of the next year, the defendant repeated to Tacopina and Breen the substance of what he had earlier told Tacopina (*see* ¶ 6 *supra*) for the express purpose of conveying such information to the Bronx/City prosecutors/investigators conducting the investigation, and Tacopina and Breen met with the Bronx/City prosecutors/investigators on a number of occasions to discuss the case.

11.   Deputy Commissioner Arsenault informed us that on or about March 8, 2006 he attended a meeting at the BCDAO. Arsenault further informed us that the meeting was also attended by members of the BCDAO, Mr. Tacopina, and Mr. Breen.   Arsenault also further informed us that during the meeting Tacopina repeated the substance of his February 7 proffer.

12.   Mr. Tacopina has confirmed the information provided by Deputy Commissioner Arsenault in ¶ 11 above.

Dated:   White Plains, New York
         December 12, 2007

Elliott B. Jacobson

# EXHIBIT 2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
UNITED STATES OF AMERICA            :
                                    :
                                    :
              -v-                   :        ORDER
                                    :
                                    :
BERNARD B. KERIK,                   :
                                    :
              Defendant.            :
                                    :
--------------------------------x

Upon consideration of the application of Michael J. Garcia, United States Attorney for the Southern District of New York, by Assistant United States Attorneys Perry A. Carbone and Elliott B. Jacobson, requesting that the Court determine whether a conflict of interest is presented by Kenneth Breen's representation of the defendant, Bernard B. Kerik, and, if so, what action should be taken; and the defendant, through Kenneth Breen, Esq., having opposed such application; and the Court having considered the written submissions and oral arguments of the parties; hereby makes the following findings of fact and conclusions of law:

1.  The Government has proffered that it intends to present evidence that the defendant -- acting through his attorney Joseph Tacopina -- presented false statements and admissions to representatives from the Bronx County District Attorney's Office ("BCDAO") and the New York City Department of Investigation ("NYCDOI") during the course of investigations conducted by those agencies (hereafter referred to as "The Alleged Statements");

2.  The Government has further proffered that Joseph Tacopina was authorized to make The Alleged Statements by the defendant;

3.  The Alleged Statements are highly relevant to the pending charges and are preliminarily admissible as non-privileged and authorized admissions or, in the alternative, as admissions as to which any and all arguable privileges were waived;

4.  Given that probable cause exists that the defendant committed a crime and that the specific statements were made to further the crime, the Court finds in the alternative that any privileges attaching to the statements -- assuming *arguendo* there were any -- were vitiated by the crime-fraud exception;

5.  Since Mr. Breen does not dispute that he was a witness to The Alleged False Statements, there is at the very least the possibility that he will be called as an actual witness and will, in any event, become an unsworn witness;

6.  Mr. Breen's conflict rises perhaps to the level of a *per se* conflict or at least an actual or potentially serious conflict that no rational defendant would knowingly waive;

7.  The Government's need for the evidence outweighs the defendant's right to have counsel of his choice;

8.  The Defendant's proposed remedy to the unsworn witness issue is inadequate particularly given the multiple conflicts presented by Mr. Breen's representation of the defendant;

9.  Nothing in the redacted portion of the Government's *ex parte* sealed letter of December 6, 2007 was relied on by the Court in denying the defendant's December 5, 2007 motion for discovery in connection with the Government's motion or in deciding the motion itself.

10.  Kenneth Breen, Esq., is disqualified from representing the defendant in this matter.

Dated:   White Plains, New York
         December          2007


_____
HONORABLE STEPHEN C. ROBINSON
UNITED STATES DISTRICT JUDGE

3