UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 07 Cr. 1027 |
| Plaintiff, | : | |
| | : | MEMORANDUM |
| v. | : | DECISION AND ORDER |
| BERNARD KERIK, | : | |
| Defendant. | : | |

STEPHEN C. ROBINSON, District Judge:

The Constitution of the United States ensures that criminal defendants have access to effective counsel. When that counsel is not or can not be effective, however, the court must balance the defendant's interest against the court's interest in preserving the integrity and ethical standards of the legal proceedings before it. In the instant case, it is impossible for this Court to see how Mr. Breen's representation of the Defendant does not jeopardize both the Defendant's right to effective assistance of counsel and the court's need to preserve the integrity of the process. Therefore, this Court finds that there is an actual conflict of interest in Mr. Breen's representation of Mr. Kerik.

**I.  Background**

The Defendant, Mr. Kerik, was charged in a 16 count indictment on charges which include accepting payments from a company that sought to do business with the City of New York, providing false information on a loan application, tax fraud, and making false statements to the federal government.

According to the Government, after the Defendant's nomination for Secretary of the Department of Homeland Security was withdrawn in December 2004, the Defendant's then-attorney, Joseph Tacopina met with the Bronx County District Attorney's Office ("BCDAO") to discuss its allegations against the Defendant. Mr. Tacopina told the BCDAO that Mr. Kerik paid for all of the renovations to his Riverdale apartment himself, and that Mr. Kerik had taken a loan from a Manhattan realtor in order to make a downpayment on the same apartment and had repaid the loan in 2003. The Government claims to have learned of these statements via the Assistant District Attorneys to whom the statements were made, documentary evidence and grand jury testimony.

After the Defendant, Mr. Kerik, pled guilty in the Bronx case, the U.S. Attorney's Office for the Southern District of New York, during its investigation of Mr. Kerik, questioned Mr. Tacopina about the above statements. Mr. Tacopina confirmed that he made those statements to the BCDAO and that the information he conveyed was provided by the Defendant for the "express purpose" of conveying it to the Bronx District Attorney's Office. Affirmation, Elliott Jacobson, ¶ 8 (Dec. 12, 2007).[1]

Also during the course of its investigation, the U.S. Attorney's Office met with the New York City Department of Investigation ("NYCDOI"). NYCDOI informed the Government that during a meeting with Mr. Tacopina, the NYCDOI Deputy Commissioner was advised by Mr. Tacopina that the total cost of the apartment renovations was between $30,000 and $50,000, and that the Defendant and no one else

---

[1] It should be noted that the Defendant, in opposing this motion, has not submitted an affidavit challenging any of the statements contained in AUSA Jacobson's Affirmation. Additionally, when given the chance at oral argument to oppose the allegations contained in the Jacobson Affirmation or the Government's moving papers, the Defendant declined to do so.

2

paid for the renovation costs. Mr. Tacopina confirmed making these statements and again stated that he conveyed information provided to him by the Defendant for the express purpose of conveying it to personnel at NYCDOI.

In the summer of 2005, Mr. Breen joined Mr. Tacopina in his representation of Mr. Kerik in connection with the BCDAO/NYCDOI investigation. According to the Government, Mr. Tacopina informed federal investigators that throughout the course of the next year the Defendant repeated to Messrs. Tacopina and Breen the substance of the above statements for the purpose of conveying this information to prosecutors and investigators.

The Government argues that the statements made to the BCDAO and NYCDOI are the basis for some of the charges pending against Mr. Kerik, and that Mr. Breen, who currently serves as Mr. Kerik's counsel, will either be called as a Government witness or will necessarily be an unsworn witness before the jury in the Defendant's trial. The Government notes that the Defendant was notified of the conflict nearly more than seven months prior to the indictment, and that the Government brought the conflict to the Court's attention, as it is required to do, immediately after the indictment was returned. The Government argues that Mr. Breen's representation of Mr. Kerik presents an unwaivable conflict of interest.

The Defendant argues that the alleged conflict is hypothetical and waivable. He argues that the statements in question are (1) privileged; (2) protected under Federal Rule of Evidence 410 (statements made in the course of plea negotiations); and (3) even if not covered under Rule 410, the statements should be excluded because admitting them would deprive the Defendant of his 6th Amendment right to counsel. The Defendant

3

further argues that, in any event, any conflict can be cured by remedial measures such as limiting the Government's case and testimony so that Mr. Breen would not be an unsworn witness.

## II. The Sixth Amendment Right to Counsel

The 6th Amendment right to counsel seeks to ensure that criminal defendants have effective counsel, *United States v. Wheat*, 486 U.S. 153, 159 (1988), and encompassed in that right is the right to conflict-free representation. *See United States v. Levy*, 25 F.3d 146, 152 (2d Cir. 1994). The 6th Amendment, however, is not designed to ensure that a defendant will inexorably be represented by the lawyer whom he prefers. *Wheat*, 486 U.S. at 159. A defendant's right to the lawyer of his choice is not absolute, and the court is not required to accept a defendant's waiver of his lawyer's conflict of interest. *See United States v. Arrington*, 867 F.2d 122, 128 (2d Cir. 1989).

However, a defendant's choice of counsel should not be unnecessarily obstructed, *United States v. Cunningham*, 672 F.2d 1064, 1070 (2d Cir. 1982) (internal quotations and citations omitted). In determining whether the right of the accused to counsel of his choosing should be honored in a particular case, the court must balance the defendant's constitutional right against the court's need to preserve the highest ethical standards of professional responsibility. *Id.* at 1070.

Where there is a possibility that the defendant's attorney may have a conflict of interest, "[t]he court must investigate the facts and details of the attorney's interest to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." *United States v. Levy*, 25 F.3d 146, 153 (2d Cir. 1994). An

4

actual conflict is one that is so "severe" that "no rational defendant would knowingly and intelligently desire the conflicted lawyer's representation." *Id.* In such a case, the court is "obliged" to disqualify counsel. *Id.* "If the court discovers that the attorney suffers from a lesser or only a potential conflict – such that a rational defendant could knowingly and intelligently desire the conflicted lawyer's representation – the court should follow the procedures set out in *Curcio*." *Id.* If there is no conflict at all, the court has no further obligation. *Id.* There is a "presumption in favor of the accused's chosen counsel [but that] presumption can be overcome by a showing of an actual conflict or potentially serious conflict." *United States v. Locascio*, 6 F.3d 924, 931 (2d Cir. 1993).

In the current case, the parties assert several theories to support their respective positions. This Court addresses the most critical of these arguments first, and then directs its attention to any ancillary assertions.

### III. Unsworn Witness

The Government argues that Mr. Breen, who represented the Defendant when he pleaded guilty before the BCDAO and who was authorized to repeat the Defendant's falsely exculpatory statements to investigators, can not now stand before the court and/or a jury and present defenses at odds with the plea and/or act as an advocate in defending against actions he witnessed that constitute some of the pending charges.

The Defendant claims that Mr. Breen's representation during the Bronx investigation was limited, and that Mr. Tacopina, not Mr. Breen, lead the dialogue that the Defendant asserts constituted plea discussions.[2] Unfortunately for the Defendant, this type of potential disagreement or nuance to the discussions at issue is exactly the kind of

---

[2] For a fuller discussion of this claim, see Sec. IV.B., *infra*.

5

argument that could necessitate Mr. Breen's testimony at trial. The Defendant notes that he has no intention of attempting to repudiate his guilty plea, but simply reserves the right to challenge the Government's interpretation of his allocution, its relevance to the charges and the weight it should be afforded. This argument misses the point. It is not the truth of Mr. Kerik's plea allocution that is questioned here. The issue is whether in discussions prior to his plea Mr. Kerik authorized his attorneys, including Mr. Breen, to relay statements to the BCDAO and the NYCDOI that were misleading and obstructive.

The New York Code of Professional Responsibility generally forbids lawyers from acting as advocates and witnesses in the same matter. This general prohibition applies where the lawyer knows or it is obvious that he ought to be called as a witness on a significant issue on behalf of a client, *see New York Code of Prof'l Responsibility DR 5-102 (A)*, or where the lawyer may be called as a witness on a significant issue other than on behalf of his client, *see DR 5-102(B)*. In the latter scenario "the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer . . . must withdraw from acting as an advocate before the tribunal." *DR 5-102(D)*.

The Defendant contends that the rule precluding an attorney from serving as a witness in a client's case applies only if the lawyer "ought" to be called; in other words, if it is likely that the lawyer's testimony is necessary. *See Paretti v. Cavalier Label Co. Inc.*, 722 F.Supp. 985, 986 (S.D.N.Y. 1989). In determining the necessity of testimony, a court takes into account the significance of the matters, the weight of the testimony, and the availability of other evidence. *Id.* The Defendant argues that Mr. Breen's testimony here would be cumulative because he was present only for meetings similar and

6

subsequent to those meetings where Mr. Tacopina relayed the Defendant's statements to the BCDAO. According to the defense, the Government could prove the false exculpatory statements based on discussions to which Mr. Breen was not a witness, and the fact that Mr. Tacopina continued to make exculpatory statements outside the context of the investigation even after Mr. Breen became involved is cumulative and prejudicial under Rule 403 of the Federal Rules of Evidence. The Defendant also argues that the alleged attorney statements are collateral to the relevant charges.

In this case, Mr. Breen's potential testimony is direct evidence of the charges contained in the indictment. It is therefore highly relevant, and even assuming *arguendo* that it is in some respects cumulative, it does not follow that the Government should be deprived of this evidence, especially where it is likely that the Defendant will disagree with and heavily cross-examine Mr. Tacopina regarding the alleged authorization by the Defendant as well as the substance any discussions. The Defendant may also choose to attack Mr. Tacopina's credibility. Therefore, having Mr. Tacopina's account of the meetings with the Defendant and separately the BCDAO and the NYCDOI corroborated by Mr. Breen could be important and necessary testimony for the Government. Here the Government alleges that the Defendant obstructed the state investigation through his lawyers' unwittingly-made obstructive statements. The direct evidence of those charges is the attorney's statements to investigators. The fact that Mr. Breen allegedly participated in some of the meetings and allegedly did not stop the statements from being made, contradict or correct them is both relevant and probative.

Even if Mr. Breen were not to become an actual witness, he would be an unsworn witness who could subtlety impart to the jury his first-hand knowledge of events without

having to swear an oath or be subject to cross-examination. *See United States v. Locascio*, 6 F.3d 924, 933-34 (2d Cir. 1993).

For defense counsel, becoming an unsworn witness, standing alone, is sufficient for disqualification, *Ciak v. United States*, 59 F.3d 296, 304-05 (2d Cir. 1995), and waiver is "ineffective in curing the impropriety in such [a] situation" because the defendant is not the party prejudiced by such a conflict. *Locascio*, 6 F.3d at 933-34.

In *Locascio* the defendants' lawyer was privy to events surrounding an obstruction charge and participated in conversations taped by the government, pertaining to the defendant's illegal activities. The District Court of the Eastern District of New York disqualified the attorney because his "mere presence could make him an unsworn witness." *Id.* at 932. The Circuit Court affirmed the District's Court ruling, reiterating that "[e]ven if [the defendant] waived the conflict, and even if the government did not intend to call [the attorney] as a witness . . . . [the attorney's] representation would still compromise the integrity of the proceeding." *Id.*

This case is similar to *Locascio* in that Mr. Breen was privy to conversations related to the changes pending against the Defendant. In this case, whether Mr. Breen is actually called as a witness is irrelevant considering the dangers of his becoming an unsworn witness.

> An attorney acts as an unsworn witness when his relationship with his client results in his having first-hand knowledge of the events presented at trial . . .Even if the attorney is not called [ ] he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, an attorney may be constrained from making certain

8

>arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.
>
>*Locascio*, 6 F.3d at 933.

For example, in this case, should Mr. Tacopina take the stand, Mr. Breen's questions during cross-examination may be afforded undue credibility because he has first-hand knowledge of the statements and events about which Mr. Tacopina would likely be questioned. Moreover, should Mr. Breen disagree with any of Mr. Tacopina's characterizations of the events surrounding the statements, he will either be forced to sit quietly in detriment to his client or (without taking an oath or being cross-examined) to ask questions to which the jury may assign undue weight. In either case, the risk of prejudice to the Defendant or the Government is too great, and places in jeopardy the integrity of the proceeding. Mr. Breen, therefore, must be disqualified as Defendant's counsel.

**IV.  Other Issues**

Although the witness-advocate doctrine is sufficient to disqualify Mr. Breen as Defendant's counsel, it is nonetheless important to address the parties' additional claims.

**A.  Privilege**

The Defendant argues that the statements made to Mr. Tacopina are privileged, and that the Government was aware that the Defendant intended to invoke attorney-client and work-product protections.

Where attorney-client communications are disclosed for reasons other than obtaining legal advice to a third party at the direction of the client there is no expectation of privacy or confidentiality, and thus, the client cannot assert the privilege. *See Stirum v. Whalen*, 811 F.Supp. 78, 81 (N.D.N.Y., 1993) ("[W]aiver may be effected through voluntary disclosure by the client, through the client's express consent to disclose, or through implication gleaned from the client's actions."). *See also e.g., In re Von Bulow*, 828 F.2d 94, 101 (2d Cir. 1987) (finding waiver of privilege where a client acquiesced and encouraged the publication of confidential communication); *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) ("[S]ubsequent disclosure to a third party by the party of a communication with his attorney eliminates whatever privilege the communication may have originally possessed, whether because disclosure is viewed as an indication that confidentiality is no longer intended or as a waiver of the privilege.").

The Defendant's statements to his attorneys during the course of the BCDAO/NYDOI investigation are not privileged because (1) they were intended to be communicated and were communicated to the BCDAO and NYCDOI, and (2) because, to the extent they related to the apartment renovations, they were allegedly part of an ongoing obstruction of the BCDAO's investigation. According to the Government, Mr. Tacopina stated that he was authorized by the Defendant to make the statements to the investigating authorities, and the Defendant has not disputed that fact. Moreover, the circumstances in which the statements were made are highly suggestive of the fact that the Defendant authorized his counsel to make these statements on his behalf. Finally, as the Government apparently plans to show at trial, the Defendant allegedly made almost identical statements to White House officials vetting him for the Secretary of Homeland

10

Security position.  The Defendant has not disputed that the statements in question here were intended to be conveyed to a third party, and therefore, the statements cannot be considered confidential and privileged.

Even if the statements were privileged, which this Court finds they were not, and the privilege had not been waived, the statements would still be admissible under the crime-fraud exception, even where, as here, the attorney was not a knowing participant in the crime or fraud in question. *In re Grand Jury Subpoena Duces Tecum Dated September 15, 1983*, 731 F.2d 1032, 1038 (2d Cir. 1984).

Communications made to an attorney are excluded from the privilege where the party invoking the crime-fraud exception demonstrates that there is probable cause to believe that the particular communication or work-product was intended to facilitate or conceal ongoing or contemplated criminal or fraudulent activity. *In re Richard Roe, Inc.*, 68 F.3d 38, 40 (2d Cir. 1995).  Such as exception exists because "[a]lthough there is a societal interest in enabling clients to get sound legal advice, there is no such interest when the communications or advice are intended to further the commission of a crime or fraud." *Id.*

The Government in this case has demonstrated, largely by virtue of the indictment, that probable cause exists to show that the statements at issue were made to the Defendant's attorneys for the purpose of furthering and/or concealing criminal or fraudulent activity. *See United States v. Cannone*, 528 F.2d 296, 302 n.6 (2d Cir. 1975) ("While by no means conclusive, the issuance of an indictment is certainly probative of the likely validity of its charges. . . .").  The Defendant told his attorneys that the renovations to the Riverdale apartment were valued at $50,000 and that he alone paid for

11

the renovations. The indictment alleges that the renovations were valued at $255,000 and were paid for by John Doe #1, John Doe #2 and XYZ. *See* Indictment, ¶ 12 (Nov. 8, 2007). Additionally, the Defendant pleaded guilty to accepting $165,000 worth of renovations from XYZ. Transcript of Plea Allocation, pgs. 7-10 (June 30, 2006). Given the indictment, the Defendant's plea and the circumstances in which the statements were made, there is probable cause to believe that the Defendant's statements to his attorneys were made in furtherance of and/or for the purpose of concealing criminal or fraudulent activity. Therefore, these statements are admissible pursuant to the crime-fraud exception to the attorney-client privilege.

### B.  Plea Negotiations

The Defendant argues that the alleged attorney statements are not admissible because they were made in connection with plea discussions and negotiations. Fed. R. Evid. 410; *United States v. Serva*, 799 F.2d 842, 849 (2d Cir. 1986) (preliminary discussion must be considered as part of the overall plea bargaining process). The defense also notes that Rule 410 applies in federal proceedings to statements made in connection with prior state pleas. *See e.g. United States. v. Chapman*, 954 F.2d 1352, 1360 (7th Cir. 1992).

The purpose of Rule 410 is to "promote negotiations by permitting defendants to talk to prosecutors without sacrificing their ability to defend themselves if no disposition is reached," *United States  v. Barrow*, 400 F.3d 109, 116 (2d Cir. 2005), and only excludes statements made in plea discussions that do not result in a plea of guilty. As such, the rule does not apply here because Mr. Kerik eventually pleaded guilty. Third,

"[b]ecause Rule 410 is an exception to the general principle that all relevant evidence is admissible at trial its limitations are not to be read broadly. . . ." *Barrow*, 400 F.3d at 116. The Rule should not be read to encourage or reward false proffers.

In this case, the text of Rule 410 clearly shows that the defense's argument is without merit. First, even assuming *arguendo* that these statements constituted preliminary plea discussions, the Rule is not applicable because the Government is not seeking to admit evidence of a guilty plea later withdrawn, a plea of nolo contendere, or any statement regarding these types of pleas.[3] Rule 410 is meant to protect a defendant who participates in an unsuccessful plea discussion from later having his admissions used against him. In this case, the Defendant pleaded guilty, and therefore, Rule 410 does not apply. *See e.g., United States v. Persico*, 621 F.Supp. 842, 872 ("The Court of Appeals for the Second Circuit has ruled that a prior plea of guilty to one crime was admissible against the defendant who pleaded to prove an element of a newly charged crime.") (citing *United States v. Andreadis*, 366 F.2d 423, 433 (2d Cir.1966), *cert. denied*, 385

---

[3] Rule 410 of the Federal Rules of Evidence reads:

> Except as otherwise provided in this rule, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
> (1) a plea of guilty which was later withdrawn;
> (2) a plea of nolo contendere;
> (3) any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or
> (4) any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
> However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record and in the presence of counsel.

Rule 11(f) of the Federal Rules of Criminal Procedure states "[t]he admissibility or inadmissibility of a plea, a plea discussion, and any related statement is governed by Federal Rule of Evidence 410."

U.S. 1001 (1967); *Myers v. United States*, 49 F.2d 230, 231 (4th Cir.), *cert. denied*, 283 U.S. 866 (1931)).  Moreover, this Court is unconvinced that these discussions constitute plea discussions in the first instance.  The facts as alleged by the Government demonstrate that the Defendant's statements were not made to honestly facilitate plea discussions, but rather, were made in order to mislead the BCDAO and NYCDOI regarding the Defendant's guilt and to obstruct the investigations of his actions. The discussions between Mr. Tacopina and the BCDAO can more accurately be described as attempts by the Defendant to convince the authorities that he was innocent.  If this Court were to adopt the Defendant's interpretation of Rule 410, a defendant through his lawyer could lie and mislead a government investigator or prosecutorial office with impunity as long as the meeting where the statements were made could be styled as a plea discussion.  This Court rejects that proposition.  The statements at issue here have little to do with the ultimate disposition in the state proceedings.  They were made denying the Defendant's guilt, and therefore cannot be said to fall under the protections of Rule 410.

**V.  Defendant's Attempts to Cure the Conflict: Waiver and Other Remedial Measures**

       The Defendant argues that his attorney's conflict can be waived or otherwise remedied.

       In assessing whether to accept a waiver, the court should consider, among other things, "whether disqualifying the defendant's chosen counsel would create real prejudice to the defendant based on the length of the representation and/or counsel's familiarity with the case, [and] whether there is a possibility that the attorney could be called as a witness at the defendant's trial or implicated in the defendant's alleged crimes. . . ."

14

*United States. v. Stein*, 410 F.Supp. 2d 316, 328 (S.D.N.Y. 2006) (internal quotations omitted). The court should also consider the defendant's agreement to remedial measures, such as the limitation of testimony, *see e.g.*, *United States. v. Jones*, 900 F.2d 512, 520 (2d Cir. 1990), or whether an independent counsel can conduct cross-examination of witnesses like Mr. Tacopina.

With respect to limitations of testimony, the Defendant argues that Mr. Tacopina could be questioned without the jury knowing that Mr. Breen was present at the relevant meetings. Then, according to the Defendant, the jury would not afford undue weight to Mr. Breen's questions or statements made during the course of the trial.

The Defendant's attempts to cure the conflict are simplistic. Whether Mr. Breen agrees with or disputes the testimony of Government witnesses concerning the statements made to the BCDAO and the NYCDOI, he is an *actual* witness to the alleged crime. There are a host of scenarios in which, even if Mr. Breen's name were not mentioned during testimony, the conflict would still not be addressed. For example, Mr. Breen may be constrained from making certain arguments, or may be tempted to minimize his conduct at the expense of his client, and thus could not be said to advocate effectively for the Defendant.

A prediction concerning the effectiveness of this remedy, however, is unnecessary because Mr. Breen's conflict cannot be waived by his client. As the Second Circuit stated in *Locascio*, a waiver is insufficient in curing a conflict posed when a defendant's advocate is also a witness because the defendant is not the party prejudiced by the defense attorney's continued involvement as an advocate, the Government is. *See Locascio*, 6 F.3d at 934 ("The detriment is to the government, since the defendant gains

15

an unfair advantage, and to the court, since the factfinding process is impaired.") The conflict in this case is so severe that no remedial measure will cure it.

Mr. Breen is hereby disqualified as counsel to the Defendant, Mr. Kerik. Mr. Kerik has until 30 days from the date of this order to obtain conflict free counsel.

IT IS SO ORDERED.

_____
Stephen C. Robinson, U.S.D.J.

Dated: White Plains, New York
       January 23, 2008