**TIMOTHY C. PARLATORE, ESQ.**
Attorney-at-Law

260 Madison Avenue, 22nd Floor
New York, New York 10016

www.parlatorelaw.com

212-679-6312                                                                                    Email:   tim@parlatorelaw.com
212-202-4787 Fax                                                                            Of Counsel with Bruce Cutler, Esq.


June 26, 2014


Honorable Loretta A. Preska
Chief Judge
United States District Court
Southern District of New York
United States Courthouse
500 Pearl Street
New York, New York 10007

      *Re: United States v. Bernard B. Kerik, 07-cr-1027-LAP*

Dear Judge Preska:

      I am writing in response to a letter from Judd Burstein, Esq. to the Court dated June 24, 2014 (but which was not emailed to me until yesterday, June 25, 2014). Insofar as Mr. Burstein is requesting the opportunity to be heard on my motion to partially vacate the protective order, I not only consent, but I urge Mr. Burstein and his client, Joseph Tacopina to be present at any oral arguments on the application.

      While the dispute between the parties, which involves multiple lawsuits, is varied and complex, the aspect of the dispute which has brought the parties before Your Honor revolves around a very simple question – Did Joseph Tacopina assist the Government in their prosecution of Bernard Kerik as a cooperating witness? Mr. Kerik has alleged that Mr. Tacopina violated his attorney-client relationship and provided privileged and confidential information to the Government. Mr. Tacopina has denied that allegation, stating that he "met with prosecutors who worked the Kerik case 'once or twice for less than two hours' primarily to authenticate financial records"[1] and that he met with the Government "with Kerik's blessing."[2] The U.S. Attorney's Office has admitted that Mr. Tacopina was a Government witness against Mr. Kerik, but has declined to disclose the full nature of his cooperation.

      The records at issue will quickly and easily prove which side of the story is correct. It stands to reason that if Tacopina were telling the truth, he would be the first in line to ask that the

---

[1] http://www.nydailynews.com/new-york/bernie-kerik-rips-attorney-joe-tacopina-bar-complaint-article-1.1560478
[2] http://nypost.com/2013/12/29/attorney-rips-bernard-kerik-bullst/

records be released.  In fact, if Mr. Tacopina were the party making this application, I doubt that the U.S. Attorney's Office would even be objecting.  Mr. Tacopina and his lawyer have made statements to multiple people, including the media, that they wanted these materials to be released:

1. "I haven't seen the motion, but my answer is good luck, I hope he succeeds," Burstein said. "It's an act of legal hari-kari for him to want sealed records of his case to be released."  Burstein said Tacopina had "no dog in that fight," although the records could illuminate what role Tacopina played in the Kerik investigation (prosecutors listed Tacopina as a witness in their case and met with him on multiple occasions as they zeroed in on Kerik).  "If Joe Tacopina's consent were required, he'd give it in a minute, because from what I understand, the last person who should want those files unsealed is Bernie Kerik," Burstein said.[3]

2. Tacopina's lawyer, Judd Burstein, told The Post, his client would've welcomed having the records unsealed because "it would've shown even more evidence of Mr. Kerik's allergy to the truth."[4]

3. Tacopina's lawyer, Judd Burstein, noted that he did not file papers opposing Kerik's request to unseal the documents. He called Kerik's attempts to unseal the documents a "round of self-immolation." "I think they will only help me," Burstein said of the sealed records. "He is living in an alternate universe if he thinks they will help him."[5]

It simply is not credible to believe that after all of this rhetoric, Mr. Tacopina and Mr. Burstein have changed their minds about releasing these documents, if they truly believed that they would show the falsity of Mr. Kerik's claims.  If Mr. Tacopina were actually telling the truth then I would expect Mr. Burstein to come into your courtroom and stand shoulder to shoulder with me to join in my application to release these documents.

However, the reality is that this reversal is consistent with Mr. Burstein's track record, as this is not the first time he has encountered a situation such as this. In *Shane D. Mosley, Sr. v. Victor Conte*, 110623-2008 (N.Y. Cty. Sup. Ct.) and the associated case filed in the Northern District of California, *Shane Mosley, Sr. v. Victor Conte,* 08-cv-01777-JSW, Mr. Burstein filed two entirely frivolous defamation lawsuits on behalf of boxer "Sugar" Shane Mosley against BALCO founder Victor Conte.  In these cases, Burstein alleged that Conte, who had been convicted of conspiracy to distribute steroids, was defaming his client through publication of statements that Mosley had used steroids.  The object of that litigation was to silence Conte and prevent him from publishing a book that would have included details of Mosley's use of performance enhancing drugs.

However, what makes *Mosley* so strikingly similar to Mr. Burstein's litigation strategy here is that the claims were not only knowingly false, but that Mr. Burstein was expecting that the

---

[3] http://www.nydailynews.com/sports/i-team/kerik-pitch-unseal-records-legal-fight-tacopina-article-1.1734779
[4] http://nypost.com/2014/05/12/bernie-kerik-ordered-to-turn-over-records-in-case-that-sent-him-to-slammer/
[5] http://www.nydailynews.com/sports/i-team/kerik-seeks-subpoena-documents-lawsuit-a-rod-lawyer-article-1.1791067

evidence of their falsity would never see the light of day as they were sealed by a court order. Mr. Burstein's client, Mr. Mosley had actually testified before the grand jury against Mr. Conte and admitted that he knowingly used illegal performance enhancing drugs provided by Mr. Conte. However, when the grand jury testimony was unsealed, Mosley's lawsuit quickly disintegrated and Mr. Burstein behavior became wild, threatening, and irrational.[6]

Here, like *Mosley*, Mr. Burstein's entire litigation strategy is premised on a lie – a lie that he was counting on remaining secret, so as to allow him to continue his frivolous and vexatious designs. However, now that the truth is coming out, Mr. Burstein is falling back into the same bizarre behavioral pattern of attacking anyone who had a hand in exposing the truth.[7] His false accusations against me and Mr. Kerik and his illogical letters show how desperate Mr. Burstein has become, as he realizes he cannot win on either the law or the facts, so his only recourse is to personally assault the opposing party and his counsel by going to the extreme measure of trying to have criminal charges brought against us in order to silence us.[8] Mr. Burstein even sent me a long rambling nonsensical email yesterday to threaten me to keep copies of all of my notes, as they "are likely discoverable by reason of the crime/fraud exception to the attorney/client privilege."

For all these reasons, as well as the reasons stated in my prior letter and the associated exhibits, I respectfully request that this Court vacate in part the protective order and summarily decline to institute the contempt proceedings that Mr. Burstein has asked for. If, however, this Court would like to have a conference on the matter, I am available any time next week after Mr. Burstein returns from his vacation, with the exception of Wednesday morning.

Respectfully submitted,

/s/ Timothy C. Parlatore

Timothy C. Parlatore, Esq.

---

[6] Annexed hereto at Exhibit "A" is an article from Boxing Scene entitled "Mosley's Attorney Goes Bonkers, Threatens Reporter," which details Burstein's bizarre behavior. Burstein sent numerous crazed emails, including one which states "there is only two rational explanations for Vinton's conduct: Conte is paying him with money or for sex." Annexed hereto at Exhibit "B" is an additional article from California Watch, which also chronicles Burstein's wild reactions to the falsity of his claims being exposed.

[7] The Court should also be aware of the case of *Revson v. Clinique, P.C.,* 70 F.Supp. 2d 415 (S.D.N.Y. 1999), in which Judge Denny Chin severely chastised Mr. Burstein for "cross[ing] the line from zealously representing a client to abusing the legal process" and that "the conduct of Judd Burstein, Esq…was clearly and unmistakably 'beyond the pale.' Burstein engaged in a pattern of offensive and overly aggressive conduct that multiplied these proceedings and caused significant harm.. Burstein did not act within the bounds of the law here. Rather, he acted in bad faith and with reckless and utter disregard for the harm that Cinque and the Firm would suffer as a result of his 'Rambo' tactics."

[8] This is not the first time in this case that Mr. Burstein has tried to have criminal charges brought against Mr. Kerik for the purpose of gaining an advantage in the civil cases. On May 15, 2014, Mr. Burstein sent a letter to AUSA Jacobson, AUSA Carbone, and Rich Calder of the New York Post (but initially refused to provide a copy to Mr. Kerik or his counsel) asking that perjury charges be brought against Mr. Kerik for allegations made in the verified complaint. In that letter, Mr. Burstein states unequivocally "I know that lawyers in civil litigations often try to convince prosecutors to pursue criminal cases against an opposing party, and the purpose of this letter is to do just that."