1
                    UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF NEW YORK
2

3
----------------------------------X
                          :
4
JOSEPH TACOPINA,            :
                          :  14-CV-00749 (LTS)
5
                Plaintiff,  :
                          :  500 Pearl Street
6
            v.           :  New York, New York
                          :
7
BERNARD KERIK, et al.,    :  August 5, 2014
                          :
8
              Defendants.  :
----------------------------------X
9

10
    TRANSCRIPT OF CIVIL CAUSE FOR FINAL PRE-TRIAL CONFERENCE
       BEFORE THE HONORABLE LAURA TAYLOR SWAIN
          UNITED STATES DISTRICT JUDGE
11

12
APPEARANCES:

13
For the Plaintiff:        JUDD BURSTEIN, ESQ.
                     Judge Burstein, PC
14
                     1790 Broadway
                     New York, New York 10019
15

16
For the Defendants:       TIMOTHY C. PARLATORE, ESQ.
                     Timothy C. Parlatore, Esq.
17
                     260 Madison Avenue, 22nd Floor
                     New York, New York 10016
18

19

20

21
Court Transcriber:        MARY GRECO
                     TypeWrite Word Processing Service
22
                     211 N. Milton Road
                     Saratoga Springs, New York  12866
23

24

25

Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE COURT:  This is the initial pre-trial conference

2    in the matter of Tacopina v. Kerik, number 14-CV-749.  For the

3    benefit of the digital audio record, this is Judge Swain

4    speaking.  Counsel, would you be good enough to state your

5    appearances by way of introducing yourselves?

6          MR. BURSTEIN:  Good afternoon, Your Honor.  For the

7    plaintiff, Judd Burstein, Judd Burstein PC.

8          THE COURT:  Good afternoon, Mr. Burstein.

9          MR. PARLATORE:  And good afternoon, Your Honor.  For

10   Mr. Kerik, Timothy Parlatore.

11         THE COURT:  Good afternoon, Mr. Parlatore and good

12   afternoon, Mr. Kerik.

13         MR. KERIK:  Good afternoon, Your Honor.

14         THE COURT:  Thank you.  You can be seated.  And

15   counsel, feel free to speak from your seats for this

16   conference if that's comfortable for you.

17         Thank you for your joint preliminary pre-trial

18   statement.  That was quite helpful to me in preparing for the

19   conference.

20         I would first like to ask you about the

21   interrelationship of proceedings in this case with those in

22   the case that's before Judge Koeltl and whether it makes sense

23   to proceed with discovery and other pre-trial matters in this

24   case pending Judge Koeltl's consideration of the motion

25   practice in that case.  Mr. Burstein?

3

1          MR. BURSTEIN:  They are very interrelated.  This is

2    sort of a funny situation because there's a chicken and egg

3    question here as to whether or not the cases are related, but

4    in many ways they are the flip side of each other because in

5    the case before Judge Koeltl, Mr. Kerik is alleging that Mr.

6    Tacopina disclosed privileged information to the prosecutor in

7    this case.  Mr. Tacopina is claiming that he was defamed by

8    the allegation.

9          We have a motion before Judge Koeltl right now

10   moving to dismiss Mr. Kerik's claims.  And in particular, one

11   is very relevant here.  With respect to the claim of the

12   disclosure of privileged information, we've made what I think

13   is a very compelling collateral estoppel argument which is

14   very briefly in Mr. Kerik's criminal case Judge Robinson made

15   a finding that Mr. Tacopina has not made, disclosed privileged

16   information.  The record shows that sometime before the late

17   September of 2009 all the 3500 material was turned over to Mr.

18   Kerik.  In fact, that's one of the reasons why he was at one

19   point in prison for violating a protective order in that case.

20   After the 3500 material, which is apparently the basis for the

21   allegations that privileged materials were disclosed, which

22   turned over the -- Mr. Kerik's lawyers filed additional

23   motions in that case, did not raise the privilege issue,

24   disclosed of privileged information issue again in those

25   motions, and then failed to appeal.  Pleaded guilty, waived

4

1    his right to appeal, but didn't reserve his right to appeal

2    that argument.  And our belief is that it's a very compelling

3    collateral estoppel argument.  If I prevail on that claim, it

4    has the effect here that I'm halfway home or one-third of the

5    way home to winning because at that point the only thing I

6    really have to prove is constitutional malice and damages.

7          So from my perspective, what makes sense is to, as I

8    thought about this, is to treat this as a related case.  I

9    don't know whether or not the case will survive, I hope it

10   will not, before Judge Koeltl.  Judge Koeltl has given Mr.

11   Kerik an extra try, so to speak, to file his complaint and has

12   said if it gets dismissed after -- well, it concededly will be

13   my first motion to dismiss that there will be no re-pleading

14   allowed.

15         So from my perspective, the discovery in this case

16   is very limited.  It simply was there a disclosure of

17   privileged information?  What was the basis for Mr. Kerik's

18   statement?  Did he say it?  Well, we know he said it and

19   damages.  But it seems to me it makes a lot more sense to at

20   least wait and see what Judge Koeltl does before we move

21   forward here because if we move forward in the Judge Koeltl

22   case, I think even Mr. Parlatore, we don't see eye to eye on

23   many things, but I think he'll agree with me on this that the

24   discovery would be much broader in Judge Koeltl's case than it

25   would be in this case.

5

1          So from my point of view as I thought about it, it

2    makes more sense perhaps to treat this as a related case but

3    not -- determine first to see what happens before Judge

4    Koeltl.  If that case falls away by the wayside, then we're

5    here before Your Honor on a very limited defamation case.

6          THE COURT:  Thank you.  Mr. Parlatore?

7          MR. PARLATORE:  Your Honor, with respect to Mr.

8    Burstein's argument about the collateral estoppel, I would

9    argue that that is a completely, you know, baseless claim.

10   Basically, what happened in the criminal case is that the

11   prosecution have made a motion to disqualify --

12          THE COURT:  Can I just say one thing?  You can make

13   whatever record you want here but that motion practice is

14   before Judge Koeltl and so --

15          MR. PARLATORE:  Absolutely.

16          THE COURT:  -- I am not going to form an opinion on

17   the validity or not of the collateral estoppel argument at

18   least at this point.

19          MR. PARLATORE:  Of course, Judge.  The issue with

20   the collateral estoppel, you know, he's put out his position

21   as to why he thinks that it's going to have merit.  My

22   position is it doesn't because it was a decision that was very

23   limited in scope.  Judge Preska just ruled I believe last week

24   that Judge Robinson never had the opportunity to review the

25   actual notes of Mr. Tacopina's multiple proffer sessions with

6

1   the Government.  Instead, he had only a very abbreviated

2   affirmation from one of the assistant US attorneys to rely

3   upon.  So the collateral estoppel argument I don't think is

4   going to go anywhere, but you're correct, that is in front of

5   Judge Koeltl.  As far as --

6               THE COURT:  But as you mentioned Judge Preska, can

7   you do me one more favor --

8               MR. PARLATORE:  Sure.

9               THE COURT:  -- and bring me up to speed on how what

10   I gather are follow on proceedings in the criminal case --

11               MR. PARLATORE:  Yes.

12               THE COURT:  -- relate to these two civil cases.

13               MR. PARLATORE:  Sure.  In the criminal -- under the

14   criminal docket number, Mr. Kerik had made a motion to

15   partially vacate the protective order governing the 2500

16   material in that case to allow the -- or actually to compel

17   the  Government to give back to Mr. Kerik all the notes from

18   Mr. Tacopina's proffer sessions for this case.  What Judge

19   Preska decided last week, she declined to partially vacate the

20   protective order because under the standards for doing that in

21   a criminal case, we have not met the standard there.  However,

22   she very specifically said that nothing in her decision

23   prevents us from seeking that discovery here where in the

24   civil discovery context there's certainly a different standard

25   and different concerns.  So and she specifically said she was

7

1   taking no position as to the discoverability of those

2   documents here.

3          So I have to agree with Mr. Burstein that the

4   discovery in this case is fairly limited.  There's not really

5   much of a dispute as to what Mr. Kerik said, at least I

6   believe.  There was originally a claim in the complaint that

7   Mr. Kerik had claimed that Mr. Tacopina didn't divulge to him

8   the first subpoena that he got.  You know, that's not true and

9   I think that Mr. Burstein has basically abandoned that

10  position.

11         MR. BURSTEIN:  That's correct.

12         MR. PARLATORE:  So essentially, as far as what Mr.

13  Kerik said, that's not something that's really in dispute.

14  The only thing that's in dispute is what it was based upon and

15  what the truth is to those statements that Mr. Tacopina was a

16  cooperating witness against his client, that he revealed

17  privilege and confidential information to his client's

18  detriment.  The answers to those questions are essentially

19  going to be contained in two locations; the documents held by

20  the US Attorney's Office that we have made the motion in front

21  of Preska but basically she kicked it back for us to do here

22  and in front of Judge Koeltl, and also the deposition of Mr.

23  Tacopina as well as other people who were present at his

24  proffer sessions.  Therefore, my position is that we should

25  proceed with the discovery in this case since it is fairly

8

1    limited.

2           The case in front of Judge Koeltl is much more broad

3    reaching.  It is a racketeering case and it has a whole lot

4    more to it than just this one issue.  But I think it would

5    probably go a long way towards resolving all the cases for us

6    to move forward with the discovery here.

7           I have here for Your Honor a draft of a subpoena to

8    the US Attorney's Office to get the documents that will prove

9    or disprove much of the claims here.  So my request would be

10   that we move forward with the subpoena and schedule Mr.

11   Tacopina's deposition soon after compliance with the subpoena

12   so we can resolve that issue which essentially could resolve

13   the entire case.

14           MR. BURSTEIN:  May I be heard briefly, Your Honor?

15           THE COURT:  Yes.

16           MR. BURSTEIN:  In the description of what's going on

17   before Judge Preska, I think Mr. Parlatore left out the fact

18   that he and Mr. Kerik are the subject of a criminal

19   investigation for contempt for having in the Koeltl case used

20   those documents that are covered by the protective order to

21   frame their complaint.  And indeed, it seems inconceivable

22   that Mr. Kerik and Mr. Parlatore could have filed a complaint

23   alleging that Mr. Tacopina provided privileged information to

24   the Government without supposedly seeing these notes.  And in

25   fact in the motion papers submitted by Mr. Parlatore in

9

1   opposition to my motion to dismiss he essentially conceded

2   that was the case.

3          My concern here is --

4          THE COURT:  But who's made the criminal contempt

5   complaint?

6          MR. BURSTEIN:   The Government -- what's happened is

7   the Government initially sent a letter to Judge Preska raising

8   serious concerns about whether or not Mr. -- whether the first

9   amended complaint -- or second amended complaint in Judge

10  Koeltl's case plus the opposition to my motion to dismiss the

11  complaint revealed that the protective order had been violated

12  by Mr. Kerik because the protective order of said materials

13  would only be used for the criminal case.  Judge Preska in

14  response to Mr. Parlatore's motion, which she denied, she said

15  she left it up to the parties to decide, to meet by August 1st

16  and explain what they intended to do with that.

17         Mr. Parlatore filed a letter on Friday with Judge

18  Preska which annexed an email from the Government making

19  clear, I think that it explicitly states, that the Government

20  had  serious concerns and it may even be stronger language

21  that Mr. Parlatore and Mr. Kerik may have committed criminal

22  contempt.

23         Mr. Parlatore has sent back a letter saying to Judge

24  Preska that he doesn't think that's the case, but the

25  Government, as far as I can tell because the Government's

10

1  email also says that if Mr. Parlatore does not reveal certain

2  information they're coming back to Judge Preska this week.

3          My concern here is a number of things.  We have a

4  defendant in this case who was already once jailed.  Bailed

5  was denied -- his bail was revoked in his criminal case for

6  violating the protective order.  We have a government

7  investigation into whether or not Mr. Parlatore and Mr. Kerik,

8  whether it's a conflict is not my issue, are either one or

9  both of them guilty of criminal contempt, and we have in

10 addition to this, as you will see from our Rule 26 report to

11 Your Honor, I think if there were ever a case that calls for a

12 protective order with respect to the discovery it's this case.

13 I have never quite seen anything like this which includes Mr.

14 Parlatore going on Twitter and talking about let's go get that

15 unethical lawyer Tacopina, sending out a press release asking

16 people who've had difficulties with Mr. Tacopina to come

17 forward so that he might be able to help them, releasing

18 pleadings to the Daily News before they've even been filed

19 with the court, not to mention the -- I'll let Judge Koeltl

20 decide on the merits or the lack thereof with respect to the

21 claim.

22          So I have a situation where there has been nothing

23 from the other side that suggests any ability or willingness

24 to try this case in a courtroom as opposed to trying it in the

25 papers.

1          And so before any discovery takes place, I would

2    like to make an application for a protective order.  I think

3    realistically some of this stuff should -- some of the things,

4    if Your Honor were to sign the subpoena, would, I would argue,

5    should be attorneys' eyes only.  I don't think Mr. Kerik, a

6    person who's already been jailed for violating a protective

7    order, should have an opportunity to see these documents

8    again.  But it's all premature.

9          I was going to come in, frankly, and say I'd like to

10   make the collateral estoppel motion, put it heard first

11   because I think it's a compelling motion and I think that Mr.

12   Parlatore doesn't quite get what the nature of a collateral

13   estoppel argument would be.  The issue is not what Judge

14   Robinson considered but whether or not he had a fair -- Mr.

15   Kerik had a full and fair opportunity to litigate the issue.

16   But I think it's before Judge Koeltl, and I think that nothing

17   should be done until we hear from Judge Koeltl at this point.

18         If Your Honor wants to move forward with discovery,

19   you know, certainly I would want Mr. Kerik's deposition and

20   even Mr. Parlatore's deposition with respect to what's the

21   basis for the allegation if they didn't get it from the

22   materials governed by the protective order.  I don't know

23   whether Mr. Kerik's going to take the Fifth Amendment under

24   those circumstances, but it seems to me that the answer here

25   in the first instance is to let's see what happens with Judge

1  Koeltl.  And if Your Honor wants to move forward with

2  discovery, it's not that I'm concerned about discovery per se.

3  I'm concerned about the irresponsibility of Mr. Kerik and

4  regrettably my adversary in the way that this is played out.

5  I don't think it's appropriate that the minute a document gets

6  produced, and this is what will happen, will find its way into

7  the Daily News with whom Mr. Parlatore has a very, very close

8  relationship.

9          So my position would be that if Your Honor wants to

10 move forward, and I respectfully submit it's premature, but if

11 Your Honor does believe it's worthwhile to move forward and

12 wants to sign the subpoena, I suppose the US attorney can come

13 in and take their position and I would want to come in and

14 take the position not so much with respect to the disclosure

15 of documents, but the terms under which they would be

16 disclosed.

17         So I leave it to Your Honor.  I mean I don't have a

18 problem in general because I'm confident that there was no

19 disclosure of privileged information.  And one of the -- you

20 know, in the end, Your Honor, the other thing that strikes me

21 is that issue is not a fact issue.  It's a legal issue.  And

22 the real answer here in the first instance might be for Your

23 Honor to review the -- I mean if you want to move forward at

24 this stage, Your Honor review the documents and make a

25 determination whether there's any privileged materials within

1  those documents that were at least potentially disclosed by

2  Mr. Tacopina.  But the notion that we're going to get into a

3  discovery fight over whether something was privileged or not

4  when that is always a judicial decision doesn't seem to make

5  any sense to me either.

6          THE COURT:  Are you saying that there's no dispute

7  as to what was said, what was disclosed but the only question

8  is whether what was disclosed was privileged?  Or is there a

9  question as to the identification of the universe of

10  information disclosed and then depending on what was

11  disclosed, there would be a question as to whether that was

12  privileged?

13          MR. BURSTEIN:  I think it's the latter.  What

14  happened was that Judge Preska -- what I had suggested to

15  Judge Preska was if she wanted to do this was to take all of

16  the documents that were related to Mr. Tacopina's

17  communications with the Government and review them and make a

18  decision as to whether or not they were privileged, there was

19  any privileged information communicated by Mr. Tacopina.

20  Judge Preska declined that invitation because it really wasn't

21  relevant to her determination.  But I don't think there's a

22  dispute in terms of what the universe of documents are because

23  I think the Government has given all of that to Judge Preska.

24  The question is whether within that universe of documents

25  there is any evidence that Mr. Tacopina provided privileged

14

1   information.   That's what this case is about.   It's not

2   confidential.   That's an issue in the other case.   Whether

3   there was privileged materials disclosed to the Government.

4          So to me, if Your Honor wants to move forward,

5   thinks it's wise to move forward at all, I would ask that Your

6   Honor ask Judge Preska to deliver the same set of documents

7   delivered to her by the Government and make the first call.   I

8   mean if Your Honor looks at this and says there's nothing

9   privileged, that's what courts do all the time when people

10  have privilege disputes.

11          THE COURT:   And without anything like rearguing your

12  collateral estoppel position, would you just give to me as

13  simply as possible the thesis that you've advanced to Judge

14  Koeltl as to what the Robinson ruling was and why you believe

15  that it estoppes Mr. Kerik from taking the position that

16  privileged information was disclosed to the Government.

17          MR. BURSTEIN:   Sure.   This is what is before Judge

18  Koeltl.   There came a time in Mr. Kerik's criminal case when

19  the Government made a motion to disqualify Mr. Kerik's then

20  counsel Ken Breen [Ph.], the theory being that both Mr. Breen

21  and Mr. Tacopina would be witnesses in the federal case

22  against Mr. Kerik because there was an issue as to

23  representations that were made on behalf of Mr. Kerik to the

24  Bronx DA's Office.   That was part of the federal case.   And

25  they sought to -- the Government sought to disqualify Mr.

1   Breen because it contended that as with Mr. Tacopina, he was a

2   witness to the fact that Mr. Kerik had authorized the

3   disclosure of information to the Bronx DA's Office.

4           In the course, there was a privilege argument made

5   in response to that argument, I'm not exactly sure what it

6   was, by Mr. Kerik.  But what Judge Robinson held was there

7   were no privileged information revealed by Mr. Tacopina.

8   Concededly, I don't think Judge Robinson had all the documents

9   before him at the time.

10          Subsequent to that, Mr. -- well actually, in the

11  initial Judge Robinson decision, Judge Robinson said the

12  Government has made certain allegations about what was said

13  and said that there was nothing privileged, and Mr. Kerik

14  hasn't come back with anything to dispute it.  Then later on

15  in the case when the pre-trial motions were filed, Mr. Kerik's

16  attorneys, and it was Barry Berke at Kramer Levin, a very fine

17  lawyer, made a motion for discovery with respect to what had

18  been disclosed to the Government by Mr. Tacopina.  And Judge

19  Robinson then ruled I think in early 2009 that Mr. Kerik had

20  not come forward with an iota of evidence to suggest there was

21  a need for discovery, a suggestion that there had been a

22  disclosure of privileged information.

23          Subsequent to that, sometime before September 29,

24  2009, and I know that because that's around the time that Mr.

25  Kerik was incarcerated for breaching the protective order, and

1  there's a letter from the Government and other documents that

2  make clear that Mr. Kerik then had the 3500 material, his

3  lawyers had all the things that Judge Preska has, and they

4  never made any motion at that point having twice raised the

5  issue of whether or not privileged -- Mr. Tacopina disclosed

6  privileged materials having twice raised that issue.  Once

7  they had all the materials, they never made any claim of

8  privilege, that the case had been in any way tainted.  Even

9  though they had that, instead what happened was they made

10  other motions after they received the 3500 material in October

11  of 2009, said nothing about the privileged materials, and then

12  Mr. Kerik pleaded guilty which in any event would have waived

13  any claims he had, but he did take appeal on other issues.  He

14  never came back in seven years on a 2255 claiming that his

15  rights had been violated.

16          So under all these circumstances, I don't see how

17  there's not collateral estoppel on this issue.

18          THE COURT:  All right.  Thank you for that.  And I

19  believe that Mr. Parlatore had been in the process of speaking

20  to some of these issues and while you were speaking he was

21  trying to get my attention, so I'll let Mr. Parlatore

22  continue.

23          MR. PARLATORE:  I have responses to several of those

24  issues.

25          First of all, with regard to the claims that Mr.

17

1    Burstein is making about the contempt, you know, the so-called

2    contempt investigation currently going on, what he's failed to

3    mention to the court is that that was initiated by Mr.

4    Burstein.  This is actually the second time when we talk about

5    somebody that doesn't want to litigate the case in the

6    courtroom, this is the second time that Mr. Burstein has, in

7    violation of Rule 3.4(e) of the Rules of Professional Conduct,

8    attempted to bring criminal charges against Mr. Kerik for the

9    purpose of gaining an advantage in the civil case.

10           He first tried doing it saying that the first

11   complaint was untrue, therefore perjury charges should be

12   brought against Mr. Kerik.  That went nowhere.

13           Then he called up the US Attorney's Office and told

14   them this whole story about there are things in the complaint

15   that shouldn't be there.  I want them charged with contempt.

16   And he can't even shake his head right now because the US

17   attorneys have admitted to me that this was all initiated by

18   him.

19           Now, these claims that I'm talking about right now,

20   that's before the Department of Disciplinary Committee.

21   They'll decide that as far as Mr. Burstein's conduct.

22           With regard to the contempt issue itself, there's

23   absolutely no basis for that.  I have explained to Judge

24   Preska why there's no basis for that.  The Government's only

25   response is essentially that they don't have enough

18

1  information and therefore they want to have Judge Preska issue

2  an order compelling me to violate my privileges and

3  confidential duties to Mr. Kerik and have me submit under a

4  court order to the Government's questioning.  That is before

5  Judge Preska right now.  She hasn't ruled on that request.

6  That was just done this past Friday.

7           So the contempt issue, my position is that's going

8  nowhere.  It's something that he brought up as litigation

9  strategy and that's it.

10          Now, as far as, you know, he keeps mentioning about

11 the New York Daily News, one thing that the Court should be

12 reminded of is that the New York Daily News was a defendant in

13 this case.  Initially, Mr. Burstein sued the New York Daily

14 News as a codefendant because they published the information

15 that Mr. Kerik had said.

16          As to whether there is disputes on what the

17 disclosures contain, I would say that there is a dispute

18 because certainly I have not seen what's in these documents.

19 I would assume that Mr. Burstein hasn't either, so I don't

20 know how exactly he can speak so authoritatively on it unless

21 there's been some disclosure to him as to what these documents

22 contain.

23          What we do know is that his client has made numerous

24 public statements which we know not to be true.  He's talked

25 about how he met with the Government once or twice only to

19

authenticate financial records.  We know that's not true

because the assistant US attorney even submitted an

affirmation saying additional information that Mr. Tacopina

had been providing.

With regard to this collateral estoppel issue, the

original motion, the disqualification of Ken Breen, what

happened there is that the Government moved to disqualify him

claiming that he would have been a witness to a certain

conversation that Mr. Kerik had had with Mr. Tacopina that

they claimed Mr. Tacopina was then authorized to relay to the

Bronx District Attorney's Office.  Mr. Kerik's attorneys

argued that that should not be the basis for disqualification

of Mr. Breen because that was based on a privileged

communication.  Judge Robinson ruled on that very narrow issue

because that is the only information that he was provided by

the Government that the way that the Government had described

it that Mr. Kerik had authorized Mr. Tacopina to tell the

Bronx District Attorney's Office about it, that that waived

the privilege as to that one little issue.  But that is only

one of many statements that Mr. Tacopina made over multiple

proffer sessions.

So the collateral estoppel argument really only goes

to maybe that one statement.  It doesn't go to the entirety of

the rest of the statements.  And while I certainly trust the

court's judgment in being able to read all the documents, you

1    know, I welcome his suggestion of getting them from Judge

2    Preska and reviewing them, but the problem is that if we're

3    relying on the statements of Mr. Tacopina to form the basis of

4    exceptions to the privilege rule such as Mr. Kerik told me

5    this, but it's an exception because he also told me that I was

6    allowed to disclose it, that necessarily requires us to

7    believe everything that Mr. Tacopina says lock, stock and

8    barrel which I don't think is possible.  And in order to make

9    a proper determination on whether, you know, using that one

10   example, though I think it applies to every statement that

11   would be within that, for every exception that he tries to

12   produce, I think we'd need to have a hearing.  We need to have

13   some type of an adversarial proceeding so that his claims of

14   the exception to the privilege can be put to the test.  I

15   don't think that the court can properly determine based solely

16   on a reading of his statements, some of which we know not to

17   be true, that the privilege exceptions are applicable.

18          Now ultimately, Judge, I still think that moving

19   forward with discovery on this case would help to resolve a

20   lot of issues.  I think that getting these documents over

21   here, going through them, because again, I haven't seen them,

22   Mr. Burstein hasn't seen them -- I don't know why he's shaking

23   his head.  Maybe he has seen them.  But we need to see what's

24   in those documents so that we can see all the full scope of

25   the disclosures that Mr. Tacopina made to the Government which

1   we know is more than what he's been telling everybody else

2   that it was just to authenticate financial records.  So we

3   need to have those, we need to have, you know, deposition of

4   Mr. Tacopina.  You know, perhaps we don't need to have a

5   hearing on the privilege issue if we can depose Mr. Tacopina

6   and at the end of the day find that there's no disputed issues

7   of fact as to whatever the basis of these exceptions to the

8   privilege rule are, then Your Honor can rule on that.

9           One other important thing that has come up

10  constantly throughout the submissions in this case and the

11  others is Mr. Burstein is trying to limit it to just

12  privileged information but the problem is that what we believe

13  Mr. Tacopina had disclosed is much broader than just

14  privileged statements.  It's also confidential information

15  which under the New York Rules of Professional Conduct any

16  information that he gained during the representation of Mr.

17  Kerik privileged from a different source, any of that, can't

18  be disclosed without the authorization, without one of the

19  exceptions.  So it's much broader than what Mr. Burstein is

20  claiming here.

21          But for all these reasons, I'm arguing that we

22  should move forward with discovery.  At least getting these

23  documents I think would, you know, certainly go a long way to

24  resolving these issues.  Maybe once Mr. Burstein sees what's

25  actually in the documents he'll be able to rethink the

22

1  certainty of his position here.

2          MR. BURSTEIN:  I hate to -- I have to respond a

3  little if that's okay.  If not, if Your Honor wants me not to,

4  I won't.

5          THE COURT:  I'd prefer not.

6          MR. BURSTEIN:  Okay.

7          THE COURT:  Thank you.  I thank you both for your

8  candor and your extensive explanations of your positions and

9  what's going on before the other judges.

10         You know it seems to me quite clear that the

11  proceeding here and the one before Judge Koeltl are related

12  and once the question of the existence and/or scope of the

13  Koeltl proceeding is sorted out there will be common issues,

14  and so I am not persuaded that it makes sense to open for

15  business a third forum for skirmishing over information that's

16  implicated in both cases and has significance in proceedings

17  that are still ongoing before Judge Preska.

18         And so what I am going to do is stay proceedings in

19  this case pending Judge Koeltl's decision, at least pending

20  further order of this court.  I would propose this, that we

21  adjourn this conference to early November and we'll see

22  whether Judge Koeltl has rendered his decision, whether that

23  case is going forward.  If both cases -- if he has rendered

24  his decision and both cases are going forward at that point,

25  Judge Koeltl and I will need to sort out -- probably the

1   question will be which one of us has both, but that's a

2   discussion that we'll have to have whether they'll go

3   separately, together, and if together, with whom.  And I would

4   hope that further progress will have been made before Judge

5   Preska on the outstanding issue with her as well by that time.

6   I think it makes sense to do this in an orderly fashion with

7   as few judges as possible involved in disputes over access to

8   the material and the significance of the material.

9            And so unless anyone wants to be heard in violent

10  opposition to that proposal, I will ask Ms. Ng to give us a

11  next conference date in early November.

12           MR. BURSTEIN:  The only question I have, Judge, in

13  our Rule 26 statement of the case to Your Honor we had put

14  some deadlines in prior to the original conference about Rule

15  26 disclosures and a date to amend.  I assume all of that

16  would be stayed until our next --

17           THE COURT:  Yes.  I will stay all proceedings in

18  this case until the next conference.  Mr. Parlatore?

19           MR. PARLATORE:  Generally I agree except for one

20  particular deadline which I think we can probably address is

21  that in here Mr. Burstein had said that he was considering

22  amending the complaint and the deadline for that was that he

23  was going to provide me with a redlined copy of the proposed

24  amended complaint by August 1st.  I haven't gotten anything

25  yet.  Since that deadline has passed, can we at least dispose

24

1  of that matter that there's not going to be an amended

2  complaint and just stay all the further discovery proceedings?

3       MR. BURSTEIN:  I had already decided I wasn't going

4  to amend.  I think I have to clean up some things to add

5  claims or defendants.  I'm going to stick with my case as I

6  have it.  But I'll probably want to at some amend because the

7  original complaint had allegations against the Daily News

8  which would now come out.  But that doesn't really need to be

9  done at this point.  We'll have to see whether or not the case

10  -- I think that can be decided after the stay.

11       MR. PARLATORE:  And I have no opposition to amending

12  the complaint to clean it up to remove -- since the majority

13  of the complaint does relate to the prior claims against the

14  Daily News, I have no objection to him, you know, removing

15  those so it cleans it up.  It's more the issue of is he going

16  to be adding additional claims which is something that he was

17  supposed to give me notice of by August 1st.

18       MR. BURSTEIN:  That's not --

19       THE COURT:  I think what I'm hearing from Mr.

20  Burstein is that he's not going to be adding additional claims

21  in that.

22       MR. PARLATORE:  That's fine, Your Honor.

23       THE COURT:  Very well then.  So I will stay

24  everything to the extent you'll have nothing else on your

25  minds and want to enter into a stipulation permitting Mr.

25

1   Burstein to file an amended complaint before we come back

2   again and that stipulation would of course address whether the

3   time to answer is stayed or whether there's an agreed time to

4   answer.  That can be done if everybody wants to sit tight

5   until we come back in November.  That works.

6           MR. BURSTEIN:  I would ask that we sit tight until

7   we come back in November.

8           THE COURT:  Well, unless you two agree to do

9   something else, and if you do you'll let me know.

10          So, Ms. Ng, may I have an early November date?

11          THE CLERK:  Friday, November 7, 2014 at 2 p.m.

12          THE COURT:  Is everyone available on November 7 at 2

13  o'clock as far as you know?

14          MR. BURSTEIN:  As far as I know, but Your Honor,

15  unfortunately I haven't got one of those passes that allows me

16  to bring my phone in.

17          THE COURT:  Shame on you.  You got to get on the

18  stick about that.

19          MR. BURSTEIN:  I know, I know, I know, I know.  So I

20  don't have my calendar with me but I think that's fine.  If I

21  have a problem, can I write within the next -- like tomorrow

22  to let Your Honor know if I have a problem with that date?

23          THE COURT:  If it turns out that it's a problem,

24  talk to Mr. Parlatore about your respective schedules and then

25  reach out to chambers and we'll fix the date.

26

1          MR. BURSTEIN:  But absent hearing from me Your Honor

2    can assume I'm free.

3          THE COURT:  Yes.  Hang on because I haven't

4    adjourned yet.  Mr. Parlatore?

5          MR. PARLATORE:  My identification has recently

6    expired so my calendar is similarly detained by the marshals.

7          THE COURT:  All right.  So if it's a problem, you'll

8    talk to each other --

9          MR. PARLATORE:  Absolutely.

10          THE COURT:  -- and reach out to chambers.

11          Now, because three judges are involved with you all

12    at this point, I'm going to ask that you order and split the

13    cost of copies for me, Judge Koeltl, and Judge Preska of the

14    transcript of this conference and Ms. Ng can help you with the

15    ordering procedures.

16          MR. BURSTEIN:  No problem.

17          THE COURT:  All right.  Thank you all very much.

18          MR. PARLATORE:  Thank you, Your Honor.

19          THE COURT:  Keep well.

20          THE CLERK:  All rise.

21                          *  *  *  *  *  *

22

23

24

25

27

1      I certify that the foregoing is a court transcript from

2   an electronic sound recording of the proceedings in the above-

3   entitled matter.

4

5                                _____

6                                      Mary Greco

7   Dated:  August 19, 2014

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25